## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **JEFFREY PORTER, on his own behalf and on behalf of all others similarly situated,** ) | **Case No. 07 CV 4446** |
| ) | |
| **Plaintiff,** ) | |
| ) | **Judge Joan H. Lefkow** |
| vs. ) | **Magistrate Judge Denlow** |
| ) | |
| **EVANSTON NORTHWESTERN** ) | |
| **HEALTHCARE CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | **Consolidated with:** |
| **AMIT BERKOWITZ, individually and on** ) | |
| **behalf of all others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 07 CV 4523** |
| ) | |
| vs. ) | |
| ) | |
| **EVANSTON NORTHWESTERN** ) | |
| **HEALTHCARE CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |
| **GERALD AND NOREEN LEKAS,** ) | **Case No. 07 CV 5725** |
| **individually and on behalf of all others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **EVANSTON NORTHWESTERN** ) | |
| **HEALTHCARE CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs individually and on behalf of two Classes of all those similarly situated, bring this action for damages and injunctive relief under the antitrust laws of the United States against defendant Evanston Northwestern Healthcare Corporation, demanding a trial by jury, and complaining and alleging as follows:

## NATURE OF THE CASE

1.      This lawsuit is brought as a class action on behalf of all individuals and entities who purchased inpatient and outpatient healthcare services directly from defendant Evanston Northerwestern Healthcare Corporation ("ENH"), its wholly-owned hospitals, predecessors, or controlled subsidiaries and affiliates from at least as early as January 1, 2000 to the present (the "Class Period").

2.      Plaintiffs allege that during the Class Period, ENH engaged in illegal monopolization of the market for inpatient and outpatient healthcare services in the geographic triangle formed by ENH's three wholly-owned hospitals, Evanston Hospital, Glenbrook Hospital, and Highland Park Hospital. Moreover the merger of these hospitals substantially lessened competition in the relevant market.

3.      Because of ENH's unlawful conduct, as alleged herein, Plaintiffs and other members of the Classes paid artificially inflated prices for healthcare services and, as a result, have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

4.      This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against the defendant for the injuries sustained by Plaintiffs and the members of the Classes by

11738

reason of the violations, as hereinafter alleged, of Section 2 of the Sherman Act, 15 U.S.C. § 2 and Section 7 of the Clayton Act, 15 U.S.C. § 18.

5.      This action is also instituted to secure injunctive relief against the defendant to prevent it from further violations of Section 2 of the Sherman Act and Section 7 of the Clayton Act as hereinafter alleged.

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

7.      Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d).

8.      Venue and personal jurisdiction is proper in this judicial district because during the Class Period ENH resided, transacted business, was found, or had agents in this District, and because a substantial part of the events giving rise to Plaintiffs' claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this District.

## DEFINITIONS

9.      As used herein, the term:

a.      "Healthcare services" refers to general acute inpatient and outpatient hospital services provided by ENH that are ordinarily provided by hospitals, including primary, secondary, and tertiary services. These include, but are not limited to, obstetrical and pediatric services, psychiatric care, neurosurgery, radiation therapy, cardiology services, orthopedics, trauma centers, diagnostic centers, cancer treatments, internal medicine and general surgical services.

11738

       b.     "Person" means any individual, partnership, corporation, association or other business or legal entity; and

       c.     "Class Period" refers to the period from at least January 1, 2000 to the present.

## PARTIES

10.    Plaintiff, Amit Berkowitz, was at all relevant times a resident of Evanston, Illinois.

11.    Plaintiff, Jeffrey Porter, was at all relevant times a resident of Evanston, Illinois.

12.    Plaintiffs, Gerald Lekas and Noreen Lekas were at all relevant times residents of Glenview, Illinois.

13.    During the Class Period, Plaintiffs purchased healthcare services directly from one or more of the hospitals owned by defendant ENH. As a result of ENH's unlawful monopolization, Plaintiffs paid artificially inflated prices for healthcare services and were therefore injured in their business and property by reason of the antitrust violations alleged herein.

