UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | No. 07 CV 4446 |
| EVANSTON NORTHWESTERN | ) | |
| HEALTHCARE | ) | (consolidated with |
| | ) | No. 07 CV 4523, |
| | ) | No. 07 CV 5275, |
| | ) | No. 08 CV 2343, and |
| | ) | No. 08 CV 2658) |
| | ) | |
| | ) | Judge Joan H. Lefkow |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant, Evanston Northwestern Healthcare Corporation ("ENH"), merged with Highland Park Hospital ("Highland Park") on January 1, 2000. Plaintiffs Jeffrey Porter, Amit Berkowitz, and Gerald and Noreen Lekas (collectively, "plaintiffs") filed their original class action complaints against ENH on August 7, August 10, and September 18, 2007, respectively, alleging violations of Section 2 of the Sherman Act. On September 25, 2007, these three cases were consolidated,[1] and on November 29, 2007, plaintiffs filed a consolidated amended class action complaint, alleging two alternative counts under Section 2 of the Sherman Act, 15 U.S.C.

---

[1] After ENH's motion to dismiss was fully briefed, the court further consolidated under this lead case (No. 07 CV 4446) related cases (Nos. 08 CV 2343 and 08 CV 2658) filed by plaintiffs Steven J. Messner and Henry W. Lahmeyer on April 24 and May 8, 2008, respectively. Nevertheless, as the court made clear in its orders of May 16 and 22, 2008, ENH's motion to dismiss is deemed to have been submitted and directed against Messner's and Lahmeyer's claims as well.

§ 2, for unlawful monopolization or attempt to monopolize, and one count under Section 7 of the Clayton Act, 15 U.S.C. § 18.

Before the court is ENH's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ENH argues that under 15 U.S.C. §15b, plaintiffs' claims are subject to a four-year statute of limitations that expired in January 2004, and are thus time barred. For the following reasons, ENH's motion to dismiss [#32] is denied.

## STANDARD

A defendant may bring a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim on which relief may be granted. *E.E.O.C.* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "To state such a claim, the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded allegations in the plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). In order to survive a motion under Rule 12(b)(6), the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, — U.S. —, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (internal quotation marks and citations omitted). The allegations must also be "enough to raise a right to relief above the speculative level." *Id.* at 1965 (citing 5 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

Affirmative defenses such as the statute of limitations are generally not resolved with a motion to dismiss under Rule 12(b)(6). *See Hollander* v. *Brown*, 457 F.3d 688, 691 n.1 (7th Cir.

2006). Nevertheless, dismissal under Rule 12(b)(6) may be appropriate when a plaintiff effectively pleads himself out of court by alleging facts demonstrating that his suit is barred by the statute of limitations. *See id.*; *Zitka* v. *Vill. of Westmont*, No. 07 C 0949, 2007 WL 3334336, at *2 (N.D. Ill. Nov. 6, 2007).

**BACKGROUND**

ENH is a not-for-profit corporation that consists of three hospitals located in suburbs just north of Chicago: Evanston Hospital, Glenbrook Hospital, and Highland Park. ENH acquired Highland Park on January 1, 2000. Since that date, ENH has operated the three hospitals as a single, integrated entity.

More than four years after the merger, on February 10, 2004, the Federal Trade Commission ("FTC" or "the Commission") filed an administrative complaint against ENH, alleging that the merger between ENH and Highland Park substantially lessened competition and enabled ENH to raise its prices to private payers above the prices that the hospitals would have charged absent the merger, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. The complaint also alleged that the contracting for physician services in which ENH engaged on behalf of its independent physicians constitutes unfair methods of competition in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

