UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Evanston Northwestern Healthcare Corporation Antitrust Litigation | Master File No. 07-CV-4446 |
| This Document Relates To: | Judge Lefkow |
| All Actions | Mag. Judge Denlow |

CONSOLIDATED
CLASS ACTION COMPLAINT

Plaintiffs Amit Berkowitz, Steven J. Messner, Henry W. Lahmeyer, M.D., S.C., and Painters District Council No. 30 Health & Welfare Fund (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, for their Complaint against Defendant, Evanston Northwestern Healthcare Corporation ("ENH") [1], allege as follows:

NATURE OF THE CASE

1. This lawsuit is brought as a class action on behalf of all end-payors who purchased inpatient and hospital-based outpatient healthcare services directly from ENH, its wholly owned hospitals, predecessors, successors, or controlled subsidiaries and affiliates from at least as early as January 1, 2000 to the present (the "Class Period").

2. During and throughout the Class Period, ENH engaged in illegal monopolization of the market for inpatient and hospital-based outpatient healthcare services in the geographic triangle formed by ENH's three wholly owned hospitals, Evanston Hospital, Glenbrook Hospital,

---

[1] Evanston Northwestern Healthcare Corporation has recently changed its name to NorthShore University HealthSystem. For purposes of consistency and in order to avoid confusion, NorthShore University HealthSysytem and Evanston Northwestern Healthcare Corporation shall continue to be referred to as "ENH" herein.

and Highland Park Hospital. As determined by the Federal Trade Commission, the merger of these hospitals substantially lessened competition in the relevant market.

3. Because of ENH's unlawful conduct, Plaintiffs and the Class (defined in paragraph 17 below) paid artificially inflated prices for healthcare services and, as a result, have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 as Plaintiffs bring their claims under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against ENH for the injuries sustained by Plaintiffs and the Class by reason of the violations, as hereinafter alleged, of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18.

5. This action is also instituted to secure injunctive relief against ENH to prevent it from further violations of Section 2 of the Sherman Act and Section 7 of the Clayton Act as hereinafter alleged.

6. Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b), (c), and (d).

7. Venue and personal jurisdiction is proper in this judicial district because during the Class Period ENH resided, transacted business, was found, or had agents in this District, and because a substantial part of the events giving rise to Plaintiffs' claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this District.

- 3 -

**DEFINITIONS**

8.    As used herein, the term:

a.    "Healthcare Services" refers to general inpatient and hospital-based outpatient services provided by ENH that are ordinarily provided by hospitals, including primary, secondary, and tertiary services. These include, but are not limited to, obstetrical and pediatric services, psychiatric care, neurosurgery, radiation therapy, cardiology services, orthopedics, trauma centers, diagnostic centers, cancer treatments, internal medicine, and general surgical services.

b.    "Person" means any individual, employee welfare benefit plan, partnership, corporation, association, or other business or legal entity; and

c.    "Class Period" refers to the period from at least January 1, 2000 to the present.

**PARTIES**

**A. Plaintiffs**

9.    Amit Berkowitz was at all relevant times a resident of Evanston, Illinois.

10.    Steven J. Messner was at all relevant times a resident of Northfield, Illinois.

11.    Henry W. Lahmeyer M.D., S.C., was at all relevant times an Illinois corporation formed under the Medical Corporation Act, 805 ILCS 15/1 *et seq.*, with its principal place of business located in Northfield, Illinois.

12.    Painters District Council No. 30 Health & Welfare Fund ("Painters") is located in Aurora, Illinois and is an "employee welfare benefit plan" and an "employee benefit plan" within the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1), 1002(3), and 1003(a). As such, Painters is a legal entity entitled to bring suit in its own name pursuant to 29

- 4 -

U.S.C. § 1132(d). Painters is a not-for-profit trust, sponsored by and administered by a Board of Trustees, established and maintained to provide comprehensive health care benefits to participants-workers who are employed under various collective bargaining agreements and to their dependents.

13. During the Class Period, Plaintiffs and the Class purchased or paid for Healthcare Services directly from one or more of the hospitals owned by ENH. As a result of ENH's unlawful monopolization, Plaintiffs and the Class paid artificially inflated prices for Healthcare Services and were therefore injured in their business and property by reason of the antitrust violations alleged herein.

