**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

_____
                                                                )
**IN RE: NORTHSHORE UNIVERSITY**    )
**HEALTHSYSTEM f/k/a EVANSTON**    )
**NORTHWESTERN HEALTHCARE**      )  **Master File No. 07-CV-4446**
**CORPORATION ANTITRUST**            )
**LITIGATION**                                       )
_____  )  **Consolidated with:**
                                                                )  Case No. 07-CV-4523
**This Document Relates To:**         )  Case No. 07-CV-5275
                                                                 )
     **All parties.**                         )
                                                                 )  **Magistrate Judge Morton Denlow**
_____

## MEMORANDUM OPINION AND ORDER

This matter concerns Plaintiffs' request for production of all documents received from non-parties by Defendant, NorthShore University HealthSystem, f/k/a Evanston Northwestern Healthcare Corp. ("ENH"), and produced in discovery to the Federal Trade Commission ("FTC") in connection with an earlier FTC administrative proceeding. Paintiffs seek production by ENH of these non-party documents subject to a protective order Judge Lefkow entered earlier in this proceeding ("Stipulated Protective Order"). Dkt. 93 (6/12/08).[1] On August 7, 2008, this Court, being aware that the non-parties did not participate in drafting the Stipulated Protective Order, entered an order giving them the opportunity to object. Dkt. 132. The large majority of non-parties made no objection and their documents were produced subject to the Stipulated Protective Order. Eight non-parties

___
[1]Dkt. ___ refers to docket number in this case.

objected ("Objecting Non-Parties").[2] During the course of the oral argument on October 29, 2008, the Plaintiffs, ENH and the Objecting Non-Parties consented to a revised protective order entitled Additional Stipulated Protective Order Governing Confidential Information of Objecting Third Parties ("Additional Order"), under which ENH would produce all of the Objecting Non-Parties' documents. Dkt. 225 (11/21/08).

The Court writes this opinion to address the necessity of protective orders when non-party confidential commercial documents are sought in discovery and the role of non-parties in the protective order process. Under the circumstances presented, the Objecting Non-Parties have demonstrated good cause for adopting the Additional Order because they were not present during the crafting of the original Stipulated Protective Order, the documents to be produced contain confidential commercial information, the current Stipulated Protective Order does not adequately protect this information, and the Additional Order does not offend the public interest in open proceedings. Accordingly, the Court enters the Additional Order to govern the documents produced by the Objecting Non-Parties to ENH in the FTC proceeding and directs ENH to produce the Objecting Non-Parties' documents to Plaintiffs. As a point of clarity, this Additional Order only applies to the Objecting Non-Parties' documents. The Stipulated Protective Order applies to the documents from the other non-parties who chose not to object.

---

[2] The Objecting Non-Parties are: Vista Health Systems ("Vista"), St. Alexius Hospital ("St. Alexius"), Blue Cross Blue Shield of Illinois ("BCBSI"), Swedish Covenant Hospital ("Swedish"), Humana, Inc. ("Humana"), Unicare Healthcare Plans of the Midwest, Inc. ("Unicare"), Private Healthcare System, Inc. ("Private") and Interplan Health Group, Inc. f/k/a the Chandler Group of Companies ("Interplan").

## I. FACTUAL BACKGROUND

The Plaintiffs in this putative class action are individuals and entities who purchased inpatient and outpatient healthcare services directly from ENH from January 1, 2000 through the present. Dkt. 1. ENH delivers health care services to the public through its wholly owned hospitals, Evanston Hospital, Glenbrook Hospital and Highland Park Hospital. *Id.* Plaintiffs' complaint alleges that ENH violated Section 2 of the Sherman Act. *Id.*; 15 U.S.C. § 2.

Prior to the filing of the present lawsuit, ENH was involved in an administrative proceeding before the FTC. *See In the Matter of Evanston Northwestern Healthcare Corporation*, 2005 US FTC 9315 (hereinafter "FTC Action"). In the course of the FTC Action, ENH subpoenaed documents from multiple non-parties, including, among others: Vista Health Systems ("Vista"), St. Alexius Hospital ("St. Alexius"), Blue Cross Blue Shield of Illinois ("BCBSI"), Swedish Covenant Hospital ("Swedish"), Humana, Inc ("Humana"), Unicare Healthcare Plans of the Midwest, Inc. ("Unicare"), Private Healthcare System, Inc. ("Private")[3] and Interplan Health Group, Inc. f/k/a the Chandler Group of Companies ("Interplan"). With varying degrees of specificity, these Objecting Non-Parties alleged in briefs filed with this Court that these documents contained confidential and proprietary contracts, contractual amendments, documents containing negotiation strategy, pricing

---

[3] Rather than file a unique objection to production, in paragraph 3 of its September 29, 2008 statement, Private adopted the comments of Unicare and Humana regarding the Parties' Stipulated Protective Order. Dkt. 200.

analyses and strategy, and, in some cases, confidential patient information. Dkt. 139, 161, 163, 171, 173, 174, 189, 200.

