**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re Evanston Northwestern Healthcare Corporation Antitrust Litigation ) ) ) ) ) ) | Master File No. 07-CV-4446 |
| This Document Relates To: ) ) ) ) ) | Judge Lefkow<br><br>Magistrate Judge Denlow |
| All Actions. | |

## NORTHSHORE UNIVERSITY HEALTHSYSTEM'S
## ANSWER TO CONSOLIDATED CLASS ACTION COMPLAINT

Defendant NorthShore University HealthSystem ("NorthShore") (formerly Evanston Northwestern Healthcare) ("ENH"), by and through its attorneys, Winston & Strawn, LLP hereby answers Plaintiffs Consolidated Class Action Complaint ("Plaintiffs' Complaint") as follows. Plaintiffs have represented that this most recent Consolidated Complaint makes no substantive, material change to Plaintiffs' allegations of law or fact. Pls.' Mot. for Leave File Consolidated Class Action Cmpl. [Dkt. No. 217.]

## NATURE OF THE CASE

1.      This lawsuit is brought as a class action on behalf of all end-payors who purchased inpatient and hospital-based outpatient healthcare services directly from ENH, its wholly owned hospitals, predecessors, successors, or controlled subsidiaries and affiliates from at least as early as January 1, 2000 to the present (the "Class Period").

**Answer:**      Paragraph 1 is a summary description of the allegations within Plaintiffs' Complaint to which no answer is required. NorthShore denies any remaining allegations in paragraph 1.

2.    During and throughout the Class Period, ENH engaged in illegal monopolization of the market for inpatient and hospital-based outpatient healthcare services in the geographic triangle formed by ENH's three wholly owned hospitals, Evanston Hospital, Glenbrook Hospital, and Highland Park Hospital.  As determined by the Federal Trade Commission, the merger of these hospitals substantially lessened competition in the relevant market.

**Answer:**    Paragraph 2 is a summary description of the allegations within Plaintiffs'

Complaint to which no answer is required.  NorthShore denies any remaining allegations in

paragraph 2.

3.    Because of ENH's unlawful conduct, Plaintiffs and the Class (defined in paragraph 17 below) paid artificially inflated prices for healthcare services and, as a result, have suffered antitrust injury to their business or property.

**Answer:**    Paragraph 3 is a summary description of the allegations within Plaintiffs'

Complaint to which no answer is required.  NorthShore denies any remaining allegations in

paragraph 3.

## JURISDICTION AND VENUE

4.    This Court has federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1337 as Plaintiffs bring their claims under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against ENH for the injuries sustained by Plaintiffs and the Class by reason of the violations, as hereinafter alleged, of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 7 of the Clayton Act, 15 U.S.C. §18.

**Answer:**    Paragraph 4 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 4.

5.    This action is also instituted to secure injunctive relief against ENH to prevent it from further violations of Section 2 of the Sherman Act and Section 7 of the Clayton Act as hereinafter alleged.

**Answer:**    Paragraph 5 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 5.

6.    Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b), (c), and (d).

**Answer:** Paragraph 6 contains conclusions of law to which no answer is required. NorthShore denies any remaining allegations in paragraph 6.

7.      Venue and personal jurisdiction is proper in this judicial district because during the Class Period ENH resided, transacted business, was found, or had agents in this District, and because a substantial part of the events giving rise to Plaintiffs' claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this District.

**Answer:** Paragraph 7 contains conclusions of law to which no answer is required. Further answering, NorthShore admits that it resided, transacted business, was found, or had agents in Illinois. NorthShore denies any remaining allegations in paragraph 7.

## DEFINITIONS

8.      As used herein, the term:

a.      "Healthcare Services" refers to general inpatient and hospital-based outpatient services provided by ENH that are ordinarily provided by hospitals, including primary, secondary, and tertiary services. These include, but are not limited to, obstetrical and pediatric services, psychiatric care, neurosurgery, radiation therapy, cardiology services, orthopedics, trauma centers, diagnostic centers, cancer treatments, internal medicine, and general surgical services.

b.      "Person" means any individual, employee welfare benefit plan, partnership, corporation, association, or other business or legal entity; and

c.      "Class Period" refers to the period from at least January 1, 2000 to the present.

