**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____ )
In re:  Evanston Northwestern Healthcare )    No. 07-C-4446
Corporation Antitrust Litigation )
_____)
)
This Document Relates to: )    Judge Joan Humphrey Lefkow
)
All Actions )    Magistrate Judge Morton Denlow
_____)

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs move this Court, pursuant to Fed.R.Civ.P. 23(a) and (b)(3), for an order

certifying this litigation as a class action on behalf of

> All persons or entities in the United States of America and Puerto Rico, except
> those who solely paid fixed amount co-pays, uninsureds who did not pay their
> bill, Medicaid and Traditional Medicare patients, governmental entities,
> defendant, other providers of healthcare services, and the present and former
> parents, predecessors, subsidiaries and affiliates of defendant and other providers
> of healthcare services who purchased or paid for inpatient hospital services or
> hospital-based outpatient services directly from NorthShore University Healthcare
> (formerly known as Evanston Northwestern Healthcare), its wholly-owned
> hospitals, predecessors, subsidiaries, or affiliates other than those acquired as a
> result of the merger with Rush North Shore Medical Center (the "Class") from at
> least as early as January 1, 2000 to the present (the "Class Period").

In support of this motion, Plaintiffs state:

1.      This is an antitrust class action to recover damages from Defendant Evanston

Northwestern Healthcare (now known as NorthShore University Healthcare)[1], which owns and

operates three hospitals in Chicago's North Shore area.[2]  Plaintiffs' and the Class' damages arise

---

[1] Plaintiffs will refer to Defendant as "ENH".

[2] The Consolidated Class Action Complaint includes an allegation about Rush Northshore Medical
Center, which is now known as Skokie Hospital, and which merged with ENH in January 2009.  The

from a common nucleus of operative facts: Defendant used it monopoly power to artificially inflate the charges for healthcare services at all three hospitals-Evanston, Highland Park and Glenbrook.  All of the members of the Class have a common interest in establishing ENH'S liability and in having their claims adjudicated in a single forum.

2.      In support of their motion for class certification, Plaintiffs rely on: (a) the Consolidated Class Action Complaint [Dkt. # 224]; (b)  Plaintiffs' Memorandum of Law In Support of Their Motion for Class Certification filed contemporaneously with this motion; (c) the Report  of David Dranove In Support of Plaintiffs' Motion for Class Certification; (d) and the accompanying Appendix filed contemporaneously with this motion.[3]

3.      This case satisfies all of the elements of Rule 23(a) and Rule 23(b)(3). A district court has "broad discretion" in determining whether to certify a class. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. Proc. 23(a). Rule 23(b)(3) requires  predominance and superiority. Fed. R. Civ. Proc. 23(b)(3). As discussed below, each of these requirements is satisfied.

4.      **Numerosity**.   The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)*(1); see also*

---

complaint was filed before the merger with defendant.  At this point, Plaintiffs have not had any discovery relating to the charges at Rush post merger and therefore the charges are not part of the damages calculus.  If further discovery reveals a significant damages impact, Plaintiffs will seek to supplement their class definition to include Rush.

[3]     The Declaration of David Dranove, as well as Plaintiffs' Memorandum and Appendix, contain information which has been designated Confidential under the Protective Order in this case.  Pursuant to the Protective Order, Plaintiffs are serving the Defendant and delivering to Chambers unredacted copies of these materials with this Motion.  Plaintiffs will file their motion for leave to file under seal the redacted and unredacted versions of these materials on February 18, 2009, as provided by the Protective Order.

*Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (certifying class of 40 persons). "[P]recise quantification of the class members is not necessary because the court may make 'common sense assumptions' to support a finding of numerosity." *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 552 (S.D.N.Y. 1995) (citation omitted). In this case there can be no dispute that this requirement is satisfied because the documents and records produced by defendant in discovery demonstrate that there are at least 200,000 members of the Class who can be identified readily so that notice can be disseminated to them.    Accordingly, the numerosity requirement of Rule 23(a)(1) is clearly satisfied.

5.        **Commonality**.    The commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. Proc. 23(a)(2). This requirement focuses on whether the class members' grievances "derive from a 'common nucleus of operative fact.'" *In re Hartmarx Securities Litig.*, No. 01 C 7832, 2002 WL 31103491, * 4 (N.D. Ill. Sept. 19, 2002). Such a common nucleus exists where "'defendants have engaged in standardized conduct towards members of the proposed class.'" Id. (citation omitted). *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Id.* Courts recognize that there may be factual differences between class members but the existence of such variations will not necessarily defeat the class aspect of the action. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992), *cert*. denied, 506 U.S. 1051 (1993); *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980), *cert*. denied, 451 U.S. 914 (1980).    "[F]actual variations among class members' claims" do not themselves "defeat the certification of a class." *Id*. In this case, the common questions of law or fact include, among others:

3

a.     Whether ENH has exercised monopoly power in the sale of hospital-based healthcare services in the relevant geographic market.

b.     Whether ENH's alleged conduct violates Section 2 of the Sherman Act;

c.     Whether ENH's alleged conduct violates Section 7 of the Clayton Act;

d.     Whether ENH's conduct, as alleged in this Complaint, caused injury to the business and property of the Plaintiffs and the other members of the Class;

e.     Whether  ENH's exercise of monopoly power had an anti-competitive impact on the prices of healthcare services sold by ENH and its wholly-owned hospitals during the Class Period; and

f.     Whether damages can be calculated on a class-wide basis and the measure of damages sustained by the Class.

Accordingly, the commonality requirement of Rule 23(a)(2) is clearly satisfied.

6.     **Typicality**.  The typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Proc. 23(a)(3).  A claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Kamp, Inc* , 713 F.2d 225, 232 (7th Cir. 1983).  Typicality is closely related to commonality, *Keele*, 149 F.3d at 595, and, as in the case of commonality, Factual distinctions between the claims of class members will not necessarily defeat a claim of typicality. *De La Fuente*, 713 F.2d at 233. The focus of the class certification analysis is on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n*, 7 F.3d at 597. The focus is on "'whether the

4

named representatives' claims have the same essential characteristics as the claims at large.'" *In re Hartmarx Securities Litig.,* 2002 WL 31103491 at *4 (citing *Retired Chicago Police Ass'n*, 7 F.3d at 596-97). A named representative's claim is typical where "'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members'" and is "'based on the same legal theory.'" *Id.* "'Typical does not mean identical, and the typicality requirement is liberally construed.'" *In re Neopharm, Inc. Securities Litig.,* 225 F.R.D. at 566 (citation omitted). A named representative's claim is "atypical" only if there is a defense to that representative's claim that is "unique, arguable and likely to usurp a significant portion of the litigant's time and energy." *Danis v. USN Communications, Inc*., 189 F.R.D. 391, 395 (N.D. Ill. 1999).

Plaintiffs here are typical of the Class they seek to represent. Their claims are predicated upon the same occurrence, namely the payment of each member of the Class of artificially high charges for healthcare services at ENH'S hospitals.  Accordingly, the typicality requirement of Rule 23(a)(3) is clearly satisfied.

7.      **Adequacy of Representation**.  The adequacy of representation requirement is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a)(4). Adequacy of representation merely requires that the class representative's attorney be qualified, and that the class representative not have interests conflicting with the class in the litigation at hand. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). It must appear that the named plaintiffs will "vigorously pursue the litigation on behalf of the class" and their attorneys must be "qualified, experienced and able to conduct the litigation." *In re Hartmarx Securities Litig*., 2002 WL 31103491at *6 (citing *In re Retired Chicago Police Assoc*., 7 F.3d at 598).

Plaintiffs have retained counsel who are experienced in antitrust and class action litigation and who have already demonstrated that they are committed to prosecuting the claims alleged in the complaint vigorously.  Counsel has already committed significant resources to the investigation and prosecution of this action and they have demonstrated that they will continue to do so. Plaintiffs have no interests antagonistic to the interests of absent Class members and there are no material conflicts between Plaintiffs' interests in this litigation and those of the Class that would make class certification inappropriate.  The attached Exhibits A and B are the résumés of Plaintiffs' counsel which demonstrate their experience in prosecuting the types of claims asserted in this case. Accordingly, the adequacy of representation requirement is readily satisfied.

8.      **Predominance**.  The predominance requirement is satisfied where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. Proc. 23(b)(3). "The requirement of predominance is met where there is a showing of predominance of common questions at the liability stage of the litigation, rather than at the damages stage. *In re Natural Gas Commodities Litig.,* 231 F.R.D. 171, 180-81 (S.D.N.Y. 2005) (certifying a three-year class of both long and short sellers)(citation omitted). The predominant issue in this litigation will be whether the Defendant engaged in conduct in violation of §2 of the Sherman Act and §7 of the Clayton Act.  Plaintiffs allege a uniform course of conduct by the Defendant, and that Defendant's course of conduct affected all members of the Class similarly. These allegations of ENH's common course of harmful conduct demonstrate that common questions will predominate.

9.      **Superiority**. The superiority requirement is satisfied where the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3). The "superiority" requirement is readily satisfied in cases such as

this where there are members of the Class who are likely to have "relatively small claims making it expensive to seek recovery through individual litigation," and, hence, where a "class action would be the most efficient use of judicial resources in resolving common issues." *In re Neopharm, Inc. Securities Litig., 225 F.R.D.* at 568.  Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). In this case, members of the Class do not have an interest in individually controlling the prosecution of separate actions given the complexity of this case and the likely resources that would be engendered by such separate litigation versus the potential recovery. The record demonstrates that there are thousands of members of the Class whose identities are readily known from ENH's records, so there is no doubt that certifying this litigation as a class action is superior to the alternatives for the fair and efficient adjudication of the causes of action.  Such treatment will permit those thousands of payors for hospital-based healthcare services provided by ENH who are similarly situated to the Plaintiffs to have their common claims prosecuted in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  Furthermore, since the identities of the members of the Class are known, there will not be any difficulty with providing individual notice to them of these proceedings. Plaintiffs are unaware of any issues affecting only individual Class members.

