UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: EVANSTON NORTHWESTERN | ) | No. 07-cv-04446 |
| CORPORATION ANTITRUST | ) |  |
| LITIGATION | ) | Judge Edmond E. Chang |
|  | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Amit Berkowitz, Steven J. Messner, Henry W. Lahmeyer, and Painters District Council No. 30 Health & Welfare Fund brought this proposed class-action suit against Defendant NorthShore University HealthSystem (which used to be known as Evanston Northwestern Healthcare), alleging violations of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.[1] R. 224, Am. Consolidated Class Action Compl. After an interlocutory appeal, Plaintiffs have renewed their motion for class certification. R. 478. For the reasons that follow, the motion is granted.

## I. Background

The Court assumes familiarity with the facts of this litigation, which are set out in greater detail in *Messner v. Northshore University HealthSystem*, 669 F.3d 802 (7th Cir. 2012), and in *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*, 268 F.R.D. 56 (N.D. Ill. 2010). Suffice it to say that Plaintiffs brought this class action on behalf of all end-payors who purchased inpatient and outpatient healthcare services directly from NorthShore, alleging that NorthShore illegally monopolized the market

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

and caused Plaintiffs and the putative class to pay artificially inflated prices for healthcare services. Am. Consolidated Class Action Compl. ¶¶ 1-3. Plaintiffs sought to certify the following class under Rule 23(b)(3):

> All persons or entities in the United States of America and Puerto Rico, except those who solely paid fixed amount co-pays, uninsureds who did not pay their bill, Medicaid and Traditional Medicare patients, governmental entities, defendant, other providers of healthcare services, and the present and former parents, predecessors, subsidiaries and affiliates of defendant and other providers of healthcare services who purchased or paid for inpatient hospital services or hospital-based outpatient services directly from NorthShore University Health[System] (formerly known as Evanston Northwestern Healthcare), its wholly-owned hospitals, predecessors, subsidiaries, or affiliates other than those acquired as a result of the merger with Rush North Shore Medical Center . . . from at least as early as January 1, 2000 to the present . . . .

R. 240 at 1. After Plaintiffs moved for class certification, the previously assigned judge denied their motion, holding that they had not satisfied Rule 23(b)(3)'s predominance prerequisite. *In re Evanston Northwestern Healthcare Corp.*, 268 F.R.D. at 87. Plaintiffs took an interlocutory appeal to the Seventh Circuit, which held that Plaintiffs did satisfy the predominance requirement. *Messner*, 669 F.3d at 826. The Seventh Circuit then vacated the district court's order and remanded for further proceedings consistent with its opinion. *Id.* Following that remand, Plaintiffs now renew their motion for class certification, R. 478, and after unsuccessful settlement negotiations, the motion is ready for decision.

## II. Standard of Review

Courts usually should decide the question of class certification before turning to the merits of a given action. *See Weismueller v. Kosobucki*, 513 F.3d 784, 786-87 (7th Cir. 2008). To be entitled to class certification, a plaintiff must satisfy each

requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one subsection of Rule 23(b). *See Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). "Failure to meet any of the Rule's requirements precludes class certification." *Harper*, 581 F.3d at 513 (internal quotation marks omitted).

"A class may be certified only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.*"Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011) (emphasis omitted) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). The named plaintiff bears the burden of showing that each requirement is satisfied. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The Court "must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Dukes*, 131 S. Ct. at 2551 (explaining that class certification analysis "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim"). The Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001).