14.    Defendant Evanston Northwestern Healthcare Corporation ("ENH") is an Illinois corporation. ENH provides healthcare services to the public through its wholly-owned hospitals, Evanston Hospital, Glenbrook Hospital and Highland Park Hospital. Evanston Hospital is a 400-bed facility located in Evanston, Illinois. Glenbrook Hospital is a 125-bed facility located in Glenview, Illinois. Highland Park Hospital is located in Highland Park, Illinois and has approximately 150-200 beds. ENH acquired Highland Park Hospital in 2000 in connection with its merger with Lakeland Health Services, Inc. ("Lakeland Health"). Until 2000, Highland Park Hospital was a wholly-owned subsidiary of Lakeland Health.

- 4 -

11738

## GOVERNMENT PROCEEDINGS

15.     On February 10, 2004, the Federal Trade Commission ("FTC" or "Commission") issued a complaint alleging, *inter alia*, that the year 2000 merger of ENH with Lakeland Health, which resulted in ENH's acquisition of Highland Park Hospital, violated Section 7 of the Clayton Act, 15 U.S.C. § 18. Following an eight-week trial, the Administrative Law Judge issued an Initial Decision on October 17, 2005, concluding that the merger violated Section 7 of the Clayton Act and ordering divestiture.

16.     On August 6, 2007, the FTC affirmed the Administrative Law Judge's Initial Decision, with modifications, and ordered remedies to restore competition in the relevant market in lieu of divestiture. The FTC concluded that the evidence demonstrated "that the transaction enabled the merged firm to exercise market power and that the resulting anticompetitive effects were not offset by merger-specific efficiencies." The Commission found that the record showed "that senior officials at Evanston [Northwestern] and Highland Park [Hospital] anticipated that the merger would give them greater leverage to raise prices, that the merged firm did in fact raise its prices immediately and substantially after completion of the transaction…." The Commission also found that econometric analyses "strongly supported the conclusion that the merger gave the combined entity the ability to raise prices through the exercise of market power" and "established that there were substantial merger-coincident price increases and ruled out the most likely competitive benign explanations for substantial portions of those increases."

## CLASS ACTION ALLEGATIONS

17.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

11738

18.     Plaintiffs bring this action on behalf of themselves individually and as a class action under the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following two classes:

(a) All persons (excluding governmental entities, defendants, co-conspirators, other providers of healthcare services, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased acute inpatient hospital services directly from ENH, its wholly-owned hospitals, predecessors or controlled subsidiaries and affiliates from at least as early as January 1, 2000 to the present (the "Class Period").

(b) All persons (excluding governmental entities, defendants, co-conspirators, other providers of healthcare services, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased hospital-based outpatient services directly from ENH, its wholly-owned hospitals, predecessors or controlled subsidiaries and affiliates from at least as early as January 1, 2000 to the present (the "Class Period").

19.     Plaintiffs believe that there are hundreds of Class members as above described, the exact number and their identities being known by defendants.

20.     The Classes are so numerous and geographically dispersed that joinder of all members in impracticable.

21.     There are questions of law and fact common to the Classes, which questions relate to the existence of the antitrust violations alleged, and the type and common pattern of injury sustained as a result thereof, including but not limited to:

a.      Whether ENH has exercised monopoly power in the sale of healthcare services in the relevant geographic market.

b.      Whether ENH's alleged conduct violates Section 2 of the Sherman Act;

c.      Whether ENH's alleged conduct violates Section 7 of the Clayton Act;

11738

      d.      Whether the conduct of ENH, as alleged in this Complaint, caused injury to the business and property of the Plaintiffs and the other members of the Classes;

      e.      The effect of ENH's exercise of monopoly power on the prices of healthcare services sold by ENH and its wholly-owned hospitals during the Class Period; and

      f.      The appropriate measure of damages sustained by Plaintiffs and the other members of the Classes.