After a trial before an FTC Administrative Law Judge ("ALJ"), ENH was found to be in violation of Section 7 of the Clayton Act and ordered to divest the acquired assets of Highland Park. On appeal to the full Commission, the ALJ's finding of liability was affirmed, but the Commission reversed the divestiture order. *See In re Evanston Northwestern Healthcare*, Dkt. No. 9315, 2007 WL 2286196 (F.T.C. Aug. 6, 2007) (Order). Instead, the Commission found that

a conduct remedy (rather than a structural remedy, such as divestiture) was appropriate, and ordered that ENH establish two separate and independent teams for negotiating contracts with payors—one team for Evanston Hospital and Glenbrook Hospital and another for Highland Park. *Id.*

Plaintiffs, direct purchasers of healthcare services from ENH, seek damages on behalf of themselves and similarly situated direct purchasers. Plaintiffs first filed a complaint on August 7, 2007, more than seven and a half years after the merger and nearly three and a half years after the FTC commenced its administrative action. Plaintiffs allege that "[b]y virtue of [the merger] on January 1, 2000, ENH acquired monopoly power in the marketing of healthcare services in the relevant geographic market and has abused and continues to abuse that power to maintain and enhance its market dominance in the marketing and sale of healthcare services by unreasonably restraining trade." Complaint ¶ 43. In terms of timing, plaintiffs allege that "[a]lmost immediately after the [merger], prices . . . at the three . . . hospitals were substantially increased." *Id.* ¶ 34. In their complaint, plaintiffs also quote the Commission's August 6, 2007 finding that "the merged firm did in fact raise its prices immediately and substantially after completion of the transaction." *Id.* ¶ 16 (quoting *In re Evanston Northwestern Healthcare*, Dkt. No. 9315 (F.T.C. Aug. 6, 2007) (Opinion of the Commission)); *see also id.* ¶ 35 ("ENH rapidly increased the prices it charged to its customers . . . ") (internal quotation marks and citations omitted); *id.* ¶ 36 ("A month after the merger, ENH's President Neaman stated in a memorandum that 'Some $24 million of revenue enhancements have been achieved . . . and *none of this could have been achieved by either Evanston or Highland Park alone*.'") (additional quotation marks omitted) (emphasis in original).

4

**DISCUSSION**

ENH argues that even if the allegations of plaintiffs' complaint are accepted as true and construed in a light most favorable to the plaintiffs with all reasonable inferences drawn in favor of the plaintiffs, the complaint nonetheless must be dismissed under Rule 12(b)(6) because plaintiffs' claims are time barred. ENH cites 15 U.S.C. § 15b, which requires that any private cause of action brought under the federal antitrust laws "be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b; *see also id.* § 15. ENH further relies on two opinions of the Eighth Circuit, *Midwestern Machinery Co., Inc.* v. *Northwest Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004), and *Concord Boat Corp* v. *Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000), for the proposition that an action challenging the initial acquisition of another company's stocks or assets accrues at the time of the merger or acquisition. Thus, ENH contends, because plaintiffs' complaint was filed more than four years after January 1, 2000—the day the merger was consummated and, consequently, the date on which their claims accrued—plaintiffs have effectively pleaded themselves out of court.

In response, plaintiffs contend that the date on which their claims accrued cannot be decided on this motion dismiss and, in any case, occurred at some time after January 1, 2000. ENH's contention that their claims accrued on the day the merger was consummated is, plaintiffs argue, both legally incorrect and inconsistent with the factual allegations pleaded in their complaint. Plaintiffs cite a number of decisions in which the Seventh Circuit has noted that "[u]nless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." *Foss* v. *Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005) (citing *United States* v. *Northern Trust Co.*, 372 F.3d 886 (7th Cir. 2004); *Xechem, Inc.* v.

*Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004); *Walker* v. *Thompson*, 288 F.3d 1005 (7th Cir.2002)).