**B.     Defendant**

14. ENH is an Illinois corporation that provides Healthcare Services to the public through its wholly owned hospitals, Evanston Hospital, Glenbrook Hospital and Highland Park Hospital. Evanston Hospital is a 400-bed facility located in Evanston, Illinois. Glenbrook Hospital is a 125-bed facility located in Glenview, Illinois. Highland Park Hospital is located in Highland Park, Illinois and has approximately 150-200 beds. ENH acquired Highland Park Hospital in 2000 in connection with its merger with Lakeland Health Services, Inc. ("Lakeland Health"). Until 2000, Highland Park Hospital was a wholly-owned subsidiary of Lakeland Health.

**GOVERNMENT PROCEEDINGS**

15. On February 10, 2004, the Federal Trade Commission ("FTC" or "Commission") issued a complaint alleging, *inter alia*, that the year 2000 merger of ENH with Lakeland Health, which resulted in ENH's acquisition of Highland Park Hospital, violated Section 7 of the Clayton Act, 15 U.S.C. § 18. Following an eight-week trial, the Administrative Law Judge issued an

Initial Decision on October 17, 2005, concluding that the merger did violate Section 7 of the Clayton Act and ordering divestiture.

16. On August 6, 2007, the FTC affirmed the Administrative Law Judge's Initial Decision, with modifications, and ordered remedies to restore competition in the relevant market in lieu of divestiture. The FTC concluded that the evidence demonstrated "that the transaction enabled the merged firm to exercise market power and that the resulting anticompetitive effects were not offset by merger-specific efficiencies." The Commission found that the record showed "that senior officials at Evanston [Northwestern] and Highland Park [Hospital] anticipated that the merger would give them greater leverage to raise prices, that the merged firm did in fact raise its prices immediately and substantially after completion of the transaction . . . ." The Commission also found that econometric analyses "strongly supported the conclusion that the merger gave the combined entity the ability to raise prices through the exercise of market power" and "established that there were substantial merger-coincident price increases and ruled out the most likely competitive benign explanations for substantial portions of those increases."

## CLASS ACTION ALLEGATIONS

17. Plaintiffs bring this action on behalf of themselves individually and as a class action under the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the Class defined as:

> All persons or entities in the United States of America and Puerto Rico (excluding governmental entities, defendants, co-conspirators, other providers of healthcare services, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased or paid for inpatient hospital services or hospital-based outpatient services directly from ENH, its wholly-owned hospitals, predecessors or controlled subsidiaries and affiliates (the "Class") from at least as early as January 1, 2000 to the present (the "Class Period").

18. The Class is so numerous and geographically dispersed that joinder of all members is impracticable. While Plaintiffs do not know the number and identity of all members of the Class, Plaintiffs believe that there are hundreds of Class members, the exact number and identities of which can be obtained readily from Defendant's books and records.

19. There are questions of law and fact common to the Class that relate to the existence of the antitrust violations alleged and the type and common pattern of injury sustained as a result thereof, including but not limited to:

    a. Whether ENH has exercised monopoly power in the sale of Healthcare Services in the relevant geographic market.

    b. Whether ENH's alleged conduct violates Section 2 of the Sherman Act;

    c. Whether ENH's alleged conduct violates Section 7 of the Clayton Act;

    d. Whether the conduct of ENH, as alleged in this Complaint, caused injury to the business and property of the Plaintiffs and the other members of the Class;

    e. The effect of ENH's exercise of monopoly power on the prices of Healthcare Services sold by ENH and its wholly-owned hospitals during the Class Period; and

    f. The appropriate measure of damages sustained by Plaintiffs and the other members of the Class.

20. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

21.     Plaintiffs are members of the Class, their claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs and the Class are direct purchasers of Healthcare Services, and their interests are coincident with and not antagonistic to those of the other members of the Class. In addition, Plaintiffs have retained and are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

22.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

23.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

24.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records should exist in the files of ENH and its wholly owned hospitals.  Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint.  This class action does not present any difficulties of management that would preclude its maintenance as a class action.

## RELEVANT MARKET

25. The relevant product market is the market for Healthcare Services, as defined herein. The relevant geographic market is the geographic triangle created by the three hospitals wholly owned by ENH, *i.e.*, Evanston Hospital, Glenbrook Hospital, and Highland Park Hospital.

## TRADE AND COMMERCE

26. Because members of the Class are geographically dispersed, Defendant's activities were within the flow of, and substantially affect, interstate commerce.

27. During the Class Period, ENH, through its wholly-owned hospitals, sold Healthcare Services to persons residing in Illinois and other states within the United States.

28. ENH and its wholly-owned hospitals have used instrumentalities of interstate commerce to sell and market Healthcare Services.