On March 24, 2004, a Protective Order was entered governing the treatment of discovery materials during the FTC action. Dkt. 139-3, Ex. 4. On January 26, 2005, the FTC granted *in camera* treatment to all non-parties' documents for a period of ten years. Dkt. 139-3, Ex. 5. The protective order specified that the non-parties had shown good cause because disclosure of the documents would result in a clearly defined, serious injury to the person or corporation whose records were involved. *Id.* The FTC protective order stated, however, that a producing party (i.e., any party that produced documents to the FTC whether a party or non-party) had the burden to assert any objection to production of documents pursuant to a discovery request in another proceeding.[4] Dkt. 139-3, Ex. 4.

In the present matter, District Judge Joan H. Lefkow entered the Stipulated Protective Order on June 12, 2008. Dkt. 93. The Stipulated Protective Order pertained to "all documents (hardcopy, electronic format or otherwise), testimony, written responses to discovery and all other information in whatever form produced or given by any party or third

---

[4]"If any person receives a discovery request in another proceeding that may require the disclosure of a Producing Party's Confidential Discovery Material, the subpoena recipient promptly shall notify the Producing Party of receipt of such request. Such notification shall be in writing and, if not otherwise done, sent for receipt by the Producing Part[y] at least five business days before production, and shall include a copy of this Protective Order and a cover letter that will apprise the Producing Party of its rights hereunder. The Producing Party shall be solely responsible for asserting any objection to the requested production . . . ." Federal Trade Commission Protective Order Governing Discovery Material, *In the Matter of Evanston Northwestern Healthcare Corporation and ENH Medical Group, Inc.,* Paragraph 10 (March 24, 2004); *see* Dkt. 139, Ex. 4.

4

party in this action which is designated under the terms of this Stipulated Protective Order."
*Id.*

While both the Plaintiffs and ENH stipulated to the order, the non-parties were not involved in its drafting. Plaintiffs moved to compel the production by ENH of the non-party documents produced in the FTC proceeding. ENH objected. On August 7, 2008, this Court entered an Agreed Order requiring a copy of the Agreed Order and the Stipulated Protective Order to be sent to all non-parties who produced documents in the FTC Action. Dkt. 132. The Order granted interested non-parties the opportunity to object to the production of their documents. *Id.*

Each of the Objecting Non-Parties timely submitted an objection to ENH's production of their documents. BCBSI, St. Alexius, Vista, Swedish, and Interplan claimed their documents were not relevant because their operations never concerned ENH, nor was ENH ever consulted. Dkt. 139, 161, 163, 171 and 189. *Id.* Moreover, several alleged their documents were not relevant because their hospitals were not within the relevant geographic area alleged in Plaintiffs' Complaint. *Id.*

In addition, Humana, Unicare and Private contended the Stipulated Protective Order was inadequate to protect their confidential documents from disclosure to competitors or subscribing hospitals. Dkt. 173, 174 and 200. These non-parties described how paragraph nine of the Stipulated Protective Order permitted deposition witnesses—who could potentially be competitors or subscribing hospitals—to review their confidential documents even if they failed to consent to the Stipulated Protective Order. These non-parties were

concerned that such unbridled disclosure would be costly in future negotiations and would destroy their competitive advantage.

In the course of the October 29 oral argument, the parties and the Objecting Non-Parties reached an agreement as reflected in the Additional Order. The need to strike a balance between the Plaintiffs' evidentiary needs and the Objecting Non-Parties' fears of disclosure to competitors and hospitals served as the impetus for the agreement. At oral argument, Plaintiffs explained that their experts required the Objecting Non-Parties' commercial information to create a control group by which they could compare ENH's business practices. The Objecting Non-Parties responded that given the potential breadth of the class, it was likely that competitors and subscribing hospitals would become privy to their confidential information. The Court found both of these interests to be legitimate. Consequently, to enable Plaintiffs to perform their expert analysis and to prevent disclosure of the Objecting Parties' confidential information to competitors and subscribing hospitals, the Plaintiffs, ENH and the Objecting Non-Parties crafted the Additional Order.