**Answer:** Paragraph 8 defines terms as used in Plaintiffs' Complaint to which no answer is required. NorthShore denies any remaining allegations in paragraph 8.

## PARTIES

### A.      Plaintiffs

9.      Amit Berkowitz was at all relevant times a resident of Evanston, Illinois.

**Answer:** NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

10.     Steven J. Messner was at all relevant times a resident of Northfield, Illinois.

**Answer:**     NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11.     Henry W. Lahmeyer M.D., S.C., was at all relevant times an Illinois corporation formed under the Medical Corporation Act, 805 ILCS 15/1 *et seq.*, with its principal place of business located in Northfield, Illinois.

**Answer:**     NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11.

12.     Painters District Council No. 30 Health & Welfare Fund ("Painters") is located in Aurora, Illinois and is an "employee welfare benefit plan" and an "employee benefit plan" within the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1), 1002(3), and 1003(a).  As such, Painters is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d).  Painters is a not-for-profit trust, sponsored by and administered by a Board of Trustees, established and maintained to provide comprehensive health care benefits to participants-workers who are employed under various collective bargaining agreements and to their dependents.

**Answer:**     NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13.     During the Class Period, Plaintiffs and the Class purchased or paid for Healthcare Services directly from one or more of the hospitals owned by ENH.  As a result of ENH's unlawful monopolization, Plaintiffs and the Class paid artificially inflated prices for Healthcare Services and were therefore injured in their business and property by reason of the antitrust violations alleged herein.

**Answer:**     NorthShore is without knowledge or information sufficient to form a belief as to the truth of the first sentence in paragraph 13.  NorthShore denies the remaining allegations in paragraph 13.

## B.     Defendant

14.     ENH is an Illinois corporation that provides Healthcare Services to the public through its wholly owned hospitals, Evanston Hospital, Glenbrook Hospital and Highland Park Hospital.  Evanston Hospital is a 400-bed facility located in Evanston, Illinois.  Glenbrook Hospital is a 125-bed facility located in Glenview, Illinois.  Highland

Park Hospital is located in Highland Park, Illinois and has approximately 150-200 beds. ENH acquired Highland Park Hospital in 2000 in connection with its merger with Lakeland Health Services, Inc. ("Lakeland Health"). Until 2000, Highland Park Hospital was a wholly-owned subsidiary of Lakeland Health.

**Answer:**    NorthShore admits that it is a not-for-profit corporation organized under the laws of the State of Illinois. NorthShore admits that it owns and operates three hospitals: Evanston Hospital located in Evanston, Illinois; Glenbrook Hospital located in Glenview, Illinois; and Highland Park Hospital located in Highland Park, Illinois. NorthShore admits that ENH completed a merger with Lakeland Health Services, Inc. by which Lakeland Health and its subsidiary, Highland Park Hospital, merged with and into ENH on or about January 1, 2000. NorthShore denies the remaining allegations in paragraph 14.

## GOVERNMENT PROCEEDINGS

15.    On February 10, 2004, the Federal Trade Commission ("FTC" or "Commission") issued a complaint alleging, *inter alia*, that the year 2000 merger of ENH with Lakeland Health, which resulted in ENH's acquisition of Highland Park Hospital, violated Section 7 of the Clayton Act, 15 U.S.C. § 18. Following an eight-week trial, the Administrative Law Judge issued an Initial Decision on October 17, 2005, concluding that the merger did violate Section 7 of the Clayton Act and ordering divestiture.

**Answer:**    NorthShore admits that on February 10, 2004, the FTC issued an administrative complaint which referenced ENH's 2000 merger with Lakeland Health which resulted in the acquisition of Highland Park Hospital. NorthShore admits the second sentence of paragraph 15. NorthShore denies any remaining allegations in paragraph 15.

16.    On August 6, 2007, the FTC affirmed the Administrative Law Judge's Initial Decision, with modifications, and ordered remedies to restore competition in the relevant market in lieu of divestiture. The FTC concluded that the evidence demonstrated "that the transaction enabled the merged firm to exercise market power and that the resulting anticompetitive effects were not offset by merger-specific efficiencies." The Commission found that the record showed "that senior officials at Evanston [Northwestern] and Highland Park [Hospital] anticipated that the merger would give them greater leverage to raise prices, that the merged firm did in fact raise its prices immediately and substantially after completion of the transaction . . . ." The Commission also found that econometric analyses "strongly supported the conclusion that the merger

gave the combined entity the ability to raise prices through the exercise of market power" and "established that there were substantial merger-coincident price increases and ruled out the most likely competitive benign explanations for substantial portions of those increases."