Since ENH engaged in a similar course of conduct directed to all members of the Classthe critical and identical factual issues require substantial discovery, expert testimony and perhaps a trial. There is no reason to have these identical issues developed repeatedly in each separate case by individual claimants, even if they could afford to do so. Because it would be economically unreasonable for the class members to adjudicate their separate claims individually, the superiority of a class action is evident, and the predominance requirement is readily satisfied.

WHEREFORE, Plaintiffs request that this Court enter an Order: (1) certifying this case as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(3); (2) appointing Plaintiffs as representatives of the Class; and (3) appointing Plaintiffs' attorneys,  Mary Jane Fait of Wolf Haldenstein Adler Freeman & Herz LLC and Marvin A. Miller of Miller Law LLC as counsel for the Class.

Dated:  February 13, 2009

Respectfully,
Plaintiffs

By:       /s/    *Marvin A. Miller*
Mary Jane Fait
Theodore Bell
John Tangren
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, IL  60603
Telephone: (312) 332-3400

Marvin A. Miller
Matthew E. Van Tine
Margaret M. Weems
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  (312) 332-3400
***Plaintiffs' Co-Lead Counsel***

8

## CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Marvin A. Miller, one of the attorneys for plaintiffs, hereby certify that on February 13, 2009 service of the foregoing ***Plaintiffs' Motion for Class Certification*** was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.


*/s/   Marvin A. Miller*

Marvin A. Miller

# EXHIBIT A

# Wolf

# Haldenstein

# Adler

# Freeman &

# Herz LLP

## Firm Resume

*"The class action is one of the few legal remedies the small claimant has against those that command the status quo."*

**Justice William O. Douglas,**
**United States Supreme Court**

# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

## The Firm

Founded in 1888, Wolf Haldenstein Adler Freeman & Herz LLP is a full service law firm with practice groups in corporate/tax, pension/benefits, real estate, trusts and estates, healthcare, labor relations, bankruptcy, limited partnerships, and civil and commercial litigation, with a particular specialty in complex class and shareholder litigation under both federal and state law.

The Firm has its principal office with lawyers in the various practice areas, at 270 Madison Avenue, New York, NY 10016.  The firm's general telephone number in New York is (212) 545-4600.  The fax number in New York is (212) 545-4653.  The firm also has offices at Symphony Towers, 750 B Street, Suite 2770, San Diego, CA 92101, telephone: (619) 239-4599, fax: (619) 234-4599; 55 W. Monroe Street, Suite 1111, Chicago, IL 60603, telephone: (312) 984-0000, fax: (312) 984-0001; and 625 N. Flagler Drive, West Palm Beach, Florida 33401.  The firm's web site is accessible at http://www.whafh.com.

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

## The Wolf Haldenstein Class Action Litigation Group

Wolf Haldenstein's Class Action Litigation Group has been recognized by courts throughout the country as being highly experienced in complex class action litigation. The Class Action Litigation Group consists of 16 partners, 12 counsel and associates and 10 paraprofessional assistants.

Wolf Haldenstein's performance in representative litigation has repeatedly received favorable judicial recognition.  The following representative judicial comments over two decades indicate the high regard in which the Firm is held:

In *In re Dynamic Random Access Memory (DRAM) Litigation,* No. 02-1486-PJH (N.D.CA. Aug. 15, 2007), the Firm was co-lead counsel.  The Court approved $320 million in settlements and the class members received a record 85% of their single damages.  In approving the award of attorneys' fees, Judge Hamilton noted that the lead attorneys did "an exceptional job" of coordinating and litigating the case, commenting "I have cases a fraction the size of this one that take up more of my, time just because counsel are not acting as cooperatively and professionally as you are."  Judge Hamilton also commented on lead counsel's motion for reimbursement of attorneys' fees and expenses stating: "The language in your motion is deserved. It is not mere puffery."

In the *In Re Toys R Us Antitrust Litigation*, 98 MDL 1211 (NG) 191 F.R.D. 347, 351, 356 (E.D.N.Y. 2000),  where the Firm served as co-lead counsel and liaison counsel, Judge Gershon wrote:  "Class counsel are highly skilled and experienced and can fairly and adequately represent the interests of the class . . . . Counsel for both the class plaintiffs and the States have well-earned the compensation that they request."

In *In re MicroStrategy Securities Litigation*, 150 F. Supp. 2d 896, 903 (E.D. Va. 2001), where the Firm was a co-lead counsel, Judge Ellis commented "Clearly, the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition they enjoy."

In *Yud v. Saf T Lok*, No. 98-8507-Civ-Hurley (S.D. Fla. Dec. 15, 1999), where the firm was sole lead counsel, the court stated:  "The attorneys have done an outstanding amount of work and fine legal work in a short period of time to bring this class action to resolution in a successful fashion."

In *Kurzweil v. Philip Morris Companies*, 94 Civ. 2373, 94 Civ. 2546 (MBM) (S.D.N.Y. Nov. 13, 1998), where the Firm was sole lead counsel, now Chief Judge Mukasey, in approving a $116.5 million settlement stated:  "In this case, this

represents a lot of good, hard, serious work by a lot of talented lawyers and I appreciate it on both sides."

In *Paramount Communications v. QVC Network Inc.*; *In re Paramount Communications Inc. Shareholders' Litigation*, 637 A.2d 34, 37 n.2 (Sup. Ct. Del. 1994), where the Firm was co-lead counsel for the Paramount shareholders, the Supreme Court of Delaware "commended the parties for their professionalism in conducting expedited discovery, assembling and organizing the record, and preparing and presenting very helpful briefs, a joint appendix, and oral argument."

In *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), where the Firm served as co-lead counsel, the court said: "'plaintiffs' counsel constitute the cream of the plaintiffs' bar.' The Court cannot find fault with that characterization."

In *Steiner v. Equimark Corp.,* No. 81-1988 (W.D. Pa. 1983), a case involving complex issues concerning banking practices in which the Firm was lead counsel, then District Judge Mannsman described, in part, the work the Firm performed:

> We look at the complexity of the issue, the novelty of it, the quality of work that, as the trial judge, I am able to perceive, and then, finally, the amount of recovery obtained: I think I have certainly said a lot in that regard. I think it's been an extraordinary case. I think it's an extraordinary settlement. Certainly defense counsel and plaintiffs' counsel as well are all experienced counsel with a tremendous amount of experience in these particular kinds of cases. And under those circumstances . . . I think it was, really, the strategy and ingenuity of counsel in dividing up the workload and strategizing the cases as to who was to do what and what ultimately should be done to bring about the settlement that was achieved.

## The Wolf Haldenstein Antitrust Practice Group

The firm's Antitrust Practice Group is managed and directed by Mary Jane Fait, the managing partner of the Chicago office. Wolf Haldenstein's Antitrust Practice Group actively seeks to enhance antitrust law in ways that will strengthen the rights and claims of small businesses and consumers. To that end it commences large, often complex antitrust and trade regulation class actions and other cases that target some of the most powerful and well-funded corporate interests in the world. Many of these interests have strong influence over enforcement policy that is in the hands of elected officials, so that private enforcement provides the only true assurance that their conduct will be duly

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

scrutinized for compliance with the law. These cases frequently bring to light concealed unlawful conduct such as price-fixing, monopolization, monopoly leveraging, essential facilities, tying arrangements, vertical restraints, exclusive dealing and refusals to deal. Wolf Haldenstein's Antitrust Practice Group has successfully prosecuted numerous antitrust cases and advocates remedies and restitution for businesses and investors wronged by violations of the antitrust laws.

Wolf Haldenstein attorneys currently serve as co-lead counsel in some of the largest and most significant antitrust class action lawsuits, including:

*In re Evanston Northwestern Healthcare Corp.,* No. 06-4446-JHL (N.D. Ill.). Illegal monopolization and attempted monopolization of relevant market.

*In re McDonough, et al. v. Toys "R" Us, Inc., et al.,* No 2:06 CV 00242-AB (E.D. Pa.) Retail price maintenance antitrust litigation.

*In re Sulfuric Acid Antitrust Litigation*, No. 03-4576, M.D.L. No. 1536 (N.D. Ill.). Horizontal price fixing and market allocation antitrust litigation.

*In Re Genetically Modified Rice Litigation,* No. 06 MD 1811-CDP (E.D. Mo.) Horizontal price fixing and market allocation antitrust litigation.

*Schoenbaum v. E.I. DuPont de Nemours & Co.,* No. 05-CV-01108 ERW (E.D. Mo.)

In addition, Wolf Haldenstein attorneys have been involved in the following major antitrust class actions:

*In re Packaged Ice Antitrust Litigation,* M.D.L. 1952 (U.S.D.C. Mi.). Horizontal price fixing antitrust litigation.

*In re Chocolate Confectionary Antitrust Litigation,* M.D.L. 1935 (M.D. Fla.) Horizontal price fixing antitrust litigation.

*In re LTL Shipping Services Antitrust Litigation,* M.D.L. 1895 (U.S.D.C. ME). Horizontal price fixing antitrust litigation.

*In re Rail Freight Fuel Surcharge Antitrust Litigation,* M.D.L. No. 1536 (N.D. Ill.). Horizontal price fixing antitrust litigation.

*In re Cathode Ray Tube Antitrust Litigation,* No. 07-C-5944-SC (N.D. CA). Horizontal price fixing antitrust litigation.

*In re Graphic Processing Units Antitrust Litigation,* No. 07-CV-1823-WHA (N.D. CA). Horizontal price fixing antitrust litigation.

[5]

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

*In re Air Cargo Shipping Antitrust Litigation*, No. 06-MD-1775 CBA/VVP (E.D. NY).  Horizontal price fixing antitrust litigation.