### III. Analysis

### A. Rule 23(a) Prerequisites

At the outset, the parties quarrel over which of Rule 23's class-certification prerequisites are still in play. In her opinion, Judge Lefkow analyzed the Rule 23(a) prerequisites of typicality and adequacy and held that they were satisfied.[2] *See In re Evanston Northwestern Healthcare Corp. Antitrust Litig.*, 268 F.R.D. at 61-65. In Plaintiffs' view, this means that only Rule 23(b)(3) superiority is left after the appellate opinion in *Messner*. *See* R. 479, Pls.' Br. at 4-5. NorthShore responds that this Court must revisit all of Rule 23(a)'s certification prerequisites, including typicality and adequacy. R. 491, Def.'s Resp. Br. at 27-28. Specifically, NorthShore argues that Judge Lefkow's discussion of typicality and adequacy was dicta and not binding as law of the case. *Id.* at 28. But dicta "are the parts of an opinion that are not binding on a subsequent court" because they are not "integral elements of the analysis underlying the decision." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). And here, Judge Lefkow's discussion of the Rule 23(a) typicality and adequacy prerequisites was an integral element of the overall decision to certify the class at all, even if she ultimately decided not to certify. In other words, she fully considered and analyzed typicality and adequacy because, under Rule 23, the outcome of Plaintiffs' motion depended on whether *each and every single* class-certification prerequisite was satisfied. *Cf. United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (explaining that future courts may

---

[2]The parties previously agreed that Plaintiffs satisfied numerosity and commonality. *In re Evanston Northwestern Healthcare Corp. Antitrust Litig.*, 268 F.R.D. at 60.

disregard dicta because it is "unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome"). The prior order's analysis of typicality and adequacy was fully reasoned and necessary to the outcome of the case, so it was not dicta that should be so lightly disregarded.

NorthShore also argues that Judge Lefkow's entire order was vacated and is no longer binding on this Court. Def.'s Resp. Br. at 28. Although the Seventh Circuit vacated the previous order and remanded for further proceedings, it vacated the order after holding only that Plaintiffs had satisfied predominance. *See Messner*, 669 F.3d at 814-26. Because the Seventh Circuit did not address any of the other Rule 23 prerequisites, its vacatur had nothing to do with the merits of the prior order's analysis of typicality and adequacy. So even though the prior order was technically vacated, and thus cannot be the law of the case, the Seventh Circuit did not disturb the previous findings of typicality and adequacy. Indeed, the Seventh Circuit implicitly recognized that superiority was the only class-certification prerequisite remaining when it noted, without mentioning the need to rehash typicality and adequacy, that "[t]here are so many common issues of law and fact relating to the issue of Northshore's liability, however, that the superiority requirement *likely poses no serious obstacle to class certification here.*" *Id.* at 814 n.5 (emphasis added). And NorthShore has not offered any new evidence or arguments that Judge Lefkow did not consider.[3] Accordingly, this

---

[3]For example, Judge Lefkow already rejected NorthShore's renewed argument that Plaintiffs do not adequately represent the managed care organizations (MCOs), *see* Def.'s Resp.

Court adopts the reasoning and findings in Judge Lefkow's prior opinion. For the reasons discussed there, *see In re Evanston Northwestern Healthcare Corp. Antitrust Litig.*, 268 F.R.D. at 61-65, Plaintiffs have satisfied the Rule 23(a) prerequisites of typicality and adequacy of representation.[4] After *Messner*, which again held that Plaintiffs had satisfied Rule 23(b)(3)'s predominance prerequisite, superiority is the only class-certification requirement remaining.

## B. Rule 23(b)(3) Superiority

Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule provides a nonexhaustive list of factors relevant to the superiority (and predominance) analysis, including:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

---

Br. at 28-30, when she concluded, during her discussion of typicality and adequacy, that there were no conflicts of interest between the named plaintiffs and the MCOs, *see In re Evanston Northwestern Healthcare Corp. Antitrust Litig.*, 268 F.R.D. at 61-65. Indeed, NorthShore only asserts that the "class should not be certified for additional reasons stated in our first opposition and incorrectly rejected by Judge Lefkow," without offering much of an explanation for how she erred. *See* Def.'s Resp. Br. at 29-30.

[4]On the adequacy of class counsel, this Court has previously clarified who they are and has found that they are adequate. *See* R. 581, 9/19/13 Tr. at 8-9.