**22.**      Plaintiffs are members of the Classes, Plaintiffs' claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs are direct purchasers of healthcare services and their interests are coincident with and not antagonistic to those of the other members of the Classes. In addition, Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

**23.**      The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

**24.**      Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

**25.**      The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

11738

26.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Classes are readily definable and are ones for which records should exist in the files of ENH and its wholly-owned hospitals. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint.  This class action presents no difficulties of management that would preclude its maintenance as a class action.

## TRADE AND COMMERCE

27.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

28.     The activities of defendant, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

29.     During the time period covered by this Complaint, ENH, through its wholly-owned hospitals, sold healthcare services to persons residing in Illinois and other states within the United States.

30.     ENH and its wholly-owned hospitals have used instrumentalities of interstate commerce to sell and market healthcare services.

31.     ENH and its wholly-owned hospitals have sold substantial healthcare services in a continuous and uninterrupted flow of interstate commerce to Class members residing in states other than the state in which ENH and its wholly-owned hospitals are located.  Payments for

11738

healthcare services by Class members also crossed state lines and are therefore part of interstate commerce.

## FACTUAL BACKGROUND

32.     Prior to January 1, 2000, ENH operated two hospitals within the relevant geographic market, Evanston Hospital and Glenbrook Hospital.  These hospitals competed in the relevant geographic market for healthcare services with Highland Park Hospital.

33.     On or about January 1, 2000, ENH merged with Lakeland Health Services, Inc., of which Highland Park Hospital was the sole subsidiary.  As a result of the merger, ENH acquired its competition in the relevant market.  As the record in the FTC proceeding revealed, senior officials at ENH and Highland Park Hospital anticipated that the merger would give them greater leverage to raise prices.

34.     Almost immediately after ENH's acquisition of Highland Park Hospital, prices for healthcare services at the three wholly-owned hospitals were substantially increased.  As the FTC determined, these price increases were directly the result of the merged firm's anticompetitive exercise of market power, not benign competitive reasons.  Prices at the three ENH-owned hospitals continued at anticompetitive levels and remain so today.

35.     ENH began to implement its price increases after the close of the merger. It achieved this through a number of ways.  The Commission determined that "[ENH] rapidly increased the prices that it charged to most of its … customers to the higher of Evanston's or Highland Park's pre-merger rate for a particular service."  Moreover, "[ENH] then set about negotiating a single contract for all three of its hospitals with [customers].  [ENH] did not offer [customers] the option to enter into separate contracts for the hospitals, or to decline to use one

or more of the three hospitals." Finally, "[ENH] sought to raise its prices through the conversion of portions of some of its contracts from per diem to discount off charges payment structures."

36.     A month after the merger, ENH's President Neaman stated in a memorandum that "'Some $24 million of revenue enhancements have been achieved … and '*none of this could have been achieved by either Evanston or Highland Park alone.* The 'fighting unit' of our three hospitals and 1600 physicians was instrumental in achieving these ends.'" (emphasis in original).

37.     Testimony of Highland Park Hospital officials during the FTC proceedings similarly confirmed that the merger enabled ENH to achieve price increases that would not have been possible but for the merger. For example, the CEO of Highland Park Hospital prior to the merger contrasted post-merger price increases against Highland Park Hospital's pre-merger negotiations with customers, testifying that before the merger he did not see an opportunity to raise prices.

38.     According to FTC Complaint counsel's primary economist, "coincident with the merger, average net prices increased by higher-than-predicted levels … in the following ranges: [footnote omitted] Aetna (21.3% to 32.5%); Humana (12.3% to 16.6%); United (75.3% to 93.2%); and Great West (25.1% to 39.5) [citation omitted] The results were statistically significant."

39.     The econometric analyses performed by economists in the FTC proceeding further confirmed that the merger gave ENH market power to increase prices. ENH's economist found that average net inpatient prices to the customers he examined increased by 9% or 10% more than the predicted level due to the merger. The FTC Complaint counsel's primary economist estimated that the merger caused market-wide average net price increases of 11% to 18%.