Plaintiffs further argue that under the "discovery rule," a claim accrues not when the defendant's anticompetitive conduct began, nor when a plaintiff was first injured by that conduct, but when "the plaintiff discovers that 'he has been *injured* and who has *caused* the injury.'" *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (quoting *Barry Aviation, Inc.* v. *Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (quoting *United States* v. *Duke*, 229 F.3d 627, 630 (7th Cir. 2000) (emphasis in original))); *see also Cada* v. *Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("Accrual is the date on which the statute of limitations begins to run . . . not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured."). Plaintiffs contend that they did not allege the date that they discovered their injury and, moreover, were not required to do so. *See, e.g.*, *Hollander* v. *Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (noting that "a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense"). Thus, plaintiffs argue, their complaint does not preclude the possibility that they learned of their injury at some time after January 1, 2000. Plaintiffs also argue that ENH's contention that plaintiffs were aware of their antitrust injuries at the time of or shortly after the merger is implausible, because neither the FTC nor any other authority challenged the merger as anticompetitive at the time of the merger.

As ENH points out, the discovery rule holds not that a claim accrues when an injury is actually discovered but, rather, at that point in time when a diligent inquiry would have revealed

an injury and its cause. *See In re Copper Antitrust Litig.*, 436 F.3d at 789–90. ENH thus argues that because the merger was public and consummated on January 1, 2000 and because plaintiffs allege that prices increased "immediately" or "almost immediately" after that date, see Compl. ¶¶ 16, 34–35, they effectively pleaded themselves out of court.

The question of when a diligent inquiry would have revealed the plaintiffs' injury, however, is not plainly apparent from the face of plaintiffs' complaint. *Midwestern Machinery*, the case on which ENH principally relies for the proposition that plaintiffs' claims accrued at the time the merger was consummated, is instructive. In *Midwestern*, the plaintiffs sued Northwest Airlines in 1997, alleging that Northwest's 1986 acquisition of a competing airline had substantially lessened competition in violation of Section 7 of the Clayton Act. 392 F.3d 265. In affirming the district court's grant of summary judgment in favor of Northwest on the basis of the statute of limitations, the Eighth Circuit noted, "Mergers occur in the public eye and at a reasonably certain date. It is *undisputed* that Midwestern was well aware of its potential injury when Northwest and Republic merged." *Id.* at 272 (emphasis added). The court further noted that "Midwestern has *presented no evidence* tending to show why it would not have perceived Northwest's acquisition of Republic as anti-competitive in 1986." *Id.* at 273 (emphasis added).

In this case, in contrast to *Midwestern Machinery*, the plaintiffs dispute ENH's assertion that they either knew or should have known of their potential injury at the time the merger was consummated. Whereas Midwestern, in responding to Northwest's motion for summary judgment, failed to present evidence to rebut such an inference, the plaintiffs in this case bear no comparable burden under a motion to dismiss. Indeed, the court here must draw all reasonable inferences in favor of the plaintiffs. *See Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th

7

Cir. 1999). As the Supreme Court explained in *United States* v. *E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 597, 77 S. Ct. 872, 1 L. Ed. 2d 1057 (1957), the aim of Section 7 of the Clayton Act "was primarily to arrest apprehended consequences of inter corporate relationships before those relationships could work their evil, *which may be at or any time after the acquisition, depending upon the circumstances of the particular case.*" *Id.* (emphasis added). Although it may be likely that plaintiffs knew or should have known of their potential injury at the time the merger was consummated, neither the legal precedents cited by ENH[2] nor the allegations pleaded in plaintiffs' complaint definitively require such a conclusion.

Plaintiffs further argue that the statute of limitations was tolled during the FTC's administrative proceedings. Section 16(i) of Title 15 ("Section 16(i)," a.k.a. "Section 5(i) of the Clayton Act") provides, in relevant part, that "[w]henever any civil . . . proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws . . . the running of the statute of limitations in respect to every private . . . right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter." 15 U.S.C. §16(i). Although

---

[2] None of the three decisions on which ENH relies for the proposition that plaintiffs' claims accrued at the time of the merger so held in the context of a motion to dismiss. First, as discussed above, in *Midwestern Machinery*, 392 F.3d 265, the Eighth Circuit affirmed a grant of *summary judgment*. Second, in *Concord Boat*, 207 F.3d 1039, the Eighth Circuit reversed the district court's *post-trial judgment*. Third, in *United States Gypsum Co.* v. *Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003), the Seventh Circuit merely noted in *dicta* that "[a] merger may be complete at closing." *Id.* at 628 (citing *Concord Boat*, 207 F.3d at 1050–53).