29. ENH and its wholly-owned hospitals have sold substantial Healthcare Services in a continuous and uninterrupted flow of interstate commerce to the Class residing in states other than Illinois. Payments for Healthcare Services by the Class also crossed state lines and are therefore part of interstate commerce.

## FACTUAL BACKGROUND

30. Prior to January 1, 2000, ENH operated two hospitals within the relevant geographic market, Evanston Hospital and Glenbrook Hospital. These hospitals competed in the relevant geographic market for Healthcare Services with Highland Park Hospital.

31. On or about January 1, 2000, ENH merged with Lakeland Health Services, Inc., of which Highland Park Hospital was the sole subsidiary. As a result of the merger, ENH acquired its competition in the relevant market. As the record in the FTC proceeding revealed,

senior officials at ENH and Highland Park Hospital anticipated that the merger would give them greater leverage to raise prices.

32. Sometime after ENH's acquisition of Highland Park Hospital, and continuously through the present, prices for Healthcare Services at the three wholly owned hospitals were substantially increased. As the FTC determined, these price increases were directly the result of the merged firm's anticompetitive exercise of market power, not benign competitive reasons. Prices at the three ENH-owned hospitals continued at anticompetitive levels and remain so today.

33. ENH began to implement its price increases sometime after the close of the merger through a number of ways. The FTC determined that "[ENH] rapidly increased the prices that it charged to most of its . . . customers to the higher of Evanston's or Highland Park's pre-merger rate for a particular service." Moreover, "[ENH] then set about negotiating a single contract for all three of its hospitals with [customers]. [ENH] did not offer [customers] the option to enter into separate contracts for the hospitals, or to decline to use one or more of the three hospitals." Finally, "[ENH] sought to raise its prices through the conversion of portions of some of its contracts from *per diem* to discount off charges payment structures."

34. A month after the merger, ENH's President Neaman stated in an internal memorandum that "Some $24 million of revenue enhancements have been achieved . . . and '*none of this could have been achieved by either Evanston or Highland Park alone.* The 'fighting unit' of our three hospitals and 1600 physicians was instrumental in achieving these ends.'" (emphasis in original).

35. Testimony of Highland Park Hospital officials during the FTC proceedings similarly confirmed that the merger enabled ENH to achieve price increases that would not have been possible but for the merger. For example, the CEO of Highland Park Hospital prior to the

- 9 -

merger contrasted post-merger price increases against Highland Park Hospital's pre-merger negotiations with customers, testifying that before the merger he did not see an opportunity to raise prices.

36. The econometric analyses performed by economists in the FTC proceeding further confirmed that the merger gave ENH market power to increase prices. ENH's own economist found that average net inpatient prices increased by an additional 9% or 10% over the predicted level due to the merger. The FTC's primary economist estimated that the merger caused market-wide average net price increases of 11% to 18%.

37. The FTC also found that the inclusion of hospital-based outpatient services in the relevant product market would not have altered the outcome of the case before the FTC. Economists on both sides in the FTC proceeding found that "ENH's post merger price increases for inpatient services were not offset by reductions (or smaller increases) in ENH's prices for outpatient services." In fact, ENH's economist found "larger higher-than-predicted average merger-coincident net price increases for inpatient and hospital-based outpatient services combined (11% or 12%), than he did for inpatient services alone (9% or 10%)."

38. On April 24, 2008, the FTC issued its Opinion of the Commission on Remedy and Final Order, copies of which are attached as Exhibit A and B respectively.

39. On May 14, 2008, ENH announced that it was acquiring Rush North Shore Medical Center, a 265-bed hospital in Skokie, Illinois.

40. Rush North Shore is located approximately one mile outside the triangle formed by the locations of Evanston, Highland Park, and Glenbrook Hospitals.

41. The acquisition of Rush North Shore will further concentrate the markets for healthcare services in the northern suburbs of Chicago and spread ENH's monopoly power.

## COUNT I
## Sherman Act § 2 Unlawful Monopolization

42. Plaintiffs re-allege and incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs.

43. By virtue of its acquisition of Highland Park Hospital on or about January 1, 2000, ENH acquired monopoly power in the marketing of Healthcare Services in the relevant geographic market and has abused and continues to abuse that power to maintain and enhance its market dominance in the marketing and sale of Healthcare Services by unreasonably restraining trade, thus artificially and anti-competitively raising the price of Healthcare Services sold to Plaintiffs and the Class.