## II.  DISCUSSION

**A.      Requirements for a Protective Order Under FRCP 26(c)(1)(G)**

The inability of non-parties to maintain continuing control over their confidential commercial documents and the minimal public need for such documents enables non-parties to show good cause for a protective order. FRCP 26(c)(1)(G) permits a court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…(G) requiring that a trade secret or other

confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Even where parties stipulate to a protective order, the court must independently determine if good cause exists for the issuance of a protective order. *Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir. 1994). There is a strong presumption toward public disclosure of court files and documents. *County Materials Corp. v. Allan Block Corp.,* 502 F.3d 730, 740 (7th Cir. 2007). The interest in public disclosure, however, does not always trump the privacy interests of the parties, but it can only be overridden upon a good cause showing that the latter's privacy interests predominate in the particular case. *Id.*

In balancing the interests of the Objecting Non-Parties in obtaining a protective order and the presumption of public disclosure, the Court holds that the Additional Order is necessary to protect the Objecting Non-Parties' interests and will not offend the public interest in disclosure. The Objecting Non-Parties have adequately demonstrated that the documents sought contain confidential commercial information. Given the size of the potential class, competitors and subscribing hospitals could become privy to this confidential information. Additionally, at this stage of the proceeding and based upon the Plaintiffs' proposed uses of the non-party documents, there is nothing to suggest that entering the Additional Order will undermine the public interest in disclosure**.** Moreover, the entry of the Additional Order will assist with the efficient administration of this action.

**B. The Documents from the Objecting Non-Parties Contain Confidential Commercial Information.**

The Court is satisfied that the documents to be produced contain confidential commercial information and that the parties will act in good faith in labeling documents as "CONFIDENTIAL", "CONFIDENTIAL INFORMATION" or "RESTRICTED CONFIDENTIAL, ATTORNEY EYES ONLY." Moreover, given that the parties and Objecting Non-Parties are aware that a confidentiality marking is challengeable, the Court is satisfied that only trade secret or confidential commercial information will remain protected.

Courts are not required to make good cause determinations on a document-by-document basis as such a requirement would impose an excessive burden upon the court in cases with thousands of documents at issue. *Citizens First Nat'l. Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 946 (7th Cir. 1999). In such cases, the judge should (1) ensure that the parties know what a trade secret represents and are acting in good faith; and (2) make explicit that either party and any interested member of the public can challenge the secreting of particular documents. *Id.* Secrecy is fine at the discovery stage, before the documents become part of the judicial record. *Baxter Int'l, Inc. v. Abbott Labs.,* 297 F.3d 544, 545 (7th Cir. 2002). However, more than an assertion that these are "commercial documents" is required. *Id.* at 546. The documents in question were previously produced in the FTC Action under a protective order. Dkt. 139-3, Ex. 4 & 5.

The Objecting Non-Parties have demarcated specific categories of documents as containing either contractual amendments, documents containing negotiation strategy, pricing analyses and strategy, and, in some cases, confidential patient information. Dkt.139, 161, 163, 171, 173, 174, 189, 200. This circuit recognizes these types of documents as fitting within the gambit of trade secrets. See *PepsiCo v. Redmond,* 54 F.3d 1262, 1270 (7th Cir. 1995) (held that information regarding the pricing, distribution and marketing of a sports drink and not just the formula for the drink constitute trade secret material). In sum, the Objecting Non-Parties' documents contain trade secrets and confidential commercial information pursuant to FRCP 26(c)(1)(G) and this Circuit's precedent.

**C.     Good Cause Exists for the Additional Order**.

This case demonstrates the precarious situation where the general presumption of disclosure risks the unveiling of the confidential commercial information belonging to non-parties. In this case, a non-parties' need for a protective order outweighs the public's interest in public disclosure. In providing protective orders for non-party commercial information, a few practical considerations support the Court's conclusion. First, the risk of harm to non-parties from disclosure is significant due to their inability to be present at day-to-day proceedings, which could lead to inadvertent disclosure to competitors. Second, affording non-parties a protective order regarding their documents will improve case efficiency. Protective orders often forgo the need for ancillary discovery battles.

1. **The Objecting Non-Parties Have a Legitimate Interest in Obtaining a Protective Order to Protect their Confidential Commercial Documents from Disclosure.**

Courts in this circuit and other circuits recognize that the burden to show good cause is less demanding on non-parties. See *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 546 (N.D. Ind. 1991) ("Good cause may be shown more easily by a non-party than by a party") (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); *Avirgan v. Hull*, 118 F.R.D. 252, 255 (D.D.C. 1987) ("Although Robinette's concerns are more weighty because he is not a party to the underlying action...")). This case illustrates the rationale for this principle. Non-party organizations are limited in their ability to control the manner in which parties use their confidential commercial documents. When non-parties are forced to produce commercial documents pursuant to a discovery request, they are in effect handing over the keys to their corporate automobiles to parties who may, at best, be considered ambivalent towards their interests. The Plaintiffs' and ENH's inability to walk in the Objecting Non-Parties' shoes limits their ability to be as mindful of the Objecting Non-Parties' interests in not disclosing confidential commercial material to competitors and subscribing hospitals.