**Answer:** NorthShore admits that the FTC issued an opinion on August 6, 2007. Northshore admits that portions of the FTC decision have been accurately quoted in paragraph 16, but specifically denies the characterization of the language as alleged. NorthShore denies the remaining allegations in paragraph 16.

## CLASS ACTION ALLEGATIONS

17. Plaintiffs bring this action on behalf of themselves individually and as a class action under the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the Class defined as:

> All persons or entities in the United States of America and Puerto Rico (excluding governmental entities, defendants, co-conspirators, other providers of healthcare services, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased or paid for inpatient hospital services or hospital-based outpatient services directly from ENH, its wholly-owned hospitals, predecessors or controlled subsidiaries and affiliates (the "Class") from at least as early as January 1, 2000 to the present (the "Class Period").

**Answer:** Paragraph 17 contains conclusions of law to which no answer is required. NorthShore denies any remaining allegations in paragraph 17.

18. The Class is so numerous and geographically dispersed that joinder of all members is impracticable. While Plaintiffs do not know the number and identity of all members of the Class, Plaintiffs believe that there are hundreds of Class members, the exact number and identities of which can be obtained readily from Defendant's books and records.

**Answer:** Paragraph 18 contains conclusions of law to which no answer is required. Further answering, NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18. NorthShore denies any remaining allegations in paragraph 18.

19.     There are questions of law and fact common to the Class that relate to the existence of the antitrust violations alleged and the type and common pattern of injury sustained as a result thereof, including but not limited to:

a.      Where ENH has exercised monopoly power in the sale of Healthcare Services in the relevant geographic market;

b.      Whether ENH's alleged conduct violates Section 2 of the Sherman Act;

c.      Whether ENH's alleged conduct violates Section 7 of the Clayton Act;

d.      Whether the conduct of ENH, as alleged in this Complaint, caused injury to the business and property of the Plaintiffs and the other members of the Class;

e.      The effect of ENH's exercise of monopoly power on the prices of Healthcare Services sold by ENH and its wholly-owned hospitals during the Class Period; and

f.      The appropriate measure of damages sustained by Plaintiffs and the other members of the Class.

**Answer:**      Paragraph 19 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 19.

20.     The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

**Answer:**      Paragraph 20 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 20.

21.     Plaintiffs are members of the Class, their claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs and the Class are direct purchasers of Healthcare Services, and their interests are coincident with and not antagonistic to those of the other members of the Class.  In addition, Plaintiffs have retained and are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

**Answer:**      Paragraph 21 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 21.

22. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

**Answer:** Paragraph 22 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 22.

23. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

**Answer:** Paragraph 23 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 23.

24. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records should exist in the files of ENH and its wholly owned hospitals. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action does not present any difficulties of management that would preclude its maintenance as a class action.

**Answer:** Paragraph 24 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 24.

## RELEVANT MARKET

25. The relevant product market is the market for Healthcare Services, as defined herein. The relevant geographic market is the geographic triangle created by the three hospitals wholly owned by ENH, i.e., Evanston Hospital, Glenbrook Hospital, and Highland Park Hospital.

**Answer:** Paragraph 25 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 25.

## TRADE AND COMMERCE

26.     Because members of the Class are geographically dispersed, Defendant's activities were within the flow of, and substantially affect, interstate commerce.

**Answer:**     Paragraph 26 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 26.

27     During the Class Period, ENH, through its wholly-owned hospitals, sold Healthcare Services to persons residing in Illinois and other states within the United States.

**Answer:**     NorthShore admits that it provides certain services, such as medical and surgical services, to persons residing in Illinois and other states.  NorthShore denies the remaining allegations in paragraph 27.

28.     ENH and its wholly-owned hospitals have used instrumentalities of interstate commerce to sell and market Healthcare Services.

**Answer:**     Paragraph 28 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 28.

29.     ENH and its wholly-owned hospitals have sold substantial Healthcare Services in a continuous and uninterrupted flow of interstate commerce to the Class residing in states other than Illinois.  Payments for Healthcare Services by the Class also crossed state lines and are therefore part of interstate commerce.