*In re International Air Transportation and Surcharge Antitrust Litigation*, No. 06-M-1793 CRB (N.D. CA).  Horizontal price fixing antitrust litigation.

*In re Publication Paper Antitrust Litigation*, No. 04-MD-1631 SRU (U.S.D.C. Conn.).  Horizontal price fixing antitrust litigation.

*In re New Motors Vehicles Canadian Export Antitrust Litigation*, No. 03 md 1532, M.D.L. No. 1532 (U.S.D.C. Me.).  Canadian export antitrust litigation.

*In re Carbon Black Antitrust Litigation*, No. 03-CV-10191, M.D.L. No. 1543 (D. Mass.).  Horizontal price fixing antitrust litigation.

*In re Rubber Chemicals Antitrust Litigation*, No. C 03 1496 (D. Conn.).  Horizontal price fixing antitrust litigation.

*In re Urethane Antitrust Litigation*, M.D.L. No. 1616.  Horizontal price fixing antitrust litigation.

*In re Plastic Additives Antitrust Litigation*, No. 03 CV 2038, M.D.L. No. 1547 (E.D. Penn.).  Horizontal price fixing antitrust litigation.

*In re OxyContin Antitrust Litigation*, M.D.L. No. 1603.  Patent monopolization antitrust litigation.

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, No. 03 md 1542, M.D.L. No. 1542 (D. Conn.).  Horizontal price fixing antitrust litigation.

*In re Microcrystalline Cellulose Antitrust Litigation,* MDL 1402.  Horizontal price fixing action.

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*, M.D.L. No. 1361 (U.S.D.C. Me).  Horizontal and vertical price fixing class action.

*In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023, (S.D.N.Y.) (R.W.S. 94 CIV 3996).  Manipulation of market prices.

*Universal Delaware, Inc., et al. v. Ceridian Corporation, et al.,* No. 07-C-1078-JKG-HSP (E.D. PA).  Horizontal price fixing antitrust litigation.

*Narendra Patel v. Next Card, Inc., et al.,* No. 01-C-8409 (N.D. Ill.).  Horizontal price fixing antitrust litigation.

*Elliot Franklin v. Smithkline Beecham Corporation d/b/a GlaxoSmithKline, P.L.C., et al.,* No. 02-10671-RCL (D. Mass.).  Relafen patent monopolization class action.

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

*In re Neurontin Antitrust Litigation*, MDL No. 1479. Patent monopolization class action.

*Robert Kapella v. Organon Inc. and Akzo Nobel N.V.*, 2:02 CV 02384, (U.S.D.C. New Jersey).  Patent monopolization litigation.

*Scott Jacobs v. McNeil-PPC, Inc.*, C.A. No. 02-6797 (E.D. Pa.).  Immodium AD patent monopolization litigation.

*Joanne Gaddy v. GlaxoSmithKline PLC and Smithkline Beecham Corp. d/b/a GlaxoSmithKline, Inc.*, C.A. No. 02-6707 (E.D. Pa.).  Wellbutrin patent monopolization litigation.

*Charles D. Fredericks, Jr. v. Elan Corporation, PLC and Skyepharma, Inc. f/k/a Brightstone Pharma, Inc.*, C.A. No. 02 CV 3719 (E.D. Pa.).  Naprelan patent monopolization litigation.

*Westwood Automotive, Inc. v. Akzo Nobel Coatings, Inc., et al.*, C.A. No. 3:01 CV 435-S (W.D. Ky.).  Automotive paint price fixing litigation.

*In re Visa Check/Master Money Antitrust Litigation*, Master File No. CV-96-5238 (E.D.N.Y.) Horizontal price fixing.

*In re Bulk Vitamins Antitrust Litigation*, (D.D.C.)

*In re Clozapine Antitrust Litigation*, (N.D. Ill.)

*In re Industrial Gas Antitrust Litigation*, 80 C. 3479 and related cases (N.D. Ill.) Horizontal price fixing antitrust litigation.

*In re Aluminum Siding Antitrust Litigation*, M.D.L. No. 454. (D. Minn.)  Horizontal price fixing antitrust litigation.

*In re Chor-Alkalai and Caustic Soda Antitrust Litigation*, 86-5428 and related cases (E.D. Pa.)  Horizontal price fixing antitrust litigation.

*In re Infant Formula Antitrust Litigation*, M.D.L. 878 (N.D. Fla.)  Horizontal price fixing antitrust litigation.

*In re Brand Name Prescription Drug Antitrust Litigation*, M.D.L. 940 (N.D. Ill.) Horizontal price fixing antitrust litigation.

*In re Cheese Antitrust Litigation*, Case No. 96-C-391 (Circuit Ct. Ill.).  Horizontal price fixing antitrust litigation.

*In re Commercial Tissue Antitrust Litigation*, M.D.L. 1189 (N.D. Fla.)  Horizontal price fixing antitrust litigation.

[7]

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

*In re High Fructose Corn Syrup Antitrust Litigation*, M.D.L. 1087 (C.D. Ill.) Horizontal price fixing antitrust litigation.

*J & J Produce & Deli, Inc., et al. v. Gustafson's Dairy, Inc.*, Civil Action Nos. 93-1077-CIV-T-23B, 93-1264-CIV-T-23A, 94-1437-CIV-T-23A (M.D. Fla.). Horizontal price fixing antitrust litigation.

*In re Flat Glass Antitrust Litigation*, M.D.L. 1200 (W.D. Pa.). Horizontal price fixing antitrust litigation.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

## Class Action Litigation Results

The following provide examples of the substantial recoveries obtained in class action cases in which Wolf Haldenstein was lead counsel or had a significant role:

- <u>Class Recovered $325 million</u> *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* No. 02-1486-PJH (N.D.CA)

- <u>Class Recovered $715 million</u> *In re Brand Name Prescription Drug Antitrust Litigation,* MDL No. 940 (N.D. Ill.)

- <u>Class Recovered $175 million</u> *In re Relafen Antitrust Litigation,* No. 01-12239-WGY (D. Mass.)

- <u>Class Recovered $61.7 million</u> *In re Flat Glass Antitrust Litigation,* MDL No. 1200 (W.D. Penn.)

- <u>Class Recovered $126 million</u> *In re Infant Formula Antitrust Litigation,* (N.D. Fla.)

- <u>Class Recovered $100 million</u> *In re Chubb Corp. Drought Insurance Litigation,* C-1-88-644 (S.D. Ohio)

- <u>Class Recovered $55 million</u> *In re Chor-Alkalai and Caustic Soda Antitrust Litigation,* (E.D. Pa.)

- <u>Class Recovered $50 million in cash and coupons</u> *In re Industrial Gas Antitrust Litigation,* (N.D. Ill.)

- <u>Class Recovered $38 million</u> *Holloway v. Peat, Marwick, Mitchell & Co.,* No. 84 C 814 EU (N.D. Okla.)

- <u>Class Recovered $12 million</u> *Landon v. Freel,* MDL No. 593 (S.D. Tex.)

- <u>Class Recovered $490 million</u> *In re BankAmerica Corp. Securities Litigation* (E.D. Mo.)

- <u>Class Recovered $160 million in cash and securities</u> *In re MicroStrategy, Inc. Securities Litigation* (E.D. Va.)

- <u>Class Recovered $116.5 million</u> in *Kurzweil v. Philip Morris Cos.,* (S.D.N.Y.); (Securities Fraud.)

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

- Class Recovered $110 million *In re Starlink Corn Products Liability Litigation,* (N.D. Ill.)

- $130 million settlement in this and two related actions for *Computer Associates 2002 Class Action Litigation,* (N.D. Ill.)

- Class Recovered $29 million for *Berger v. Compa1 Computer Corp* (S.D. Tex.)

- Class Recovered $24 million *In re Arakis Energy Corporation Securities Litigation,* (E.D.N.Y.)

- Class Recovered $20 million *In re E.W. Blanche Holdings, Inc. Securities Litigation* (D. Minn.)

- Class Recovered $13.75 million *In re Musicmaker.com Securities Litigation,* (C.D. Cal.)

- Class Recovered $12 million *In re Allaire Corp. Securities Litigation,* (D. Mass.)

- Class Recovered $10.5 million *In Curative Health Services Securities Litigation,* (E.D.N.Y.)

- Class Recovered $10.5 million *In City Partnership Co. v. Jones Intercable* (D. Colo.)

- Class Recovered $5.9 million *In re Tenfold Corporation Securities Litigation,* (D. Utah)

- Class Recovered $12.25 million in *Wong v. Megafoods* (D. Ariz.) (Securities fraud).

- Class Recovered $11.5 million *In re Del Val Financial Corp. Securities Litigation)* (S.D.N.Y.)

- Class Recovered $13 million *In re Home Shopping Network Shareholders Litigation,* (Del. Ch. 1995)

- Class Recovered $200 million *In re Paine Webber Limited Partnerships Litigation* (S.D.N.Y.)

- Class Recovered $19 million *In re Bristol-Meyers Squibb Co. Securities Litigation* (S.D.N.Y.)

- Class Recovered $13 million *In re Spectrum Information Technologies Securities Litigation* (S.D.N.Y.)

- Class Recovered $17.5 million *In re Chase Manhattan Securities Litigation* (S.D.N.Y.)

- Class Recovered $9 million in *Prostic v. Xerox Corp.* (D. Conn.) (Securities fraud)

- Class Recovered $18 million in *Steiner v. Hercules* (D. Del.) (Securities fraud)

- Class Recovered $14.6 million *In re Ambase Securities Litigation,* (S.D.N.Y.)

- Class Recovered $70 million in *Steiner v. Phillips (In re Southomark Securities Litigation)* (N.D. Tex.)

- Class Recovered $18 million in *Steiner v. Ideal Basic Industries, Inc.* (D. Colo. 1989) (Securities fraud)

- Corporation Recovered $30 million in *Tucson Electric Power Derivative Litigation* (Shareholder derivative action)

- Class Recovered $16 million *In re Alleco Stockholders Litigation* (Cir. Ct. Prince Georges County, Md.)