*Id.* As this list implies, the predominance and superiority inquiry are intertwined: generally, the more that common issues predominate, the more likely that a class action is the superior vehicle for deciding the controversy. *See, e.g.*, *Messner*, 669 F.3d at 814 n.5 ("There are so many common issues of law and fact relating to the issue of Northshore's liability, however, that the superiority requirement likely poses no serious obstacle to class certification here." (citing Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir. 2004)); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 n.12 (11th Cir. 1997) ("When there are predominant issues of law or fact, resolution of those issues in one proceeding efficiently resolves those issues with regard to all claimants in the class."). Here, Plaintiffs have already satisfied predominance, and the Seventh Circuit has even observed that "this case, at least on its face, implicates none of the specific concerns that we have previously said will prevent a finding of superiority." 669 F.3d at 814 n.5. The more detailed concerns that NorthShore now raises do not prevent that finding either.

## 1. Arbitration

NorthShore's chief argument against the superiority of class actions is the assertion of its right to arbitrate disputes as to both the managed care organizations (MCOs) and the self-insured subscribers, who are allegedly bound by the arbitration provisions contained in the NorthShore-MCO (or, at the time, ENH-MCO) contracts on equitable estoppel and agency grounds. *See* Def.'s Resp. Br. at 10-20. Because of these arbitration provisions, NorthShore argues that class-action litigation is inferior to arbitration. *Id.* at 12. In response, Plaintiffs assert that NorthShore has waived its

7

right to arbitrate by participating in litigation for two years before filing its motion to compel arbitration. Pls.' Br. at 8. Although parties may constructively waive their right to arbitrate by acting inconsistently with that right, *see, e.g.*, *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994-95 (7th Cir. 2011), that waiver principle presupposes that the target of a potential motion to compel arbitration is actually a party to the case. But the primary entities that NorthShore now seeks to arbitrate with—the MCOs—are only *proposed* class members (because none of the named plaintiffs are MCOs), and putative class members are not parties to a lawsuit. *See Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (Scalia, J., dissenting) ("Not even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*."). And as non-parties, they cannot be bound by a judicial order to arbitrate. *See Daniels v. Bursey*, 430 F.3d 424, 428 (7th Cir. 2005) ("Since a class was never certified, appellants were not members of a class, and therefore could not be bound [by a class settlement agreement].")). NorthShore has therefore not waived its right to arbitrate against the non-party MCOs, who could not even be bound by an order to arbitrate even had NorthShore filed a motion to compel arbitration earlier. And indeed, Plaintiffs cite no case holding that defendants can constructively waive their arbitration rights against putative class members before class certification.

Even if the MCOs *were* actually parties to this case, moreover, NorthShore did not waive its right to arbitrate because Plaintiffs did not define the class in such a way that formally included the MCOs until Plaintiffs filed for class certification. Although

8

Plaintiffs insist that they had put NorthShore on notice that they were including the MCOs in the class definition as long ago as December 18, 2007, the transcript of that particular status hearing shows that Plaintiffs' counsel said that the class "includes managed care" only in the middle of describing her understanding of NorthShore's objection to appointing interim class counsel:

> The only objection I think that the defendants have raised is a hypothetical one. They seem—they say there might be a potential conflict between some of the members of the class, because the class consists of direct payers of insurance—I'm sorry—of health services to Evanston Northwestern Healthcare, and that includes managed care as well as individuals who paid a percentage of the cost of the insurance—of the services that was not covered by insurance. So they're all I think on equal footing.

R. 507-1, Pls.' Exh. A, 12/18/07 Tr. 3:23-4:6. It is not clear from this transcript whether Plaintiffs' counsel was actually telling NorthShore that the class included the MCOs or whether she was simply describing NorthShore's entire argument to Judge Lefkow. Either way, though, this throwaway reference to "managed care" falls short of a representation, clearly understood by NorthShore, that the MCOs would be included in the class definition. Indeed, in response to questioning from then-Magistrate Judge Denlow seven months later, Plaintiffs still did not clearly take the position that the MCOs would be included in the class:

> THE COURT: Do you represent—are you an adequate representative for Blue Cross Blue Shield? . . .

> MS. FAIT: Whether we are an adequate representative is something that needs to be dealt with in the briefing of the class certification motions. We don't have to prove right now without any documents that we are an adequate representative of all the members of the class.

> THE COURT: But they need to know whether you purport to represent those people [MCOs] as part of your class.