11738

40.     The FTC also found that the inclusion of hospital-based outpatient services in the relevant product market would not have altered the outcome of the case before the FTC. Economists on both sides in the FTC proceeding found that "ENH's post merger price increases for inpatient services were not offset by reductions (or smaller increases) in ENH's prices for outpatient services."  In fact, ENH's economist found "…larger higher-than-predicted average merger-coincident net price increases for inpatient and hospital-based outpatient services combined (11% or 12%), than he did for inpatient services alone (9% or 10%)."

## VIOLATIONS ALLEGED
### COUNT I
### Sherman Act § 2 Unlawful Monopolization

41.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

42.     The relevant product market is the market for healthcare services, as defined herein.  The relevant geographic market is the geographic triangle created by the three hospitals wholly-owned by ENH, *i.e.*, Evanston Hospital, Glenbrook Hospital, and Highland Park Hospital.

43.     By virtue of its acquisition of Highland Park Hospital on or about January 1, 2000, ENH acquired monopoly power in the marketing of healthcare services in the relevant geographic market and has abused and continues to abuse that power to maintain and enhance its market dominance in the marketing and sale of healthcare services by unreasonably restraining trade, thus artificially and anti-competitively raising the price of healthcare services sold to Plaintiffs and the other members of the Classes.

44.     ENH's conduct constitutes unlawful monopolization and the unlawful use of anti-competitive conduct in the relevant market in violation of Section 2 of the Sherman Act, and

such violation and the effects thereof are continuing and will continue unless injunctive relief is granted.

45.    As a direct and proximate result of ENH's continuing violations of Section 2 of the Sherman Act, Plaintiffs and the other members of the Classes have suffered injury and damages in an amount to be proven at trial.

46.    Plaintiffs, on behalf of themselves and the other members of the Classes, seek money damages from ENH for its violation of Section 2 of the Sherman Act as well as injunctive relief.

47.    ENH's unlawful conduct has had the following affects, among others:

    a.    Prices charged by ENH and its wholly-owned hospitals to Plaintiffs and the other members of the Classes for healthcare services were maintained at artificially high and non-competitive levels; and

    b.    Plaintiffs and the other members of the Classes have had to pay more for healthcare services than they would have paid in a competitive marketplace, unfettered by ENH's monopolization of the relevant market.

48.    During and throughout the Class Period, Plaintiffs and the other members of the Classes directly purchased healthcare services from ENH or its wholly-owned hospitals.

49.    Plaintiffs and the other members of the Classes paid more for the healthcare services that they purchased than they would have paid under conditions of free and open competition.

50.    As a direct and proximate result of ENH's conduct, Plaintiffs and the other members of the Classes have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined.

11738

## COUNT II

### Sherman Act § 2 Attempt to Monopolize
### (Plead in the Alternative to Count I)

**51.** Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 – 40 and 42 of this Complaint.

**52.** ENH acted with the specific intent to monopolize the market for healthcare services.

**53.** There was and is a dangerous possibility that ENH will succeed in its attempt to monopolize the healthcare services market because ENH controls a large percentage of that market, and further success by ENH in excluding competitors from that market will confer a monopoly on ENH in violation of Section 2 of the Sherman Act (15 U.S.C. §2).

**54.** ENH's attempted monopolization of the healthcare services market has harmed competition in that market and has caused injury to the buyers and sellers in that market. Prices in the healthcare services market have been higher than they would have been in a competitive market; the supply of services in that market has been lower than it would have been in a competitive market; and the number and effectiveness of competitors has been diminished by unlawful means.

**55.** There is no appropriate or legitimate business justification for the actions and conduct which have facilitated ENH's attempted monopolization of the healthcare services market.

**56.** Plaintiffs have been damaged as the result of ENH's attempted monopolization of the healthcare services market.

11738

## COUNT III
## Clayton Act §7 Violation

57.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58.     As a result of the merger, ENH has been able to exercise market power in the relevant market. The merger of ENH and Highland Park created the largest hospital system in the relevant market. This market is highly concentrated and the combination significantly increased market concentration.