Furthermore, the antitrust treatise on which ENH relies for the proposition that "policy reasons militate in favor of running the statute of limitation from the date that two firms come under the degree of control necessary to cause the competitive injury in question," 2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 320c5, at 304, relies, in turn, on the Eighth Circuit's opinions in *Midwestern Machinery* and *Concord Boat*.

this provision, if read literally, might not apply to administrative actions (as opposed to "civil proceedings") brought by the FTC (rather than "the United States"), the Supreme Court held in *Minnesota Mining & Manufacturing Co.* v. *New Jersey Wood Finishing Co.*, 381 U.S. 311, 321–22, 85 S. Ct. 1473, 14 L. Ed. 2d 405 (1965), that FTC administrative proceedings trigger section 16(i). The Court reasoned that Congress passed the provision with the clear intent that "private parties be permitted the benefits of prior government actions," and such benefits "flow as naturally from Commission proceedings as they do from Justice Department actions." *Id.* Plaintiffs thus argue that any claims that accrued on or after February 10, 2000—exactly four years prior to the FTC's filing of its complaint, and roughly six weeks after the merger was consummated—are timely.

ENH argues that plaintiffs' claims are not subject to tolling pursuant to Section 16(i). In a footnote to its reply brief, ENH reasons that the court's analysis of this issue must be limited to a comparison of the two complaints "on their face," *Leh* v. *Gen. Petroleum Corp.*, 382 U.S. 54, 65, 86 S. Ct. 203, 15 L. Ed. 2d 134 (1965), and asserts that "[t]here are several important and crucial differences apparent on the face of the complaints, including different product markets, different transactions, and different relevant customers." Def.'s Reply at 5 n.3 (citing *Novell, Inc.* v. *Microsoft Corp.*, 505 F.3d 302, 321–22 (4th Cir. 2007)). Beyond this, ENH does not elaborate on its comparison of the plaintiffs' complaint to that of the FTC.

The court, however, observes a number of similarities between the two complaints. Perhaps most significantly, the plaintiffs' claims, like those of the FTC, rely in part on Section 7 of the Clayton Act and are based in large part on the same matter of which the FTC complains—ENH's acquisition of Highland Park. The FTC, like the plaintiffs in this case,

9

alleges that the merger enabled ENH to raise its prices above the prices that the hospitals would have charged absent the merger and, consequently, has substantially lessened competition.

Of course, there are, as ENH suggests, some distinctions between the two complaints. For example, while the FTC's complaint alleges that ENH raised prices for healthcare services to private payers—a group which includes commercial payers, managed care plans, and self-insurance plans—the plaintiffs' complaint alleges that ENH raised prices to direct purchasers. As the Supreme Court made clear in *Leh*, however, "courts must not allow a legitimate concern that invocation of Section 16(i) be made in good faith to lead them into a miserly or stingy construction of the statutory language." *Morton's Market, Inc.* v. *Gustafson's Dairy, Inc.*, 198 F.3d 823, 830 (11th Cir. 1999) (citing *Leh*, 283 U.S. at 65–66). Rather, the tolling provision applies "even if, after the government proceeding, the private plaintiff alleges that the defendants used different means to achieve different objectives so long as there is a real relationship between the activities complained of in each proceeding." *Id.* at 830 (citing *Minn. Mining*, 381 U.S. 311; *Leh*, 283 U.S. at 65–66); *see also Gregg Commc'ns Sys., Inc.* v. *Am. Tel. and Tel. Co.*, 98 F.R.D. 715, 719–720 (C.D. Ill. 1983) (citing cases) ("The lower courts . . . have liberally construed Section 16(i).").