44. ENH's conduct constitutes unlawful monopolization and unlawful anti-competitive conduct in the relevant market in violation of Section 2 of the Sherman Act, and such violation and the effects thereof are continuing and will continue unless injunctive relief is granted.

45. As a direct and proximate result of ENH's continuing violations of Section 2 of the Sherman Act, Plaintiffs and the other members of the Class have suffered injury and damages in an amount to be proven at trial.

46. Plaintiffs and the Class seek money damages from ENH for its violation of Section 2 of the Sherman Act as well as injunctive relief.

47. ENH's unlawful conduct has had the following impacts, among others:

    a. Prices charged by ENH and its wholly owned hospitals to Plaintiffs and the Class for Healthcare Services were maintained at artificially high and non-competitive levels; and

      b.      Plaintiffs and the other members of the Class have had to pay more for Healthcare Services than they would have paid in a competitive marketplace, unfettered by ENH's monopolization of the relevant market.

48.      During and throughout the Class Period, Plaintiffs and the Class directly purchased Healthcare Services from ENH or its wholly owned hospitals.

49.      Plaintiffs and the Class paid more for the Healthcare Services that they purchased than they would have paid under conditions of free and open competition.

50.      As a direct and proximate result of ENH's conduct, Plaintiffs and the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined.

## COUNT II
## Sherman Act § 2 Attempt to Monopolize
### (Pled in the Alternative to Count I)

51.      Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 – 41 of this Complaint.

52.      ENH acted with the specific intent to monopolize the market for Healthcare Services.

53.      There was and is a dangerous possibility that ENH will succeed in its attempt to monopolize the Healthcare Services market because ENH controls a large percentage of that market, and further success by ENH in excluding competitors from that market will confer a monopoly on ENH in violation of Section 2 of the Sherman Act (15 U.S.C. §2).

54.      ENH's attempted monopolization of the Healthcare Services market has harmed competition in that market and has caused injury to the buyers and sellers in that market. Prices in the Healthcare Services market have been higher than they would have been in a competitive

market; the supply of services in that market has been lower than it would have been in a competitive market; and the number and effectiveness of competitors has been diminished by unlawful means.

55. There is no appropriate or legitimate business justification for the actions and conduct which have facilitated ENH's attempted monopolization of the Healthcare Services market.

56. Plaintiffs and the Class have been damaged as the result of ENH's attempted monopolization of the Healthcare Services market.

## COUNT III
## Clayton Act §7 Violation

57. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58. As a result of the merger, ENH has been able to exercise market power in the relevant market. The merger of ENH and Highland Park created the largest hospital system in the relevant market. This market is highly concentrated and the combination significantly increased market concentration.

59. It is unlikely that entry into the market would remedy, in a timely manner, the anticompetitive effects from the merger. Entry is difficult and likely to take more than two years because of the time required to plan for and to complete construction of an acute care hospital.

60. Government regulations also make entry difficult. The Illinois Health Facilities Planning Act, 20 ILCS § 3960, restricts entry in this market. The Act prevents firms from entering the market by building a hospital without first obtaining a permit from the Illinois Health Facilities Planning Board ("Planning Board"), which administers the Act. The Planning Board

has issued detailed regulations, Illinois Administrative Code tit. 77, part 1130, governing the administration of the Act.

61. For a prospective entrant, the prospects for receiving a permit to build a new hospital from the Planning Board are highly uncertain. The Illinois Health Facilities Planning Act, along with the regulations issued by the Planning Board, authorizes the Planning Board to deny applications for permits based on various factors. These include, among others, the potential for duplication of health care services; the desire for orderly development of health care facilities; and the background, character, and financial fitness of the applicant.

62. Obtaining a permit to build a new hospital may take several years. The Illinois Health Facilities Planning Act authorizes adversely affected companies to seek judicial review under Illinois Administrative Review Law of any final decision of the Planning Board. The regulations of the Planning Board define adversely affected persons to include the incumbent hospitals in the area. These hospitals have a right to intervene in the Planning Board proceedings and to seek judicial review. The time period from application at the Planning Board to completion of judicial review can take several years.

63. The Illinois Health Facilities Planning Act also restricts expansion by current market participants. It requires a permit to expand capacity by more than 10 beds or more than 10 percent of current capacity, whichever is less.

64. The effect of the merger substantially lessens competition in the provision of Healthcare Services in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, in the following ways:

      a.    eliminating actual, direct, and substantial competition between ENH and Highland Park Hospital in the relevant product market and relevant geographic market for the provision of Healthcare Services;

      b.    increasing the ability of the merged entity to unilaterally raise prices of Healthcare Services;

      c.    reducing incentives to improve service or product quality in the relevant markets; and

      d.    eliminating Highland Park Hospital as a substantial and independent competitor in the relevant product market and geographic markets.

65.     The merger of ENH and Highland Park has substantially lessened competition in the relevant market, in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request:

A.     That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     That the Court adjudge that ENH has engaged in unlawful conduct in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

C.     That the Court adjudge that ENH has engaged in unlawful conduct in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

D.     That judgment be entered for Plaintiffs and the other members of the Class against ENH for three times the amount of damages sustained by Plaintiffs and the other members of the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

  E. That ENH, its wholly owned hospitals, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner continuing or maintaining the unlawful exercise of monopoly power alleged herein and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

  F. That the Court order the divestiture of Highland Park Hospital, and associated assets, in a manner that restores Highland Park Hospital as a viable, independent competitor in the relevant market;

  G. That the Court grant any other relief appropriate to correct or remedy the anticompetitive effects of ENH's acquisition of Highland Park Hospital or to restore Highland Park Hospital as a viable, independent competitor in the relevant market; and

  H. That Plaintiffs and the other members of the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: November 17, 2008     Respectfully submitted,

              By: __/s/ Mary Jane Fait_____
                Mary Jane Fait
                Theodore B. Bell
                John E. Tangren
                **WOLF HALDENSTEIN ADLER**
                 **FREEMAN & HERZ LLC**
                55 W. Monroe Street, Suite 1111
                Chicago, IL  60603
                Tel: (312) 984-0000
                Fax: (312) 984-0001

Marvin A. Miller
Matthew E. Van Tine
Lori A. Fanning
**MILLER LAW LLC**
115 S. LaSalle Street
Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
Fax: (312) 676-2676

*Interim Co-Lead Counsel for Plaintiffs*

George T. Peters, Esq.
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Ave, 11th Floor
New York, New York 10016
Tel: (212) 545-4600

Jayne A. Goldstein, Esq.
**SHEPHERD FINKELMAN
  MILLER & SHAH, LLP**
1640 Town Center Circle, Suite 216
Weston, Florida 33326
Tel: (954) 515-0123

Ronald B. Kowalczyk, Esq.
**KOWALCZYK LAW OFFICES, P.C.**
114 North Hale Street, Suite D
Wheaton, IL 60187
Tel: (630) 665-2224

David Balto
**LAW OFFICES OF DAVID BALTO**
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 789-5424

Joseph Burns
**JACOBS, BURNS, ORLOVE, STANTON &
  HERNANDEZ**
122 South Michigan Avenue, Suite 1720
Chicago, IL 60603
Tel: (312) 372-1646

.  *Counsel for Plaintiffs*

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

Respectfully submitted,

Dated: November 17, 2008
By: __/s/ Mary Jane Fait_____
Mary Jane Fait
Theodore B. Bell
John E. Tangren
**WOLF HALDENSTEIN ADLER**
   **FREEMAN & HERZ LLC**
55 W. Monroe Street, Suite 1111
Chicago, IL 60603
Tel: (312) 984-0000
Fax: (312) 984-0001

Marvin A. Miller
Matthew E. Van Tine
Lori A. Fanning
**MILLER LAW LLC**
115 S. LaSalle Street
Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
Fax: (312) 676-2676

*Interim Co-Lead Counsel for Plaintiffs*

George T. Peters, Esq.
**WOLF HALDENSTEIN ADLER**
   **FREEMAN & HERZ LLP**
270 Madison Ave, 11th Floor
New York, New York 10016
Tel: (212) 545-4600

Jayne A. Goldstein, Esq.
**SHEPHERD FINKELMAN**
   **MILLER & SHAH, LLP**
1640 Town Center Circle, Suite 216
Weston, Florida 33326
Tel: (954) 515-0123

Ronald B. Kowalczyk, Esq.
**KOWALCZYK LAW OFFICES, P.C.**
114 North Hale Street, Suite D
Wheaton, IL 60187
Tel: (630) 665-2224

David Balto
**LAW OFFICES OF DAVID BALTO**
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 789-5424

Joseph Burns
**JACOBS, BURNS, ORLOVE, STANTON &
    HERNANDEZ**
122 South Michigan Avenue, Suite 1720
Chicago, IL 60603
Tel:     (312) 372-1646

*Counsel for Plaintiffs*

.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of November, 2008 service of the foregoing document was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

      /s/ Mary Jane Fait_____
Mary Jane Fait