The Objecting Non-Parties raised a particular concern that the current Stipulated Protective Order is ineffective to ensure that their confidential material will not be disclosed during depositions. It is quite possible that a competitor or subscribing hospital could be a deponent. They do not allege that either Plaintiffs or ENH would purposefully disclose their confidential information, but instead assert the possibility that this information could be inadvertently revealed to a competitor deponent. While a party, who is represented at a

deposition, has the ability to immediately prevent this disclosure through an objection and direction from counsel, a non-party is unable to timely prevent disclosure. In this scenario, protective orders help to equalize the positions of parties and non-parties. While a protective order cannot prevent inadvertent disclosure, a carefully crafted protective order can provide the non-parties with the means to prevent the disruptive effects of inadvertent disclosures. Non-parties will invariably risk a greater potential for injurious disclosure than parties, because of their inability to maintain a physical presence. As a result, the Objecting Non-Parties' interest should be protected by means of a protective order which prevents disclosure of their confidential documents unless a deponent is bound by the protective order.

**2. Granting the Objecting Non-Parties a Protective Order Does Not Undermine the Rationale for Public Access and Encourages Policy Goals**.

Granting protective orders to non-parties to protect their trade secrets and confidential commercial information does not offend the public interest in disclosure. It is well established that there is a presumption of public access to court proceedings. *Jessup v. Luther,* 277 F.3d 926, 928 (7th Cir. 2002); *Nixon v. Warner Communications,* 435 U.S. 589, 597 (1978). The bases for this presumption of public disclosure have been defined as (1) the promotion of community respect for the rule of law (2) providing a check on the activities of judges and litigants, and (3) fostering more accurate fact finding.[5] *Grove Fresh Distrib.,*

---

[5] While it has been recognized that protective orders also implicates a First Amendment component, the Supreme Court has held that protective orders entered upon good cause do not offend the Constitution. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36-37 (1984).

*Inc. v., Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir. 1994). *In re Cont'l Ill. Sec. Litig.,* 732 F.2d 1302, 1308 (1984).[6]

This Circuit recognizes the benefits of protective orders during the discovery phase in promoting disclosure and facilitating the litigation process. In *Krynicki v. Falk II,* the court noted that "parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited." 983 F.2d 74, 75 (7th Cir. 1992). Consequently, cases like the present case will be pushed through discovery without time consuming ancillary discovery battles. In this case, the agreement between the Objecting Non-Parties and the parties disposed of the relevancy and good cause objections. Thus, as this case demonstrates, if a non-party is not fearful of public disclosure of their proprietary documents due to the protection gained from a protective order, they will likely be more forthcoming. As a result, cases will be able to proceed more efficiently through the discovery phase.

### III. CONCLUSION

Deference should be paid to the interests of non-parties who are requested to produce documents or other materials that contain confidential commercial information or trade secrets. Such deference will not offend the bases for the presumption of public disclosure,

---

[6]In this derivative suit case, the Court noted that the desires of ensuring integrity of the court system, community respect and accurate fact-finding were desirous because the public has an interest in the securities market. *In re Continental Illinois Securities Litigation,* 732 F.2d at 1308.

and will aid in the more efficient handling of claims.  **It is hereby ordered that all Objecting Non-Party documents in ENH's possession obtained in the course of the earlier FTC Action be released to Plaintiffs pursuant to the agreed Additional Stipulated Protective Order Governing Confidential Information of Objecting Third Parties.**

      **SO ORDERED THIS 26th DAY OF NOVEMBER, 2008.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Mary Jane Fait
Theodore B. Bell
John E. Tangren
Wolf Haldenstein Adler Freeman & Herz
55 West Monroe Street, Suite 1111
Chicago, IL 60603

Marvin A. Miller
Matthew E. Van Tine
Lori A. Fanning
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603

David Balto
Law Offices of David Balto
2600 Virginia Avenue, NW, Suite 1111
The Watergate
Washington, DC 20037

**Attorneys for Plaintiffs**

David Edward Dahlquist
Dane A. Drobny
Duane M. Kelley
Thomas Aquinas Reynolds, III
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

**Attorneys for Defendants**

Ronald B. Kowalczyk, Esq.
Kowalczyk Law Offices, P.C.
114 North Hale Street
Suite D
Wheaton, IL 60187

Floyd D. Perkins
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602

Jayne A. Goldstein
William A. Chittenden, III
Michael Brian Galibois
Jennifer Stegmaier
Chittenden, Murday & Novotny, LLC
303 W. Madison, Suite 1400
Chicago, IL 60606

Katherine Harvie Laurent
Illinois Attorney General's Office
100 W. Randolph Street, 13th Floor
Chicago, IL 60601

Jerome W. Hoffman
Holland & Knight
Post Office Drawer 810
Tallahassee, FL 32302

John Zabriskie
Foley & Lardner
321 N. Clark St., Suite 2800
Chicago, IL 60654

Kelly McCloskey Cherf
Hogan Marren
180 N. Wacker Drive, Suite 600
Chicago, IL 60606

**Attorneys for Non-Parties**