**Answer:**     Paragraph 29 contains conclusions of law to which no answer is required.

NorthShore denies any remaining allegations in paragraph 29.

## FACTUAL BACKGROUND

30.     Prior to January 1, 2000, ENH operated two hospitals within the relevant geographic market, Evanston Hospital and Glenbrook Hospital.  These hospitals competed in the relevant geographic market for Healthcare Services with Highland Park Hospital.

**Answer:**     NorthShore admits that prior to January 1, 2000, ENH owned and operated Evanston Hospital located in Evanston, Illinois, and Glenbrook Hospital located in Glenview, Illinois.  NorthShore denies the remaining allegations in paragraph 30.

31. On or about January 1, 2000, ENH merged with Lakeland Health Services, Inc., of which Highland Park Hospital was the sole subsidiary. As a result of the merger, ENH acquired its competition in the relevant market. As the record in the FTC proceeding revealed, senior officials at ENH and Highland Park Hospital anticipated that the merger would give them greater leverage to raise prices.

**Answer:** NorthShore admits the first sentence of paragraph 31. NorthShore denies

the remaining allegations in paragraph 31.

32. Sometime after ENH's acquisition of Highland Park Hospital, and continuously through the present, prices for Healthcare Services at the three wholly owned hospitals were substantially increased. As the FTC determined, these price increases were directly the result of the merged firm's anticompetitive exercise of market power, not benign competitive reasons. Prices at the three ENH-owned hospitals continued at anticompetitive levels and remain so today.

**Answer:** NorthShore denies the allegations in paragraph 32.

33. ENH began to implement its price increases sometime after the close of the merger through a number of ways. The FTC determined that "[ENH] rapidly increased the prices that it charged to most of its. . . customers to the higher of Evanston's or Highland Park's pre-merger rate for a particular service." Moreover, "[ENH] then set about negotiating a single contract for all three of its hospitals with [customers]. [ENH] then set about negotiating a single contract for all three of its hospitals with [customers]. [ENH] did not offer [customers] the option to enter into separate contracts for the hospitals, or to decline to use one or more of the three hospitals." Finally, "[ENH] sought to raise its prices through the conversion of portions of some of its contracts from *per diem* to discount off charges payment structures."

**Answer:** NorthShore admits that portions of the FTC decision have been accurately

quoted in paragraph 33, but specifically denies the characterization of the language as alleged.

NorthShore denies the remaining allegations in paragraph 33.

34. A month after the merger, ENH's President Neaman stated in an internal memorandum that "Some $24 million of revenue enhancements have been achieved . . . and '*none of this could have been achieved by either Evanston or Highland Park alone. The 'fighting unit' of our three hospitals and 1600 physicians was instrumental in achieving these ends.*'" (emphasis in original).

**Answer:** NorthShore admits that Paragraph 34 accurately quotes portions of an

October 2, 2000 memorandum from Mark Neaman, NorthShore's President and Chief Executive

Officer, but specifically denies the characterization of the language as alleged. NorthShore denies the remaining allegations in paragraph 34.

35.     Testimony of Highland Park Hospital officials during the FTC proceedings similarly confirmed that the merger enabled ENH to achieve price increases that would not have been possible but for the merger. For example, the CEO of Highland Park Hospital prior to the merger contrasted post-merger price increases against Highland Park Hospital's pre-merger negotiations with customers, testifying that before the merger he did not see an opportunity to raise prices.

**Answer:**     NorthShore admits that Highland Park Hospital officials provided testimony during the FTC proceedings, and that testimony speaks for itself. NorthShore denies any remaining allegations in paragraph 35.

36.     The econometric analyses performed by economists in the FTC proceeding further confirmed that the merger gave ENH market power to increase prices. ENH's own economist found that average net inpatient prices increased by an additional 9% or 10% over the predicted level due to the merger. The FTC's primary economist estimated that the merger caused market-wide average net price increases of 11% to 18%.

**Answer:**     NorthShore denies the first sentence of paragraph 36. NorthShore admits that economists for ENH and the FTC provided testimony during the FTC proceeding, and that testimony speaks for itself. NorthShore denies any remaining allegations in paragraph 36.

37.     The FTC also found that the inclusion of hospital-based outpatient services in the relevant product market would not have altered the outcome of the case before the FTC. Economists on both sides in the FTC proceeding found that "ENH's post merger price increases for inpatient services were not offset by reductions (or smaller increases) in ENH's prices for outpatient services." In fact, ENH's economist found "larger higher-than-predicted average merger-coincident net price increases for inpatient and hospital-based outpatient services combined (11% or 12%), than he did for inpatient services alone (9% or 10%)."

**Answer:**     NorthShore admits that portions of the FTC decision have been accurately quoted in paragraph 37, but specifically denies the characterization of the language as alleged. NorthShore denies the remaining allegations in paragraph 37.

38     On April 24, 2008, the FTC issued its Opinion of the Commission on Remedy and Final Order, copies of which are attached as Exhibit A and B respectively.

**Answer:** NorthShore admits that on April 24, 2008, the FTC issued an Opinion of the Commission on Remedy as well as a Final Order. NorthShore denies that any documents were attached as Exhibit A and B to Plaintiffs' Complaint. NorthShore denies any remaining allegations in paragraph 38.

39. On May 14, 2008, ENH announced that it was acquiring Rush North Shore Medical Center, a 265-bed hospital in Skokie, Illinois.

**Answer:** NorthShore admits that on or about May 14, 2008, it announced its proposed acquisition of Rush North Shore Medical Center. NorthShore denies any remaining allegations in paragraph 39.

40. Rush North Shore is located approximately one mile outside the triangle formed by the locations of Evanston, Highland Park, and Glenbrook Hospitals.

**Answer:** NorthShore denies the allegations in paragraph 40.

41. The acquisition of Rush North Shore will further concentrate the markets for healthcare services in the northern suburbs of Chicago and spread ENH's monopoly power.

**Answer:** NorthShore denies the allegations in paragraph 41.

## COUNT I
## Sherman Act § 2 Unlawful Monopolization

42. Plaintiffs re-allege and incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs.

**Answer:** NorthShore repeats and reaffirms its answers to paragraphs 1 through 41.

43. By virtue of its acquisition of Highland Park Hospital on or about January 1, 2000, ENH acquired monopoly power in the marketing of Healthcare Services in the relevant geographic market and has abused and continues to abuse that power to maintain and enhance its market dominance in the marketing and sale of Healthcare Services by unreasonably restraining trade, thus artificially and anti-competitively raising the price of Healthcare Services sold to Plaintiffs and the Class.

**Answer:** Paragraph 43 contains conclusions of law to which no answer is required. To the extent an answer is required, NorthShore denies the allegations of paragraph 43.

44.     ENH's conduct constitutes unlawful monopolization and unlawful anti-competitive conduct in the relevant market in violation of Section 2 of the Sherman Act, and such violation and the effects thereof are continuing and will continue unless injunctive relief is granted.

**Answer:**     Paragraph 44 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations of paragraph 44.

45.     As a direct and proximate result of ENH's continuing violations of Section 2 of the Sherman Act, Plaintiffs and the other members of the Class have suffered injury and damages in an amount to be proven at trial.

**Answer:**     Paragraph 45 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations of paragraph 45.

46.     Plaintiffs and the Class seek money damages from ENH for its violation of Section 2 of the Sherman Act as well as injunctive relief.

**Answer:**     Paragraph 46 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations of paragraph 46.

47     ENH's unlawful conduct has had the following impacts, among others:

a.      Prices charged by ENH and its wholly owned hospitals to Plaintiffs and the class for Healthcare Services were maintained at artificially high and non-competitive levels; and

b.      Plaintiffs and the other members of the Class have had to pay more for Healthcare Services than they would have paid in a competitive marketplace, unfettered by ENH's monopolization of the relevant market.

**Answer:**     NorthShore denies the allegations in paragraph 47.

48.     During and throughout the Class Period, Plaintiffs and the Class directly purchased Healthcare Services from ENH or its wholly owned hospitals.

**Answer:**     NorthShore denies the allegations in paragraph 48.

49.     Plaintiffs and the Class paid more for the Healthcare Services that they purchased than they would have paid under conditions of free and open competition.

**Answer:**     NorthShore denies the allegations in paragraph 49.

50. As a direct and proximate result of ENH's conduct, Plaintiffs and the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined.

**Answer:** NorthShore denies the allegations in paragraph 50.

## COUNT II
## Sherman Act § 2 Attempt to Monopolize
### (Pled in the Alternative to Count I)

51. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 – 41 of this Complaint.

**Answer:** NorthShore repeats and reaffirms its answers to paragraphs 1 through 41.

52. ENH acted with the specific intent to monopolize the market for Healthcare Services.

**Answer:** Paragraph 52 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 52.

53. There was and is a dangerous possibility that ENH will succeed in its attempt to monopolize the Healthcare Services market because ENH controls a large percentage of that market, and further success by ENH in excluding competitors from that market will confer a monopoly on ENH in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

**Answer:** Paragraph 53 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 53.

54. ENH's attempted monopolization of the Healthcare Services market has harmed competition in that market and has caused injury to the buyers and sellers in that market. Prices in the Healthcare Services market have been higher than they would have been in a competitive market; the supply of services in that market has been lower than it would have been in a competitive market; and the number and effectiveness of competitors has been diminished by unlawful means.

**Answer:** Paragraph 54 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 54.

55. There is no appropriate or legitimate business justification for the actions and conduct which have facilitated ENH's attempted monopolization of the Healthcare Services market.

**Answer:**     Paragraph 55 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 55.

56.     Plaintiffs and the Class have been damaged as the result of ENH's attempted monopolization of the Healthcare Services market.

**Answer:**     Paragraph 56 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 56.

## COUNT III
## Clayton Act § 7 Violation

57.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

**Answer:**     NorthShore repeats and reaffirms its answers to paragraphs 1 through 56.

58.     As a result of the merger, ENH has been able to exercise market power in the relevant market. The merger of ENH and Highland Park created the largest hospital system in the relevant market. This market is highly concentrated and the combination significantly increased market concentration.

**Answer:**     Paragraph 58 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 58.

59.     It is unlikely that entry into the market would remedy, in a timely manner, the anticompetitive effects from the merger. Entry is difficult and likely to take more than two years because of the time required to plan for and to complete construction of an acute care hospital.

**Answer:**     Paragraph 59 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 59.

60.     Government regulations also make entry difficult. The Illinois Health Facilities Planning Act, 20 ILCS § 3960, restricts entry in this market. The Act prevents firms from entering the market by building a hospital without first obtaining a permit from the Illinois Health Facilities Planning Board ("Planning Board"), which administers the Act. The Planning Board has issued detailed regulations, Illinois Administrative Code 77, part 1130, governing the administration of the Act.

**Answer:** Paragraph 60 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 60.

61. For a prospective entrant, the prospects for receiving a permit to build a new hospital from the Planning Board are highly uncertain. The Illinois Health Facilities Planning Act, along with the regulations issued by the Planning Board, authorizes the Planning Board to deny applications for permits based on various factors. These include, among others, the potential for duplication of health care services; the desire for orderly development of health care facilities; and the background, character, and financial fitness of the applicant.

**Answer:** Paragraph 61 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 61.

62. Obtaining a permit to build a new hospital may take several years. The Illinois Health Facilities Planning Act authorizes adversely affected companies to seek judicial review under Illinois Administrative Review Law of any final decision of the Planning Board. The regulations of the Planning Board define adversely affected persons to include the incumbent hospitals in the area. These hospitals have a right to intervene in the Planning Board proceedings and to seek judicial review. The time period from application at the Planning Board to completion of judicial review can take several years.

**Answer:** Paragraph 62 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 62.

63. The Illinois Health Facilities Planning Act also restricts expansion by current market participants. It requires a permit to expand capacity by more than 10 beds or more than 10 percent of current capacity, whichever is less.

**Answer:** Paragraph 63 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 63.

64. The effect of the merger substantially lessens competition in the provision of Healthcare Services in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, in the following ways:

a. eliminating actual, direct, and substantial competition between ENH and Highland Park Hospital in the relevant product market and relevant geographic market for the provision of Healthcare Services;

b. increasing the ability of the merged entity to unilaterally raise prices of Healthcare Services;

      c.        reducing incentives to improve service or product quality in the relevant markets; and

      d.        eliminating Highland Park Hospital as a substantial and independent competitor in the relevant product market and geographic markets.

**Answer:**      Paragraph 64 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 64.

      65.      The merger of ENH and Highland Park has substantially lessened competition in the relevant market, in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

**Answer:**      Paragraph 65 contains conclusions of law to which no answer is required.

To the extent an answer is required, NorthShore denies the allegations in paragraph 65.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Defendant demands a trial by jury of all of the claims asserted in Plaintiffs' Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, NorthShore respectfully requests that this Court enter judgment in its favor and against Plaintiff on all claims asserted in this action, and that this Court award NorthShore its costs, and provide such further relief and additional relief that this Court deems appropriate and just.

## DEFENSES

Without assuming any burden it might otherwise not bear and without waiving any available defense, NorthShore asserts the following defenses and will seek leave to add additional defenses if and when deemed appropriate as the case progresses.

### First Defense

Plaintiffs' purported causes of action fail to state any claims upon which relief may be granted.

### Second Defense

Plaintiffs' claims are forever barred, in whole or in part, by the applicable statutes of limitation.

### Third Defense

The merger of Highland Park into ENH did not have an anticompetitive effect and thus Plaintiffs' claims fail.

### Fourth Defense

The merger of Highland Park into ENH did not result in the creation of monopoly power and thus Plaintiffs' claims fail.

### Fifth Defense

The merger of Highland Park into ENH did not result in the creation of market power and thus Plaintiffs' claims fail.

### Sixth Defense

NorthShore did not act with the specific intent to monopolize and thus Plaintiffs' claims fail.

### Seventh Defense

Plaintiffs' claims are barred because Plaintiffs lack standing to maintain a cause of action against NorthShore.

### Eighth Defense

Plaintiffs' claims cannot be maintained as a class action.

### Ninth Defense

Plaintiffs' claims are barred by application of the indirect purchaser rule.

### Tenth Defense

Plaintiffs have not sustained antitrust injury.

### Eleventh Defense

Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel, waiver, and/or laches.

### Twelfth Defense

The merger of Highland Park Hospital into ENH facilitated significant improvements in quality of care.

### Thirteenth Defense

Plaintiffs' claims are barred in whole or in part by application of the efficiencies defense.

### Fourteenth Defense

Prior to the merger, ENH and Highland Park Hospital were not separate persons as required under the antitrust laws and the merger was exempt under the *Copperweld* doctrine.

### Fifteenth Defense

NorthShore is currently, and at all times relevant herein, a not-for-profit entity.

### Sixteenth Defense

Plaintiffs' claims are barred in whole or in part by application of the failing company defense.

**Seventeenth Defense**

The merger of Highland Park Hospital into ENH was approved by the State of Illinois and is protected under the state action doctrine.

**Eighteenth Defense**

Plaintiffs' claims for damages are barred, in whole or in part, because Plaintiffs' alleged damages, if any, are speculative, and because of the impossibility of ascertaining and allocating such damages.

**Nineteenth Defense**

Plaintiffs' claims are barred, in whole or in part, because any appropriate relief sought by Plaintiffs has already been obtained or rejected by the Federal Trade Commission.

NorthShore alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, defenses. NorthShore will seek leave to file an amended answer asserting additional defenses, and/or to file a counter- or cross-complaint in the event that discovery indicates that either is appropriate.

WHEREFORE, NorthShore requests that this Court enter judgment in its favor and against Plaintiff, award NorthShore its costs, and provide such further and additional relief that this Court deems appropriate and just.

Dated: December 19, 2008                    Respectfully submitted,

**WINSTON & STRAWN, LLP**

**By:**   /s/ Duane M. Kelley      
           Duane M. Kelley
           Thomas A. Reynolds III
           Dane A. Drobny
           David E. Dahlquist
           Scott C. Walton
           35 West Wacker Drive
           Chicago, IL  60601
           Tel:    (312) 558-5600
           Fax:    (312) 558-5700
           dkelley@winston.com
           treynolds@winston.com
           ddrobny@winston.com
           ddahlquist@winston.com
           swalton@winston.com

## CERTIFICATE OF SERVICE

David E. Dahlquist, an attorney, certifies that he caused a copy of the foregoing document to be served by electronic means on all Electronic Filing Users of record, this 19th day of December 2008.

/s/ David E. Dahlquist