- Class Recovered $30 million *In re Revelon Group, Inc. Shareholders Litigation,* (Del. Ch.)

- Class Recovered $20 million *In re Taft Broadcasting Company Shareholders Litigation* (Del. Ch.)

- Class Recovered $20 million *In re Southland Corp. Securities Litigation* (D. Tex.)

- Class Recovered $30 million *In re Crocker Bank Securities Litigation* (Del. Ch.)

- Class Recovered $17.5 million *In re Warner Communications Services Litigation* (S.D.N.Y..)

- Class Recovered $200 million in *Joseph v. Shell Oil* (Del. Ch.) (Securities fraud)

- Class Recovered $50 million *In re Flight Transportation Corp. Securities Litigation* (D. Minn.)

- Class Recovered $18 million *In re Whittaker Corporation Securities Litigation* (Cal. Super. Ct., Co. of Los Angeles)

- Class Recovered $40 million in *Naevus International, Inc. v. AT&T Corp.* (N.Y. Sup. Ct. (Consumer fraud)

- Class Recovered $45.20 million in *Sewell v. Sprint PCS Limited Partnership* (Cir. Ct. for Baltimore City) (Consumer fraud)

[11]

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

## THE CLASS ACTION LITIGATION GROUP

The qualifications of the attorneys in the Wolf Haldenstein Antitrust Group are set forth below and are followed by descriptions of some of the Firm's attorneys who normally practice outside the Group who contribute significantly to the class action practice from time to time.

## PARTNERS

**MARY JANE FAIT**: *admitted*: New York; Illinois; U.S. District Courts for the Southern and Eastern Districts of New York, and Northern District of Illinois; U.S. Court of Appeals for the Seventh Circuit; Member of the Federal Trial Bar. *Education*: St. John's College and University of Illinois (B.A., Economics, 1976); Cornell Law School (J.D., 1979). Member, Chicago Bar Association; Illinois Bar Associations; Antitrust Division of the American Bar Association. Ms. Fait has over 20 years of experience in complex antitrust class actions and has frequently lectured on antitrust issues to businesses and law students.

**DANIEL W. KRASNER**: *admitted*: New York; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Central District of Illinois, and Northern District of Michigan. *Education*: Yeshiva College (B.A. 1962); Yale Law School (LL.B., 1965). Lecturer: Practicing Law Institute; Rutgers Graduate, School of Business. Member, the Association of the Bar of the City of New York; Rockland County, New York State and American Bar Associations; Federal Bar Council. Mr. Krasner has lectured frequently before bar groups and has educated groups on securities laws and investors rights.

**FRED TAYLOR ISQUITH**: *admitted*: New York; District of Columbia; Supreme Court of the United States; U.S. Courts of Appeals for the First, Second, Third, Fourth and Eighth Circuits; U.S. District Courts for the Southern, Eastern and Northern Districts of New York, District of Arizona, District of Colorado, Central District of Illinois, Western District of Michigan and District of Nebraska. *Education*: Brooklyn College of the City University of New York (B.A., 1968); Columbia University (J.D., 1971). Author, Federal Civil Practice Supplement, "Representative Actions," (NYSBA, 2000). Columnist for weekly column "From the Courts," for *The Class Act*, National Association of Securities and Class Action Attorneys. Mediator for New York State Supreme Court, County of New York, Complex Litigation Panel. Member: The Association of the Bar of the City of New York (Committee on: Federal Courts); New York County Lawyers'

[12]

Association (Former Chair: Business Tort/Consumer Fraud-Tort Law Section); Brooklyn (Member: Committee on Civil Practice Law and Rules, 1983-; Committees on Legislation and Federal Courts, 1984-), New York State (Member: Committee on Legislation, Trial Lawyers Section, 1981-; Committee on Securities, Commercial and Federal Litigation Section, 1989-) and American (Member, Sections on: Litigation; International Law; Individual Rights and Responsibilities) Bar Associations; The District of Columbia Bar.

**JEFFREY G. SMITH**: *admitted:* New York; California; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits; U.S. Tax Court; U.S. District Courts for the Southern and Eastern Districts of New York, Southern and Central Districts of California and the Districts of Colorado and Nebraska. *Education*: Vassar College (A.B., *cum laude generali*, 1974); Woodrow Wilson School of Public and International Affairs, Princeton University, (M.P.A., 1977); Yale Law School (J.D., 1978). At Yale Law School, Mr. Smith was a teaching assistant for the Trial Practice course and a student supervisor in the Legal Services Organization, a clinical program. Member, The Association of the Bar of the City of New York; New York State and American (Section on Litigation) Bar Associations; State Bar of California (Member, Litigation Section).

**FRANCIS M. GREGOREK**: *admitted*: New York; California; U.S. Court of Appeals for the District of Columbia and Ninth Circuit; U.S. District Courts for the Eastern and Southern Districts of New York, and Central, Southern and Northern Districts of California; *Education*: University of Virginia (B.A., with high distinction, 1975); New York University (J.D., 1978); Durham University, Durham, England. Phi Beta Kappa; Phi Alpha Theta. Member, State Bar of California; American Bar Association.

**PETER C. HARRAR**: *admitted*: New York; U.S. District Courts for the Southern, Eastern and Northern Districts of New York. *Education*: Princeton University (A.B., with high honors, 1980); Columbia University (J.D., 1984). Phi Beta Kappa. Mr. Harrar has extensive experience in complex securities and commercial litigation on behalf of individual and institutional clients.

**LAWRENCE P. KOLKER**: *admitted*: New York; U.S. Courts of Appeals for the Second and Eleventh Circuits; and U.S. District Courts for the Southern and Eastern Districts of New York, Western District of Michigan and the District of Colorado. *Education*: State University of New York at Binghamton (B.A., 1978); Brooklyn Law School (J.D., 1983). Editor, Brooklyn Law Review, 1982-1983. Panelist, Early Neutral Evaluator for the Eastern District of New York, 1992-1997. Lecturer, Brooklyn Law School, 1989. Assistant Corporation Counsel, City of New York, 1983-1987. Member, The Association of the Bar of the City of New York; New York State Bar Association.

**MARK C. RIFKIN:** *admitted*: Pennsylvania; New Jersey; U.S. Supreme Court; U.S. Courts of Appeals for the Second, Third, Fifth, and D.C. Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

Pennsylvania, the District of New Jersey, the Eastern District of Wisconsin and the Western District of Michigan. *Education***:** Princeton University (A.B., 1982); Villanova University School of Law (J.D. 1985). Contributor, PACKEL & POULIN, *Pennsylvania Evidence* (1987). Mr. Rifkin has extensive experience in complex class and derivative actions in securities, antitrust, intellectual property, and consumer protection litigation. Mr. Rifkin has lectured before diverse business and professional organizations in the areas of securities and complex litigation and corporate governance.

**MICHAEL JAFFE**: *admitted***:** California; New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: University of California at Berkeley (B.S., with highest distinction, 1982); Hastings College of the Law, University of California (J.D., 1987). Judicial Extern to the Honorable Thelton E. Henderson, Northern District of California, 1986-1987. Member: The Association of the Bar of the City of New York. Languages: French.

**BETSY C. MANIFOLD**: *admitted***:** Wisconsin; New York; California; U.S. District Courts for the Western District of Wisconsin, Eastern and Southern Districts of New York, and Northern, Central and Southern Districts of California. *Education*: Elmira College; Middlebury College (B.A., *cum laude*, 1980); Marquette University (J.D., 1986); New York University. Thomas More Scholar. Recipient, American Jurisprudence Award in Agency. Member: The Association of the Bar of the City of New York. Languages: French.

**GREGORY M. NESPOLE**: *admitted***:** New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: Bates College (B.A., 1989); Brooklyn Law School (J.D., 1993). Member, The Association of the Bar of the City of New York; New York State Bar Association. Mr. Nespole's experience includes complex civil and criminal litigation.

**ALEXANDER H. SCHMIDT:** *admitted:* New York; New Jersey; United States Supreme Court, United States Court of Appeals for the Second Circuit, and the United States Court of Federal Claims. *Education:* State University of New York, Stony Brook (B.A., 1981); Brooklyn Law School (J.D., 1985). Mr. Schmidt concentrates on sophisticated commercial litigation, including matters involving banking, commercial factoring, securities fraud, antitrust, civil RICO, real estate, intra-corporate and partnership disputes, and legal, accounting and architectural malpractice.

**DAVID L. WALES**: *admitted***:** New York; District of Columbia; United States Court of Appeals for the Second and Fourth Circuits, the United States District Courts for the Southern, Eastern and Western Districts of New York, and the District of Columbia. *Education*: State University of New York, Albany (BA, *magna cum laude*, 1984); Georgetown University Law Center, (J.D., *cum laude*, 1987); Notes and Comments Editor, Georgetown Journal of Law and Technology. Mr. Wales was an Assistant United States Attorney for the Southern District of New York (1992-1998), where he specialized

**[14]**

in investigating and prosecuting fraud and white collar criminal cases.  Mr. Wales has extensive jury trial experience.

**DEMET BASAR**: *admitted*:  New York; New Jersey; U.S. District Court for the District of New Jersey, and Southern District of New York.  *Education*: Fairleigh Dickinson University (B.A., *summa cum laude*, 1984), Phi Omega Epsilon; Rutgers University School of Law (J.D., 1990). Recipient, West's Scholarship Award, Senior Notes and Comments Editor, Rutgers Law Review. Member, The Association of the Bar of the City of New York. Languages: Turkish.

**ADAM J. LEVITT**: *admitted:*  Illinois; Supreme Court of the United States; U.S. Court of Appeals for the First and Seventh Circuits; U.S. District Courts for the Northern and Southern Districts of Illinois, Northern District of Indiana, District of Nebraska, and the Northern and Eastern Districts of Texas.  *Education*: Columbia College, Columbia University (A.B., *magna cum laude*, 1990); Northwestern University School of Law (J.D., 1993). Member, Chicago, Federal and American Bar Associations; Lawyers for the Creative Arts.  Mr. Levitt regularly serves as a moot court judge in the Julius H. Miner Moot Court Competition, Northwestern University School of Law.  Author, An Illinois Lawyer's Guide to Service of Process in Mexico," 82 *Illinois Bar Journal* 434 (1994).  In recognition of his achievements to date, Mr. Levitt was named one of the 40 Illinois Attorneys Under 40 Years Old to Watch" by the *Chicago Daily Law Bulletin* and the *Chicago Lawyer*.  Mr. Levitt is also the Seventh Circuit contributing editor for the ABA publication *Class Actions & Derivative Suits*.  Mr. Levitt specializes in securities, consumer, technology, and agricultural litigation.

**THOMAS H. BURT**: *admitted*:  New York; U.S. District Courts for the Southern and Eastern Districts of New York.  *Education*: American University (B.A., 1993); New York University (J.D., 1997).  Articles Editor with New York University Review of Law and Social Change.

**RACHELE R. RICKERT**: *admitted*:  California; U.S. District Court for the Southern District of California.  *Education*:  Point Loma Nazarene College (B.A., 1994); University of California, Hastings College of the Law (J.D., 1997).  Member: State Bar of California.  Former Deputy Alternate Public Defender for the County of San Diego.

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

<div style="border: 1px solid black">

### OF COUNSEL

</div>

**ROBERT ABRAMS**: *admitted*:  New York; U.S. Court of Appeals for the Third Circuit; U.S. District Courts for the Southern and Eastern Districts of New York, Eastern District of Missouri, District of Maryland, and District of Delaware. *Education:* Haverford College (B.A. 1961); Columbia University (Ph.D., 1966), Brooklyn Law School (J.D., 1992). Woodrow Wilson Fellow; International Business Law Fellow. Adjunct Professor, Mediation Clinic, Brooklyn Law School, 1983-1984. Mr. Abrams was formerly a Professor of Political Science at Brooklyn College and the Graduate Center of the City University of New York. Member, New York State Bar Association.

**ROBERT B. WEINTRAUB**: *admitted*:  New York; Supreme Court of the United States; U.S. Court of Appeals for the Federal and Second Circuits; District of Columbia; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: Syracuse University (B.A., *cum laude*, 1972); Georgetown University Law Center (J.D., 1977). Member, 1975-1977, Articles Editor and Member, Executive Board, 1976-1977, Law and Policy in International Business, the Georgetown International Law Journal. Assistant Editor, Competition Working Group, "The OECD Guidelines for Multinational Enterprises: A Business Appraisal," 1977. Author, Law Backs Women Warriors, National Law Journal, June 7, 1993. Co-contributor: Chapter 7, "The Celler-Kefauver Act of 1950," 4 The Legislative History of the Federal Antitrust Laws and Related Statutes, edited by E. Kintner, Chelsea House Publishers, 1980. Mediator, U.S. District Court, Southern District of New York. Member, The Association of the Bar of the City of New York (Member, Committee on Securities Regulation; Council on International Affairs; Chair, 1991-1994 and Member, 1987-1990); American Bar Association. He has counseled corporations on contract negotiation and antitrust matters, and provided antitrust advice on mergers to the arbitrage department of a major brokerage house.

<div style="border: 1px solid black">

### ASSOCIATES

</div>

**THEODORE B. BELL:** *admitted:* Michigan; Illinois; 7th Circuit Court of Appeals; United States District Courts for the Northern, Central and Southern Districts of Illinois. *Education:* University of Michigan (B.A., 1988); University of Detroit Mercy School of Law (J.D., 1992).

**MALCOLM T. BROWN**: *admitted:* New York, New Jersey, Pennsylvania, United States District Courts for the Southern and Eastern Districts of New York, District of New

Jersey and Eastern District of Pennsylvania. Education: University of Pennsylvania (B.A., Political Science 1988) and Rutgers University School of Law (J.D. 1994).

**SCOTT J. FARRELL**: *admitted*: New York; New Jersey; U.S. District Courts for the Southern and Eastern Districts of New York, the District of New Jersey, and the District of Colorado. *Education*: Yeshiva University (B.A., *magna cum laude*, 1996), where he was a Max Stern Scholar and Gruss Scholar; New York University School of Law (J.D., 1999), where he was an Article and Note Editor of the *Journal of Legislation and Public Policy*. He is the co-author of "In re Gary Glass and Zoltan Guttman," CFTC Docket No. 93-4, *Futures & Derivatives Law Report*, July/August, 1998.

**KATE MCGUIRE**: *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: University of California at Santa Cruz (B.A. 1995), Georgetown University Law Center (J.D., 1998); Member: *Georgetown Immigration Law Journal*.

**STACEY T. KELLY**: *admitted*: New York; New Jersey; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: New York University (B.A., 1997); Rutgers School of Law - Newark (J.D., 2000). Member: New York State Bar Association; New York County Lawyers Association

**PAULETTE S. FOX**: *admitted*: New York; New Jersey U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: Benjamin N. Cardozo School of Law (J.D. 2001); Syracuse University (B.A. in Public Policy, *summa cum laude*, Phi Beta Kappa, 1998).

**MATTHEW GUINEY**: *admitted:* New York. *Education*: The College of William & Mary (B.A. in Government and Economics 1998); Georgetown University Law Center (J.D. 2002).

**MARTIN RESTITUYO**: *admitted:* New York. *Education*: Queens College (B.A., 1998); Hofstra University School of Law (J.D. 2002); Hofstra University, Frank G. Zarb School of Business (M.B.A., Finance, 2005). Mr. Restituyo did postgraduate work at the Universidad Autonoma de Santo Domingo, Santo Domingo, in the Dominican Republic, and studied at Faculte de Droit de l'Universite de Nice, in Nice, France. Mr. Restituyo was the Assistant Town Attorney for North Hempstead, New York (2004-2006), an Adjunct Professor at John Jay College of Criminal Justice (2005), and was in the Nassau County Department of Economic Development (2002-2004). In 2003, he was awarded the "Distinguished Alumni Award" from Hofstra University's Clinical Program. He is a member of the Nassau County Bar Association, the Women's Bar Association, the Hispanic Bar Association, the Dominican Bar Association and Hofstra University School of Law, Alumni Board.

**MARISA C. LIVESAY**: *admitted*: California; U.S. Court of Appeals for the Ninth Circuit; U.S. District Courts for the Central, Southern and Northern Districts of California. *Education*: University of Arizona (B.A. 1999, Dean's List with Distinction),

where she served on the Associated Student Senate; University of California, Los Angeles (J.D. 2002, Corporate Specialization), where she was a member of the Moot Court Executive Board and staff member of the Journal of International Law and Foreign Affairs.  Member: State Bar of California.

**JOHN TANGREN**: *admitted:* Illinois, the Northern District of Illinois and the District of Colorado.  *Education:*  The University of Chicago (A.B., Philosophy and Music, 2000) and the University of Chicago Law School with honors (J.D. 2003) where he was Executive Editor of the University of Chicago Legal Forum.  Before joining Wolf Haldenstein, Mr. Tangren practiced complex commercial litigation as an associate in the Chicago office of a large global firm.  His primary area of practice is class action litigation.

**RACHEL S. POPLOCK:** *admitted:* New York, U.S. District Courts for the Southern & Eastern Districts of New York. *Education:* Cornell University (B.S. Human Development, 2002), Fordham Law School (J.D. 2005) where she was a member of the Fordham Urban Law Journal and received the Archibald R. Murray Public Service Award for her participation in the Family Advocacy Clinic.

**RUSSELL S. MINESS:** a*dmitted:*  New York, U.S. District Court for the Southern District of New York.  *Education:*  Cornell University (B.S., Industrial and Labor Relations, 2002); University of Pennsylvania Law School (J.D., 2005), where he was a Senior Editor of the Journal of International Economic Law.  Before joining Wolf Haldenstein, Mr. Miness was an associate in the New York office of a large international law firm.

[18]

# EXHIBIT B



Miller Law LLC is a litigation boutique law firm which unites the talents of attorneys with combined experience in a wide array of complex civil litigation. The foundation of the firm is the ability to handle large complex litigation and sophisticated class actions in a variety of practice areas in federal and state courts across the country.

Our litigation experience covers a varied and broad range of industries including pharmaceuticals, telecommunications, commodities and securities.

Miller Law LLC's fees are contingent on our success in achieving a favorable result for our clients and are reviewed and awarded by the court. Because we advance the costs of the litigation and our fees are earned on a predominately contingent basis, we continuously monitor and carefully evaluate each case throughout the litigation and understand the need to be efficient. This gives us the confidence and flexibility to employ creative thought in the decision-making process at every stage of the litigation. The skill and experience of the Miller Law attorneys has been recognized repeatedly by their peers, at whose request we have served as co-lead counsel and *liaison*, and by courts, which have appointed our attorneys to leadership positions in complex multi-district or consolidated litigation in securities, commodities, consumer and antitrust class actions where we have been responsible for many outstanding recoveries and precedent-making decisions.

## Representative Pending Matters:

### Antitrust:

*Bayside Rubber & Products, Inv. v. Bridgestone Industrial Products America, Inc., et al.*, 07-21784 (S.D. Fla.). This class action alleges that defendant-manufacturers of flexible rubber hose used to transport oil between ships, terminals, buoys and tanks, among other things, conspired to fix the prices of the marine hoses.

*Caldwell v. Matsushita Electrical Industrial Co., Ltd., et. al.*, 07-6303 (N.D. CA.). Miller Law LLC, along with co-counsel represents a plaintiff who seeks damages and injunctive relief for alleged antitrust violations relating to flat screens.

*Cocoe Voci, Inc. v. YKK Corporation, et al.*, 07-9929 (S.D.NY.). Plaintiff alleges that the defendants rigged the prices of fasteners and zippers that are primarily used in the garment, apparel and footwear industries in violation of the federal antitrust laws.

*Cook v. Fidelity National Title Insurance Co.*, 08-731 (E.D.NY.) The complaint contains allegations of an illegal price-fixing agreement among title insurance companies in New York.

*Gasoline and Automotive Service Dealers v. Champion*, (D. Ct.) Plaintiffs seek injunctive relief and costs of suit under the antitrust laws of the United States for allegations that the Defendants engaged in price-fixing of aftermarket filters.

***Gillespie v. Agrium Inc., et. al.,*** 08-cv-5253 (N.D.Il.).  This case is brought on behalf of a class of plaintiffs who indirectly purchased potash products in the United States from one or more named Defendants between July 1, 2003 and the present.  Plaintiff alleges, that in order to maintain price stability and increase profitability, Defendants conspired and combined to fix, raise, maintain, and stabilize the prices for potash that was sold in the United States and that the Defendants exchanged sensitive, non-public information about prices, capacity, sales volumes, and demand; allocated market shares, customers and volumes to be sold; and coordinated on output, including the limitation of production, to further and enact the price fixing conspiracy. Mr. Miller was appointed by the Court and serves as Interim Lead Counsel.

***In re Air Cargo Shipping Services Antitrust Litigation***, 06-MD-1775 (E.D. NY.). Miller Law LLC represents plaintiffs who seek recovery from air cargo shipping provider-defendants that it is alleged participated in a global conspiracy to fix prices charged for these shipping services at *supra-competitive* levels, in violation of the federal antitrust laws.

***In re Oxycontin Antitrust Litigation***, 04-MD-1603 (S.D.NY.). The firm represents plaintiffs (consumers and third party payors) in these multidistrict class actions on behalf of purchasers of controlled-release oxycodone hydrochloride prescription tablets marketed under the brand name OxyContin®.

***Nizhnekamskneftekhim USA, Inc. v. CSX Transportation, Inc.,*** 07-2809 (E.D.PA.).  Miller Law LLC, along with co-counsel, filed a complaint on behalf of those who purchased directly from the Railroad Defendants "unregulated" rail freight transportation services on which rail fuel surcharges were assessed.

***Painters District Council No. 30 Health and Welfare Fund v. Evanston Northwestern Healthcare,*** 08-2541 (N.D. Ill.) Defendant Evanston Northwestern Healthcare is being sued for inflated prices for healthcare services in violation of antitrust laws.

***Painters District Council No. 30 Health and Welfare Fund v. Biovail, Corp.***, 08-2688 (E.D. Pa.)  Plaintiff alleges that Defendants engaged in sham litigation and petitioning and anticompetitive agreements to maintain their monopoly profits in the bupropion HCI extended release market.

***Pete Sahagian d/b/a Sahagian Auto Body II, etc., et al., v.  Genera Corporation***, *et al.*, 08 cv 7613 (CACD).  This case involves a conspiracy among distributors and manufacturers of aftermarket automotive lighting products to fix, raise, maintain or stabilize prices of and allocate the market for autolights in the United States in violation of Section 1 of the Sherman Act and other state laws.

***Reed v. Advocate Health Care, et al.,*** 06-3337 (N.D. Ill.).  This class action involves the alleged conspiracy among five Chicago area hospitals to suppress and price-fix the salaries and benefits for Registered Nurses' salaries.  Mr. Miller has been appointed by the court to serve as Plaintiffs' *liaison* counsel.

***Supreme Auto Transport LLC v. Arcelor Mittal, et al.***, 08 C 5468 (N.D. Ill.) This case was commenced an indirect purchaser class action against ArcelorMittal USA and others for their conspiracy to illegally price fixing of steel products sold to consumers and to artificially restrict the supply of steel products in the United States. Mr. Miller was appointed Interim Lead Counsel.

***YolyIndustrial Supply v. Horizon Lines, Inc. et.al.*** 03:08-CV-434-J-32HTS (M.D. FL.), Complaint alleges antitrust violations by ocean shippers to raise, fix, peg, maintain or stabilize prices for Ocean Cabotage in the Puerto Rico trade.

***In re: Text Messaging Antitrust Litigation***, 08 C 7082 (N.D. Ill) The Complaint in this Multidistrict Litigation seeks relief against the major cellular service providers because of alleged price fixing of text messaging charges. Mr. Miller has been appointed to the Plaintiffs' Steering Committee.

### Commodities:

***Dennison v. BP Corporation***, No. 06-3334 (N.D. Ill.). This class action was commenced to recover damages as a result of defendant's alleged improper conduct in manipulating the price of propane. Mr. Miller serves as Co-Lead Counsel in this consolidated Plaintiffs' class action.

***Kohen, et al. v. Pacific Investment Management Company, et al.***, No. 05-4681 (N.D. Ill.). This class action seeks recovery for the alleged violation of the Commodity Exchange Act when the Defendants improperly manipulated the Ten-Year Treasury bonds. Mr. Miller, at the request of Lead Counsel, serves as *liaison* counsel for the Plaintiffs.

### Consumer Protection:

### Predatory Lending

***In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation***, MDL 1715, (N.D. Ill.). This large multidistrict national class action against this "subprime" lender, challenges Ameriquest's alleged predatory lending practices, "bait and switch", faulty appraisals, improper late fees and hidden costs, among other practices, and seeks damages and remedial relief on behalf of borrowers. At Plaintiffs' Co-lead counsel's request, Mr. Miller serves as *liaison* counsel.

In the following series of cases, Miller Law attorneys have been instrumental in putting together a nationwide coalition of counsel and have commenced and are participating in national class actions on behalf of plaintiffs who are seeking remedies for allegations of discriminatory effects of home financing policies and practices. Those actions are against the leading mortgage lenders and include:

***J.P. Morgan Chase & Co. and Chase Bank U.S.A. N.A.***
***Chevy Chase Bank F.S.B.***
***Citifinancial Services, Inc. and Citigroup, Inc.***
***Countrywide Bank, Countrywide HomeLoans, Inc.***
***Decision One Mortgage Company, LLC, HSBC Finance Corp.***

3

*First Franklin Financial Corp.*
*Flagstar Bank, FSB*
*Fremont Investment and Loan and Fremont General Corporation*
*GE Money Bank*
*Greenpoint Mortgage Funding, Inc.*
*H & R Block, Inc., Option One Mortgage Corp. and Option One Mortgage Services*
*Indymac Bank, F.S.B.*
*Lehman Brothers Bank and BNC Mortgage Inc.*
*Long Beach Mortgage Co.*
*Washington Mutual Bank, F.A.*
*Wells Fargo Bank, N.A.*
*WMC Mortgage Corp. and WMC Mortgage, LLC*
*World Savings Bank*

### Consumer Fraud

*In re Epogen and Aranesp Off-Label Marketing and Sales Practices Litigation*, **MDL 1934** *Painters District Local Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, 07-6228 (N.D. Ill.) alleges unlawful off-label and otherwise deceptive marketing of recombinant protein biological drug products used to stimulate red blood cell growth and activation brought on behalf of a union "employee welfare benefit plan".  Plaintiff seeks to represent a nationwide class of third-party payors.

*In re Ford Motor Company E-350 Van Products Liability*, 03-4558 (D.N.J.).  Nationwide or multi-state class action alleges that the Ford E-350 "15-passenger vans" contain one or more defects which can cause rollover.  Plaintiff claims, among other allegations, that Ford breached express and implied warranties.

*In re Mercedes Benz Tele-Aid Contract Litigation*, **MDL 1914**, *Sen et. al. v. Mercedes-Benz USA, LLC,* 07-06519 (N.D. Ill.) and *Hankins v. Mercedes-Benz USA, LLC,* 07-07543 (C.D.CA).  Plaintiffs in both class actions seek compensatory and other damages for allegations relating to Mercedes Benz' failure to inform Mercedes vehicle purchasers of Model Years 2002 through 2006 that their analog-only Tele Aid systems would become obsolete and would stop functioning after December 31, 2007.

### Employment:

*Howard v. Securitas Security Services*, 08-2746 (N.D. Ill.).  Miller Law LLC, along with co-counsel, seek to recover overtime wages for employees.

**Securities:**

***Gosselin v. First Trust Advisors L.P.***, 08 C 5213 (N/D.Il.) Plaintiffs allege violations of the federal securities laws in connection with certain mutual funds offered by First Trust Portfolios L.P., including shares of the First Trust Strategic High Income Fund, First Trust Strategic High Income Fund II and First Trust Strategic High Income Fund III .

***E.B. Gorham v. General Growth Properties, Inc.,*** 08 C 6258 (N.D.Il.) This class action seeks recovery from General Growth Properties, Inc. and its officers for violations of the anti-fraud provisions of the federal securities laws and is brought on behalf of all purchasers of the company's common stock between April 30,2008 and October 26, 2008, inclusive.   During the Class Period, defendants made false and misleading statements about General Growth's access to financing and represented that General Growth had the ability to refinance billions of dollars in debt that was coming due in the fall of 2008 and spring of 2009 on acceptable terms. Plaintiffs allege that General Growth did not have access to such financing and that defendants failed to disclose that the Company's President/Chief Operating Officer and its Chief Financial Officer had received loans from the Chief Executive Officer's family trust in violation of the Company's own Code of Business Conduct and Ethics.

***Lawrence E. Jaffe Pension Plan v. Household International,*** 02-5893 (N.D.Ill.). The firm serves as *liaison* counsel in this securities fraud litigation alleging that Household engaged in a variety of illegal sales practices and improper lending techniques to manipulate publicly reported financial statistics.

***Makor Issues & Rights & Ltd. v. Tellabs, et.al.,*** 02-4356 (N.D. Ill.). This securities fraud action alleges that Tellabs, a global supplier of optical networking, broadband access and voice-quality enhancement solutions to telecommunications carriers and internet service providers engaged in wrongdoing concerning certain of its core products. Mr. Miller serves as Liaison Counsel. The case was argued before the United States Supreme Court and created precedent for the pleading standard in securities cases.  *Tellabs v. Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499 (2007).

***Mirsky v. Ulta Salon, Cosmetics and Fragrance Inc. et. al.,*** 07-7083 (N.D. Ill.). As alleged in the complaint, defendants issued materially false and misleading statements in connection with the IPO concerning ULTA's financial condition and the levels of its selling, general and administrative expenses inventories.

***Plumbers and Steamfitters Local No. 7 Pension Fund v. Walgreen Co., et.al.,*** 08-2162 (N.D. Ill.) This is a securities class action on behalf of purchasers of Walgreen common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

### Shareholder and Derivative actions:

***Murphy v. CDW Corp. et. al.,*** 07-3033 (N.D. Ill.). The firm represents a class of the public shareholders of CDW Corporation who sued the company and its directors for breach of fiduciary

duties in connection their acceptance of the $7.3 billion buyout. The complaint alleges, among other matters, that the price does not reflect the true value of the company to its shareholders. The firm has been appointed *liaison* counsel for the class. The Court entered an order approving the settlement on May 7, 2008.

## *Some of the additional significant cases in which Miller Law attorneys have been prominently involved include:*

### **Antitrust:**

***Ryan-House v. GlaxoSmithKline PLC***, No. 02-442 (E.D. Va.). Plaintiffs allege that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes. The case was resolved and the court approved a $29 million settlement for the benefit of consumers and third-party payors. *Ryan-House, et al v. GlaxoSmithKline, PLC, et al.*, No. 02-442, (January 10, 2005, E.D. Va.)

***In re Relafen Antitrust Litig.***, 01-12239 (D. Mass.). The United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen.

***In re Warfarin Sodium Antitrust Litig.***, MDL 98-1232 (D. Del.). A multi-district class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium. The case settled for $44.5 million which was affirmed on appeal. See *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002).

***In re Cardizem CD Antitrust Litig.***, MDL No. 1278 (E.D. Mich.). Multi-district class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc. (now merged into Aventis Pharmaceuticals, Inc.) Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic competition. The $80 million settlement for the benefit of third-party payors and consumers was granted final approval. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *appeal dismissed*, 391 F.3d 812 (6th Cir. 2004).

***In re Synthroid Marketing Litig.***, MDL No. 1182 (N.D. Ill.). This multi-district action arises out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. Final approval of a settlement in the amount of $87.4 million plus interest. *See* 188 F.R.D. 295 (N.D. Ill. 1999) was upheld on appeal. *See* 264 F.3d 712 (7th Cir. 2001).

***In re Lorazepam & Clorazepate Antitrust Litig.***, MDL 1290 (D.D.C.). This multi-district class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets. After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering

6

amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs.  On February 1, 2002, Judge Thomas F. Hogan approved a class action settlement on behalf of consumers, state attorneys general and third party payors in the aggregate amount of $135 million.  *See* 205 F.R.D. 369 (D.D.C. 2002).

***In re Lithotripsy Antitrust Litig.,*** No. 98 C 8394 (N.D. Ill.).  Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area.

***Brand-Name Prescription Drug Indirect Purchaser Actions***.  Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia.  The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies.  In 1998, the parties agreed to a multi-state settlement in the amount of $64.3 million, which was allocated among the actions.

***In Re Cellular Phone Cases***, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.).  Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market.  The $35 million in-kind benefits to the Class was granted final approval.

***Garabedian v. LASMSA Limited Partnership***, No. 721144 (Superior Court, Orange County, Cal.).  Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market.  The court granted final approval to two settlements that provided $165 million of in-kind benefits.

***Lobatz v. AirTouch Cellular***, 94-1311 BTM (AJB) (S.D. Cal.).  Class action alleging price-fixing of cellular telephone service in San Diego County, California.  The court approved settlements of $8 million in cash and other benefits.

***In re Airline Ticket Commission Antitrust Litig.***, MDL No. 1058 (D. Minn.).  Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

<u>**Commodities:**</u>

***Smith v. Groover***, 77-2297 (N.D.Ill.).  A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market through bucketing.  The case established that, in the Northern District of Illinois, a plaintiff has an implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members.  Mr. Miller was one of Plaintiff's counsel in this precedent making decision.

***In re Soybean Futures Litig.***, No. 89-7009 (N.D. Ill.).  A commodities manipulation class action against Ferruzzi Finanziaria, S.p.A. and related companies for unlawfully manipulating the soybean futures market in 1989.  In December, 1996, the court approved a settlement in the amount of

$21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995). Mr. Miller served as Co-Lead Counsel for Plaintiffs.

*In re Sumitomo Copper Litig.*, 96- 4584(MP) (S.D.N.Y.). Class action arising out of manipulation of the world copper market. On October 7, 1999, the court approved settlements aggregating $134,600,000. *See* 189 F.R.D. 274 (S.D.N.Y. 1999). In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999). Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998). Mr. Miller was appointed by Judge Pollack as Plaintiffs' Co-Lead Counsel.

*In re International Trading Group, Ltd. Customer Account Litig.*, No. 89-5545 RSWL (GHKx) (C.D. Cal.). Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The case settled with individual defendants and proceeded to a judgment against the corporate entity. In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class.

*In re First Commodity Corporation of Boston Customer Account Litig.*, MDL-713 (D. Mass). Class actions alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The action settled for $5.3 million. *See* 119 F.R.D. 301 (D. Mass. 1987).

### Securities:

*In re Sears, Roebuck and Co. Securities Litigation,* No. 02-07527 (N.D.Ill.). Sears settled a class action lawsuit for $215 million in a case brought by shareholders. The case alleged breach of fiduciary duty for failing to prevent improper bankruptcy collection practices under the company's debt reaffirmation agreements. Mr. Miller served as plaintiff's *liaison* counsel in this nationwide securities case.

*Abrams v. van Kampen Funds*, Case No. 01-7538 (N.D. Ill.), involving a mutual fund that was charged with improperly valuing its net asset value. After extensive discovery, the case settled for in excess of $31 million and was granted final approval.

*In re Baldwin-United Corporation Sec. Litig.*, MDL-581, (S.D.N.Y.). In this early multi-district securities class action, Plaintiffs' counsel advanced the novel issue of whether Single Premium Deferred Annuities sold by the stock brokerage industry were securities and the sale of approximately $4.2 billion of were in violation of the federal and state securities laws. A $180 million settlement was obtained was the largest securities class action settlements at the time and remains one of the larger securities class action settlements on record. In awarding interim counsel fees, Judge Charles Brieant commented "...that plaintiffs' attorneys [including Marvin A. Miller as co-lead counsel] had rendered extremely valuable services with diligence, energy and imagination, and are entitled to just compensation."

*In re Prudential Securities Incorporated Limited Partnerships Litig.*, MDL 1005 (S.D.N.Y.). A nationwide multi-district class action arising out of Prudential Securities Incorporated's marketing

and sale of speculative limited partnership interests.  The final settlements produced an aggregate of more than $132 million for injured investors.

*In re Bank One Shareholders Class Actions*, No. 00-880 (N.D. Ill.).  In this securities fraud class action against Bank One and certain officers,  Judge Milton I. Shadur appointed Mr. Miller to draft the Consolidated Class Action Complaint.  At the request of court-appointed lead counsel, Mr. Miller served as Plaintiffs' *liaison* counsel.  Judge Shadur subsequently approved a $45 million settlement.

*Central Laborers' Pension Fund v. Sirva, Inc., et al.*, 04-7644 (N.D. Ill.).  A $53 million settlement was approved in this national securities class action which sought recovery from the defendant for violations of the securities laws because of the alleged failure to disclose to the investing public the true financial condition of the company.  Mr. Miller served as Plaintiff's *liaison* counsel at the request of Lead counsel.

 *Danis v. USN Communications, Inc.,* No. 98-7482 (N.D. Ill.).  Securities fraud class action arising out of the collapse and subsequent bankruptcy of USN Communications, Inc.  The court approved a $44.7 million settlement with certain control persons and underwriters.  Reported decisions:  73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000).  At the request of Co-Lead Counsel, Mr. Miller served as *liaison* counsel for Plaintiffs.

*In re Caremark International Inc. Sec. Litig.*, No. 94-4751 (N.D. Ill.).  This action arose out of Caremark's allegedly improper financial arrangements with physicians. A $25 million settlement concluded the litigation.

*In re Nuveen Fund Litig.*, No. 94-360 (N.D. Ill.).  Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds.

*In re Archer-Daniels-Midland, Inc. Sec. Litig.*, No. 95-2287 (C.D. Ill.).  A class action arising out of the Archer-Daniels-Midland price-fixing scandal.  Plaintiffs brought claims for securities law violations which settled for   $30 million.

*In re VMS Sec. Litig.*, 89-9448 (N.D. Ill.).  A securities fraud class action and derivative suit relating to publicly traded real estate investments.  The court certified a plaintiff class and subclasses of approximately 100,000 members, 136 F.R.D. 466 (N.D. Ill. 1991) and approved a class and derivative settlement worth $98 million.

*In re Salton/Maxim Sec. Litig.*, No. 91-7693 (N.D. Ill.).  Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock.  On September 23, 1994, Judge James S. Holderman (now Chief Judge of the United States District Court for the Northern District of Illinois) approved a multi-million dollar settlement achieved for the class, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

*In re Telesphere Sec. Litig.*, 89-1875 (N.D. Ill.).   In his opinion approving a class action settlement, Judge Milton I. Shadur referred to Marvin A. Miller as "...an experienced securities law class action litigator and who also has 20 years [now 38 years] practice under his belt.  This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate."  753 F.Supp. 716, 719 (N.D. Ill. 1990).

*Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, No. 91-276-CIV-5-D (E.D.N.C.).  A multi-million dollar settlement was approved in this securities fraud class action arising out of a broker's marketing of a speculative Australian security.  The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement."  855 F. Supp. 825, 831 (E.D.N.C. 1994).

*Hoxworth v. Blinder Robinson & Co.*, 88-0285 (E.D. Pa.).  A securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks."  Judgment in excess of $70 million was entered and that judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992).  *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

### Intellectual Property:

*Baxter International, et al., v. McGaw, Inc.*, (N.D. Ill.).  Mr. Miller, together with co-counsel, successfully represented the Defendant in this patent infringement case and served as a member of the trial team which won a jury verdict of non-infringement of three needleless injection sites and also obtained a finding that the Plaintiff had engaged in inequitable conduct on two of the patents. The Court also found that the Plaintiff engaged in inequitable conduct. The decision was affirmed by the Court of Appeals Federal Circuit.  (96-1329,-1342, 97-1331,-1350 decided June 30, 1998).

*Acco Brands USA v. PC Guardian Anti-Theft Products, Inc., et al.*, No. 06-7102 (N.D. Ill.).  The firm represented one of the named defendants in this alleged patent infringement case.

### Other Representative Cases:

*In re Sears, Roebuck and Co., ERISA Litigation,* 02-8324 (N.D. Ill.**).**  Mr. Miller served as plaintiff's liaison counsel in this nationwide action.  Sears settled this ERISA action for $14.5 million in cash. The case alleged breaches of fiduciary duties in contravention of the Employee Retirement Income Security Act of 1974. The plan participants will directly benefit from the resulting settlement.

*PrimeCo Personal Communications, L.P. v. Illinois Commerce Commission*, No. 98 CH 5500 (Circuit Court of Cook County, Ill.).  This class action sought recovery of an unconstitutional infra-structure maintenance fee imposed by municipalities on wireless telephone and pager customers in the State of Illinois.  The court granted final approval to a settlement of more than $31 million paid by the City of Chicago.  Subsequently, the court certified a settlement class of all wireless users in the State of Illinois and a Defendant Class of municipalities throughout the state which collected Infrastructure Maintenance Fees from wireless users and approved a settlement for the Class of in

excess of $11 million.  Mr. Miller served as a Co-lead counsel for Plaintiffs in this novel class action.

**Defendant Representations:**

In addition to our representation of plaintiffs, Miller Law attorneys have also represented defendants in complex class actions and derivative suits, including *In re Del-Val Financial Corp. Sec. Litig.*, MDL-872 (S.D.N.Y.); *In re Kenbee Limited Partnership Litig.*, No. 91-2174 (D.N.J.); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91-2780 (N.D. Ill.); *Levy v. Stern*, No. 11955 (New Castle County, Delaware).  The court's decision in *In re Del-Val Financial Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) resulted in a significant extension of the law concerning partial settlements of securities fraud class actions.

## Individual Biographies

*MARVIN A. MILLER*, has more than 37 years of commercial and class action litigation experience. Mr. Miller has been lead or co-lead counsel across the full spectrum of industries (airline, cell and telephone, financial services, Internet and technology, manufacturing, pharmaceuticals, retailing, stock broker and exchange, and utilities) and practices (antitrust, consumer and investor fraud and protection, employment and employee benefits, insurance, shareholder derivative actions) that encompasses Miller Law LLC's practice. Mr. Miller holds an AV® (highest) rating from Martindale-Hubbell®. In January 2007 and 2008, Law & Politics and the publishers of Chicago Magazine named Mr. Miller an Illinois Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Illinois, as chosen by their peers and through the independent research of Law & Politics.

Prior to founding Miller Law LLC,  Mr. Miller was a co-founder of another national class action law firm.  Throughout his career in class action jurisprudence, Mr. Miller has represented shareholders and investors in high profile and precedent-setting class action litigation involving such companies as Continental Illinois National Bank and Trust and Baldwin United Corporation. He was lead attorney in *Smith v. Groover*, in which he represented clients against the Chicago Board of Trade and several of its traders; the decision in the case, later affirmed, *sub. nom.*, in *Curran v. Merrill Lynch Pierce Fenner & Smith*, by the U.S. Supreme Court, established the precedent that an individual has an implied private right of action to sue an Exchange for negligence in failing to supervise its members.

Mr. Miller is a 1970 graduate of Illinois Institute of Technology-Chicago-Kent College of Law, where he was a member of the Editorial Board of the *Chicago-Kent Law Review*.  He received his undergraduate degree from Hofstra University in Hempstead, New York in 1967.  He is admitted to the state bars of Illinois and New York, the United States Court of Appeals for the Third, Fourth, Seventh, Eleventh Circuit, and Federal Circuit, the United States District Courts for the Northern District of Illinois (including the Trial Bar), Southern District of New York, Eastern District of Michigan and Northern District of California. Mr. Miller is a member of the Chicago Bar Association and the Illinois State Bar Association and serves on the *Cy Pres* Committee of the Illinois Bar Foundation.

**LORI A. FANNING** concentrates her practice on complex class litigation in a wide range of matters before state and federal courts, primarily in the areas of consumer protection, antitrust and securities. She has prosecuted a variety of lawsuits involving the airline, banking, credit card, internet, pharmaceutical, and insurance industries. Ms. Fanning currently litigates securities fraud claims against such companies as Household International and Tellabs; antitrust claims against companies such as Unocal and Amgen; and has defended patent litigation on behalf of Datamation Systems, Inc. Ms. Fanning actively participated in the trial preparations for *In re Visa Check/MasterMoney Antitrust Litigation,* a civil antitrust case that settled for in excess of $3 billion on the eve of trial. Prior to attending law school, she enjoyed a successful career as a logistician with the United States government at the Naval Sea Systems Command in the Washington, D.C. area in support of Foreign Military Sales, new ship construction, and naval equipment. For her dedication, the Department of the Navy honored her with the Meritorious Civilian Service medal.

Ms. Fanning received her law degree, with honors and a Certificate in Litigation and Alternative Dispute Resolution, from the Illinois Institute of Technology/Chicago-Kent College of Law in 2000. She also holds a Master's degree in Science Administration from Central Michigan University (1993), and a Bachelor's degree from the University of Nebraska at Omaha (1986). She is admitted to practice in the state of Illinois and the federal district courts for the Northern District of Illinois, the Eastern District of Wisconsin, and the United States Court of Appeals for the Seventh Circuit. Ms. Fanning is a member of the American, Illinois State and Chicago Bar Associations and she volunteers for the CBA's Judicial Evaluation Committee.

### *OF COUNSEL*

**MATTHEW E. VAN TINE** focuses his practice on antitrust, securities fraud, and consumer protection matters. He has participated in the prosecution and defense of many securities, antitrust, and consumer class actions over the past two decades including securities litigation against Van Kampen Funds and Baxter International; antitrust class actions involving nurses' wages, the drug warfarin sodium (Coumadin), and an industry-wide effort to raise drug prices paid by retail drug stores (the Brand Name Prescription Drug Antitrust Litigation); and litigation on behalf of consumers challenging an unconstitutional fee imposed on wireless and landline phone customers. Before associating with Miller Law LLC, Mr. Van Tine was affiliated with two other class action boutique law firms for fourteen years. Mr. Van Tine has also practiced with large law firms in Chicago and Boston, and served as an Assistant Corporation Counsel for the City of Chicago Law Department.

Mr. Van Tine received his A.B. degree *cum laude* from Harvard College in 1980, and his J.D. degree *magna cum laude* from Boston University School of Law in 1983, where he served as an Executive Editor of the Law Review and was the author of Note, *Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation*, 62 B.U.L. Rev. 515 (1982). Following law school, Mr. Van Tine served as a law clerk to the Honorable Raymond J. Pettine of the United States District Court for the District of Rhode Island. Mr. Van Tine's practice admissions include the state bars of Illinois and Massachusetts, the Supreme Court of the United States, the United States Court of Appeals for the Seventh Circuit and the United States District Courts for the Northern District of Illinois and the District of Massachusetts. He is a member of the Chicago and American Bar

Associations, and served as the immediate past President of the Abraham Lincoln Marovitz American Inn of Court.

**ASHER RUBIN** received his B.A. degree from Columbia University in 1958 and his J.D. degree from Harvard Law School in 1961.  After completing law school, Mr. Rubin clerked at the California Supreme Court. Mr. Rubin served as Deputy Attorney General for the State of California from 1963-1966.  He was a San Francisco Chronicle Foreign Correspondent and on the staff of the Weizmann Institute after which he served as an attorney and advisor to the Peace Corps until 1968. In 1969, Mr. Rubin returned to serve as Deputy Attorney General for the State of California until 2001 when he established his own law firm.  Mr. Rubin has argued before the United States Supreme Court and the California Supreme Court as well as the appellate and trial levels of state and federal courts.  He has taught Administrative Law for the California Attorney General, taught evidence, and lectured at Hastings Law School.  He has also been published in The San Francisco Chronicle, Newsweek and the Harvard Law Bulletin.

**MARGARET M. WEEMS** received her B.A. *cum laude* from Wellesley College in 1987, and her J.D. degree from Boston University School of Law in 1992, where she served as an Editor of the Legislative Services Project and was the author of the Motor Voter Registration Act provided to MASS PIRG for their lobbying efforts before the Massachusetts' state legislature (1991). Following law school, Ms. Weems joined the antitrust trial firm Alioto & Alioto in San Francisco, California. She was named a member of that firm in 1997.  In 2008, Ms. Weems joined Miller Law as Of Counsel. Ms. Weems' practice admissions include the state bar of California, the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern and Eastern Districts of California. She is a past Governor for Queen Margaret's School in British Columbia, Canada, and is presently a director for the Nevada Horse Park, Minden, Nevada.