> MS. FAIT: We will be putting that in our motion for class certification once we get the transactional data. We can't do it in a vacuum.

R. 491-14, Def.'s Exh. 13, 7/23/08 Tr. 37:1-14. It was not until Plaintiffs moved for class certification that Plaintiffs finally included the MCOs in their proposed class definition. As soon as that happened, NorthShore filed its motion to compel arbitration alongside its response brief to Plaintiffs' motion. *See* R. 270 (listing a 6/8/09 filing date for NorthShore's motion to compel arbitration); R. 280 (listing a 6/9/09 filing date for NorthShore's response brief). Thus, it is not the case that NorthShore received fair notice years ago that the MCOs would be included in the putative class and yet sat on its right to arbitrate until late in the case.[5] *Cf. Kawasaki*, 660 F.3d at 994 ("While several factors are considered in the waiver analysis, diligence or the lack thereof should weigh heavily in the decision."). Accordingly, NorthShore has not waived its right to compel arbitration.

But that does not mean that NorthShore may assert its right to arbitrate now and argue that class certification is an inferior means of dispute resolution. Rather, as NorthShore itself recognizes—and as discussed above—putative class members like the

---

[5]Plaintiffs also argue that NorthShore should have moved to compel arbitration against the named plaintiffs earlier, but NorthShore's response brief makes clear that self-insured subscribers (like Painters District Council No. 30 Health & Welfare Fund, a named plaintiff) are bound by the NorthShore-MCO arbitration provisions only to the extent that the MCOs are bound. *See* Def.'s Resp. Br. at 15 (stating that the self-insured subscribers must arbitrate their claims "because those entities are bound by the MCO contracts"). In other words, whether the Fund has to arbitrate depends on whether the MCOs have to arbitrate, and as discussed above, NorthShore did not know that the MCOs were putative class members until Plaintiffs filed their original motion for class certification.

MCOs are not parties, *see* Def.'s Resp. Br. at 13, so they are not bound by any of the Court's orders. Yet NorthShore effectively seeks a binding decision by this Court that the MCOs are required to arbitrate but before they can appear to make an adversarial presentation on their own behalf. That is why Judge Lefkow—acting on a request by the MCOs themselves—decided that the class-certification motion ought to be addressed first before resolving NorthShore's motion to compel arbitration. R. 491-13, Def.'s Exh. 12, 6/11/09 Tr. 13:11-17, 14:15-20. That prior decision still makes sense, even though there is no clear rule that always requires motions to compel arbitration to be decided after motions for class certification. In fact, if it was clear that the MCOs were required to arbitrate, and if it was clear that arbitration would undermine class certification by knocking out a sizable percentage of the putative class, this Court possibly could address the merits of NorthShore's arbitration arguments in deciding that arbitration *was* superior to class-action litigation. *Cf. Messner*, 669 F.3d at 826 ("[A] 2.4 percent decrease in the size of the class is certainly not significant enough to justify denial of certification."). But that is not this case, and a peek at the parties' briefs shows why. First, there is substantial disagreement over whether the scope of the NorthShore-MCO arbitration provisions includes antitrust claims at all. *Compare* R. 507, Pls.' Reply Br. at 22-27, *with* R. 515, Def.'s Sur-reply Br. at 1-3. In fact, Plaintiffs contest whether all of the NorthShore-MCO contracts—all 56 of them—even *have* arbitration provisions. *See* Pls.' Reply Br. at 23-24. And even assuming that the MCOs must arbitrate, there is further disagreement over whether the self-insured subscribers are bound by the NorthShore-MCO arbitration provisions under theories

11

of equitable estoppel and agency. *Compare* Def.'s Resp. Br. at 15-20, *with* Pls.' Reply Br. at 10-20. These are substantial issues involving numerous arbitration provisions—again, for 56 separate contracts—that this Court cannot easily resolve now without giving the MCOs and others a chance to weigh in.

So the sensible course, as the previously assigned judge concluded, is to decide whether to certify the class without considering the possibility of arbitration, bring the MCOs into the case, see what their position is on arbitration, and then decide who must arbitrate. *See, e.g.*, *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2011 WL 1772401, at *5 (D. Colo. May 10, 2011) ("The court finds no procedure or authority under 9 U.S.C. § 4 to compel putative class members, who are not currently before the court and, because a class has not yet been certified, have not even received notice of the litigation, to arbitrate their potential claims against Defendants."); *McLeod v. Ford Motor Co.*, No. EDCV 04-1255VAPSGLX, 2005 WL 3763354, at *3 (C.D. Cal. Apr. 14, 2005) ("Defendants' argument for a stay of these claims on the basis of putative class members' arbitration agreements is premature. Indeed, if a class is eventually certified on these claims, it possibly may not include any members who reached arbitration agreements with Defendants."). If it turns out that the MCOs and the self-funded subscribers, or a significant percentage of either group, must arbitrate—two separate decisions—the Court can always decertify, subclassify, or otherwise alter the class later. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 896 (7th Cir. 1981); *cf. Messner*, 669 F.3d at 826 ("Of course, the district court is free to revisit this issue at a later time if discovery

12

shows that the number of members who could not have been harmed by the merger was more significant than it appears at this time."). But right now, NorthShore prematurely raises the specter of arbitration, which is not so certain that it should prevent class certification in the first instance.

### 2. Interest in Individually Controlling the Litigation

Next, NorthShore argues that class litigation is not superior to individual litigation because the MCOs and their self-insured subscribers have an interest in individually controlling any claim against NorthShore. Def.'s Resp. Br. at 20-24. It is true that the basic policy at the core of the class action mechanism is to aggregate typically small individual claims (which are usually not worth bringing one at a time) into an amount worth the labor. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). And it is also true that the MCOs might have large individual claims (as measured in dollars) that give them a theoretical incentive to bring individual suits outside of the class. *See Messner*, 669 F.3d at 824 n.13 (noting that Plaintiffs' expert found that Blue Cross Blue Shield of Illinois, an MCO, suffered losses of $110 million as a result of the merger). But a theoretical incentive to individually control litigation is not enough to prevent class certification; there must be a practical incentive. *See* Fed. R. Civ. P. 23 advisory committee's note; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 616 (1997).

Thus far, NorthShore can only point to a theoretical interest. For one, MCOs number just a fraction of the proposed class (NorthShore believes that 44 MCOs in total must arbitrate, *see* R. 491-11, Def.'s Exh 10), which still leaves potentially tens,

13

if not hundreds, of thousands of self-insured subscribers and other putative class members who are unaware of their litigation rights or are unwilling to exercise them individually due to the size of their claims. *See* R. 246 at 15. And more importantly, the MCOs have not yet, despite the opportunity, taken an actual position on whether they wish to exercise their individual right to control the litigation. In the June 11, 2009 status hearing, counsel for three MCOs appeared and asked Judge Lefkow to delay deciding NorthShore's motion to compel arbitration. In doing so, counsel made it clear that the MCOs had not yet decided whether to opt out of a certified class, arbitrate their claims, or simply stand pat:

> MS. DOOLIN: I mean I don't—our view is that this is a premature issue for the Court to be ruling on, whether or not claims that have not yet been brought by the MCOs or even on behalf of the MCOs, because a class hasn't been certified, whether or not those are subject to arbitration, whether or not the arbitration clauses that the hospital is relying on, you know, are accurate, whether or not the individual MCOs may indeed decide they want to opt out if the class is certified. *Maybe* they do want to assert their arbitration rights and say, yes, we want to arbitrate this—
>
> THE COURT: Right.
>
> MS. DOOLIN: —*maybe not.*

6/11/09 Tr. 12:24-13:10 (emphases added); *see also id.* 12:13-17 ("*I don't know* that my clients who, again, are not parties to this case want to take that position [that the MCOs are subject to arbitration] . . . or that the other MCOs, quite frankly, want to take that position." (emphasis added)). So several MCOs, according to their counsel, had not yet decided, as of June 11, 2009, how they would like to proceed with any of their potential claims—by way of class-action litigation, individual litigation, or

arbitration, and instead wanted the class-certification issue decided first. And in the four-plus years since that status hearing, there have been no changes in this non-position, or in the positions of any other MCO. Nor has any other party brought an individual antitrust suit against NorthShore during that same time period. If any party truly wishes to bring individual claims against NorthShore, they can always do so even after class certification by opting out of the class. But right now, there is no evidence to suggest that the MCOs have acted, or would even like to act, in accordance with their theoretical incentive to control an individual lawsuit, however theoretically large that incentive might be. This theoretical incentive to individually control the litigation alone thus does not stand in the way of class certification.

### 3. Manageability

Finally, NorthShore argues that a certified class would be unmanageable because any trial would require hundreds of mini-trials analyzing many individual NorthShore-MCO contracts. Def.'s Resp. Br. at 24-27. But remember, the more that common issues predominate, the more likely it is that a class action is superior to individual litigation. *See, e.g.*, *Messner*, 669 F.3d at 814 n.5. And in *Messner*, the Seventh Circuit already rejected NorthShore's mini-trial argument in finding that common issues predominate over individual ones. The Seventh Circuit credited the ability of Plaintiffs' expert, Dr. David Dranove, to use common evidence to show that all of the class members suffered some antitrust impact (which is an independent

15

element of antitrust liability, *see Messner*, 669 F.3d at 815), as a result of the merger.[6] *Id.* at 818. The Seventh Circuit reasoned that Dranove's proposed methodology, a difference-in-differences analysis, would allow him to determine the antitrust impact on *all* NorthShore patients covered by each individual NorthShore-insurer contract by plugging in the price increases imposed by that contract. *Id.* at 818-19. True, some of the contracts may require multiple difference-in-differences analyses because their price increases might not be uniform throughout those contracts, but even those multiple analyses require only common evidence—the contract setting out the non-uniform price increases. *Id.* at 819. The data sets that Dranove intends to feed into his calculations, moreover, are readily available, and can be approximated using other data sets as controls even if not available. *See* R. 360, Dranove Reply Report ¶ 80. Plaintiffs can therefore use this common evidence and common methodology to prove the class's claims all at once rather than re-litigating them in hundreds of individual proceedings. Indeed, according to Dranove, his methodology can even overcome the differences in NorthShore service categories as well as the differences in inpatient and outpatient care by ultimately reducing those differences to a single number: an estimate of the uniform price increase per contract. *See id.* ¶ 5. That is because the "contracts consistently apply a common price increase across all or substantially all

---

[6]This ability to prove antitrust liability for all members of the class by using common evidence distinguishes this case from the cases that NorthShore relies on, which are employment discrimination cases denying class certification amidst too many individual employment decisions. *See Dukes*, 131 S. Ct. at 2554-57 (no common proof of a companywide discriminatory pay and promotion policy); *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 471-73 (N.D. Ill. 2009) (no way to try the case without 1,700 individualized proceedings to determine liability and damages).

service categories," *id.* ¶ 23 (emphasis omitted), meaning that "any estimate of the uniform price increase for a given [contract] is necessarily also a valid and reliable estimate of the price increase applicable to every service category and patient covered by that [contract]," *id.* ¶ 26 (emphasis omitted). So Dranove's methodology, which the Seventh Circuit expressly credited, also promises to overcome any inpatient-outpatient or service-category distinction to assess antitrust impact—which, again, is an element of antitrust liability—on a single classwide basis. By helping to answer the antitrust liability question in one fell swoop, this methodology eliminates the need for hundreds of mini-trials on liability. Class certification is therefore superior to re-litigating liability in individual repeat proceedings.[7]

---

[7] The Court also rejects NorthShore's suggestion to certify a class that does not include the MCOs. *See* Def.'s Resp. Br. at 10. Dranove can show, with common evidence, antitrust impact on all types of plaintiffs, including the MCOs. It would be much more efficient to certify a class including the MCOs, thus giving them the option to prove their respective antitrust injuries all at once.

## IV. Conclusion

For the reasons discussed above, Plaintiffs' motion for class certification [R. 478] is granted. The class, as defined above, shall be certified. The status hearing of December 16, 2013, at 10:45 a.m., remains in place.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: December 10, 2013