59.     It is unlikely that entry into the market would remedy, in a timely manner, the anticompetitive effects from the merger. Entry is difficult and likely to take more than two years because of the time required to plan for and to complete construction of an acute care hospital.

60.     Government regulations also make entry difficult. The Illinois Health Facilities Planning Act, 20 Illinois Code § 3960, restricts entry in this market. The Act prevents firms from entering the market by building a hospital without first obtaining a permit from the Illinois Health Facilities Planning Board ("Planning Board"), which administers the Act. The Planning Board has issued detailed regulations, 77 Illinois Administrative Code § 1100, governing the administration of the Act.

61.     For a prospective entrant, the prospects for receiving from the Planning Board a permit to build a new hospital are highly uncertain. The Illinois Health Facilities Planning Act, along with the regulations issued by the Planning Board, authorize the Planning Board to deny applications for permits based on various factors. These include, among others, the potential for duplication of health care services; the desire for orderly development of health care facilities; and the background, character, and financial fitness of the applicant.

- 14 -

62.    Obtaining a permit to build a new hospital may take several years. The Illinois Health Facilities Planning Act authorizes adversely affected companies to seek judicial review under Illinois Administrative Review Law of any final decision of the Planning Board. The regulations of the Planning Board define adversely affected persons to include the incumbent hospitals in the area. These hospitals have a right to intervene in the Planning Board proceedings and to seek judicial review. The time period from application at the Planning Board to completion of judicial review can take several years.

63.    The Illinois Health Facilities Planning Act also restricts expansion by current market participants. It requires a permit to expand capacity by more than 10 beds or more than 10 percent of current capacity, whichever is less.

64.    The effect of the merger substantially lessens competition in the provision of healthcare services in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C.§ 18, in the following ways:

a.    eliminating actual, direct, and substantial competition between ENH and Highland Park Hospital in the relevant product market and relevant geographic market for the provision of healthcare services;

b.    increasing the ability of the merged entity to unilaterally raise prices of healthcare services;

c.    reducing incentives to improve service or product quality in the relevant markets; and

d.    Eliminating Highland Park Hospital as a substantial and independent competitor in the relevant product market and geographic markets.

11738

**65.** The merger of ENH and Highland Park has substantially lessened competition in the relevant market, in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request:

A. That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B. That the Court adjudge that ENH has engaged in unlawful conduct in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

C. That the Court adjudge that ENH has engaged in unlawful conduct in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

D. That judgment be entered for Plaintiffs and the other members of the Classes against ENH for three times the amount of damages sustained by Plaintiffs and the other members of the Classes as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

E. That ENH, its wholly-owned hospitals, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner continuing or maintaining the unlawful exercise of monopoly power alleged herein and from adopting or following any practice, plan, program or device having a similar purpose or effect;

11738

F.    That the Court order the divestiture of Highland Park Hospital, and associated assets, in a manner that restores Highland Park Hospital as a viable, independent competitor in the relevant market;

G.    That the Court grant any other relief appropriate to correct or remedy the anticompetitive effects of ENH's acquisition of Highland Park Hospital or to restore Highland Park Hospital as a viable, independent competitor in the relevant market; and

H.    That Plaintiffs and the other members of the Classes have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: November 29, 2007          Respectfully submitted,

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**

By: _____
Mary Jane Fait, Esq.
Adam J. Levitt, Esq.
Theodore B. Bell, Esq.
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 984-0001

Jayne A. Goldstein, Esq.
**MAGER & GOLDSTEIN LLP**
1640 Town Center Circle, Suite 216
Weston, Florida 33326
Tel: (954) 515-0123
Fax: (954) 515-0124

Ronald B. Kowalczyk
**KOWALCZYK LAW OFFICES, P.C.**
215 Campbell Street
Geneva, Illinois 60134
Tel: (630) 232-2224
Fax: (630) 232-2221

11738

David Balto
**LAW OFFICES OF DAVID BALTO**
1350 I Street, NW
Washington, DC 20005
Tel: (202) 662-2781

***Counsel for Plaintiffs***

11738