*Novell*, the case on which ENH relies, held that the tolling provision of Section 16(i) did not apply to the plaintiffs' complaint because the product market they alleged—the market for office-productivity applications such as word processors and spreadsheets—was separate and distinct from the markets asserted in the Justice Department's complaint—those for PC operating systems and Internet browsers. As the Fourth Circuit noted in its decision, however, "[t]here is no requirement . . . of complete identity of the means, objectives, or statutory violations in the

public and private lawsuits." *Id.* at 320. Indeed, that same court cited with apparent approval two decisions in which district courts had found that the product markets alleged by the plaintiffs were far from identical to those at issue in the government-initiated proceedings but nevertheless held that Section 16(i) tolling was applicable. *Id.* at 322 n.27 (citing *In re Ariz. Dairy Prods. Litig.*, No. Civ. 74-569A, 1984 WL 21984 (D. Ariz. Nov. 5, 1984); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 317, 320–21 (S.D.N.Y. 1971)). In *Arizona Dairy Products*, the plaintiffs' claims, which alleged, in part, a price-fixing conspiracy in the retail milk market, were tolled by a government suit for price-fixing in the wholesale milk market. 1984 WL 21984. Likewise, in *Antibiotic Antitrust Actions*, the plaintiffs' claims for damages suffered in the foreign broad spectrum antibiotics market for agricultural consumption were tolled by a government suit for conduct in the domestic broad spectrum antibiotics market for human consumption. 333 F. Supp. at 320–21.

Here, the FTC's complaint defines the relevant product market as "general acute care inpatient hospital services sold to private payers," Pl.'s Surreply, Ex. A (FTC's Compl.), at 3, whereas the plaintiffs' defines the relevant markets to include acute inpatient hospital services sold to direct purchasers as well as hospital-based outpatient services sold to direct purchasers. Thus, in addition to differences in the particular type of customers with whom the respective complaints are concerned, plaintiffs also broadened the scope of hospital services to include those provided on an outpatient basis. In spite of these distinctions, however, the product markets alleged by the plaintiffs in this case are at least as similar to those asserted by the government as was the case in either *Arizona Dairy Products* or *Antibiotic Antitrust Actions*, and far more similar than those at issue in *Novell*. As the Eleventh Circuit reiterated in *Morton's*

11

*Market*, "If there is a significant, although incomplete, overlap of subject matter, the statute is tolled even as to the differences." 198 F.3d at 830 (citing *Leh*, 382 U.S. at 54). Thus, Section 16(i) tolling would be applicable to any of plaintiffs' claims that accrued on or after February 10, 2000—four years prior to the FTC's filing of its complaint.

As discussed above, it is not clear from the face of plaintiffs' complaint that their claims accrued at the time of the merger. It is likewise unclear on this motion to dismiss that plaintiffs' claims necessarily accrued prior to February 10, 2000—roughly six weeks after the merger. ENH's motion to dismiss must therefore be denied.[3]

---

[3] Because the defendant has not established that plaintiffs' claims accrued prior to February 10, 2000, the court need not address plaintiffs' additional arguments in opposition to ENH's motion to dismiss—(a) that plaintiffs have alleged a continuing violation and (b) that in the event the court finds that the plaintiffs' claims are untimely, plaintiffs should be permitted to file an amended complaint adding fraudulent concealment allegations.

**CONCLUSION AND ORDER**

For the reasons discussed above, ENH's motion to dismiss plaintiffs' complaint [#32] is denied. This matter is set for a scheduling conference on June 12, 2008 at 10:00 A.M. In the interim, the parties are directed to discuss with each other the possibility of a phased discovery schedule with an initial discovery period focused solely on the issue of the accrual date of plaintiffs' claims.

Dated: May 29, 2008         Enter:_____

                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge