**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **In re Evanston Northwestern Healthcare Corporation Antitrust Litigation** | **Master File No. 07-CV-4446** |
| | **Judge Chang** |
| **This Document Relates To:** | |
| **All Actions** | |

**DEFENDANT NORTHSHORE UNIVERSITY HEALTHSYSTEM'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT <u>BY APPLICATION OF THE STATUTE OF LIMITATIONS</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ..................................................................................................................... 5

I.  Plaintiffs' Section 7 Claim Is Barred by the Four-Year Statute of Limitations.................. 5

   A.  Plaintiffs' Section 7 Claim Accrued on January 1, 2000........................................ 5

   B.  The Discovery Rule Does Not Save Plaintiffs' Section 7 Claim............................ 6

II.  Plaintiffs' Section 2 Claims Are Barred By the Four-Year Statute of Limitations. ........... 9

   A.  *Berkey*'s Holding Is Limited To Situations in Which a Defendant Does Not
       Charge Higher Prices Until *After* it Commits a Non-Merger-Related
       Anticompetitive Act............................................................................................ 9

   B.  The Court Should Follow the Sixth Circuit's More Recent and Directly
       Applicable Holding in *Z Technologies*. ............................................................. 12

   C.  The Discovery Rule Does Not Save Plaintiffs' Section 2 Claims. ....................... 14

III.  The "Continuing Violations" Doctrine is Inapplicable to Any of Plaintiffs' Claims. ...... 14

   A.  Plaintiffs Have Identified No Anticompetitive Overt Acts Subsequent to the
       Merger That Would Extend the Statutory Period Beyond December 31,
       2003.................................................................................................................. 17

   B.  Neither Post-Merger Price Changes Nor Contract Renegotiations Are Overt
       Anticompetitive Acts. ....................................................................................... 17

IV.  Plaintiffs Cannot Rely Upon the February 10, 2004 FTC Proceeding to "Toll" or
     Suspend the Statute of Limitations. ................................................................................. 19

CONCLUSION................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Dairy Farmers of Am., Inc.,*
748 F. Supp. 2d 323 (D. Vt. 2010) ..........................................................................19

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...........................................................................................4

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
603 F.2d 263 (2d Cir. 1979) .......................................................................... passim

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) ..............................................................................12

*Brunswick Corp. v. Riegel Textile Corp.,*
752 F.2d 261 (7th Cir. 1985) ...............................................................................5

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...........................................................................................4

*Concord Boat Corp. v. Brunswick Corp.,*
207 F.3d 1039 (8th Cir. 2000) ..................................................................6, 15, 16

*DXS, Inc. v. Siemens Med. Sys., Inc.,*
100 F.3d 462 (6th Cir. 1996) .............................................................................17

*Electroglas, Inc. v. Dynatex Corp.,*
497 F. Supp. 97 (N.D. Cal. 1980) ..................................................................17, 19

*In re Aggrenox Antitrust Litig.,*
2015 WL 1311352 (D. Conn. Mar. 23, 2015) .........................................................13

*In re Buspirone Patent Litig.,*
185 F. Supp. 2d 363 (S.D.N.Y. 2002) ..................................................................13

*In re Ciprofloxacin Hydrochloride Antitrust Litig.,*
261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..................................................................19

*In re K-Dur Antitrust Litig.,*
338 F. Supp. 2d 517 (D.N.J. 2004) .....................................................................13

*In re Niaspan Antitrust Litig.,*
42 F. Supp. 3d 735 (E.D. Pa. 2014) .....................................................................13

*In re Skelaxin (Metaxalone) Antitrust Litig.,*
2013 WL 2181185 (E.D. Tenn. May 20, 2013) .......................................................13

*In re Sulfuric Acid Antitrust Litig.*,
  703 F.3d 1004 (7th Cir. 2012) .................................................................6

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
  677 F.2d 1045 (5th Cir. 1982) ...............................................................18

*Kaiser Found. v. Abbott Labs.*,
  2009 WL 3877513 (C.D. Cal. Oct. 8, 2009) .........................................18

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010).................................................................................7

*Midwestern Mach. Co. v. Nw. Airlines, Inc.*,
  392 F. 3d 265 (8th Cir. 2004) .....................................................6, 15, 19

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) .........................................................15, 17, 19

*SCM Corp. v. Xerox Corp.*,
  463 F. Supp. 983 (D. Conn 1978) ..........................................................20

*Shuffle Tech Int'l, LLC v. Scientific Games Corp.*,
  2015 WL 5934834 (N.D. Ill. Oct. 12, 2015)............................................7

*Sornberger v. City of Knoxville*,
  434 F.3d 1006 (7th Cir. 2006) .................................................................4

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  2010 WL 3521979 (E.D. Cal. Sept. 3, 2010)..........................................18

*Traylor v. Brown*,
  295 F.3d 783 (7th Cir. 2002) ...................................................................4

*Varner v. Peterson Farms*,
  371 F. 3d 1011 (8th Cir. 2004) ...................................................15, 17, 18

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
  328 F. App'x 695 (2d Cir. 2009) ............................................................18

*Z Technologies Corp. v. Lubrizol Corp.*,
  753 F.3d 594 (6th Cir. 2014) ......................................................... passim

*Zenith Radio Corp. v. Hazeltine Research*,
  401 U.S. 321 (1971)..................................................................................5

**STATUTES**

15 U.S.C. § 2 ........................................................................................................ passim

15 U.S.C. § 15b ....................................................................................................... 5, 20

15 U.S.C. § 16(i) .......................................................................................................... 20

Clayton Act § 7 ................................................................................................... passim

**OTHER AUTHORITIES**

P. Areeda & H. Hovenkamp, *Antitrust Law*, ¶ 320
 (3d & 4th eds. 2015 Cum. Supp.) .................................................................. passim

## INTRODUCTION

NorthShore moved for summary judgment on April 10, 2015, arguing that all of Plaintiffs' claims were barred by the four-year statute of limitations.  R. 676.  Rather than respond on the merits, Plaintiffs instead moved under Rule 56(d) for more time and discovery.  R. 680.  On May 28, 2015, this Court granted Plaintiffs' motion and concurrently denied NorthShore's motion without prejudice.  R. 708.  The Court stated that "NorthShore may update the motion to address the Court's take on the substantive law—including *Berkey*—and refile after the close of fact discovery."  *Id.* at 13.  The Court also stated that the Seventh Circuit "has not decided" four fundamental legal questions relevant to NorthShore's motion:

> [1] when purchaser-plaintiffs merger-based monopolization claims under § 2 of the Sherman Act accrue; it has not decided [2] when purchaser-plaintiffs' claims under § 7 of the Clayton Act accrue; and it has not decided whether [3] the continuing violation doctrine or [4] discovery rule apply to either type of claim.

R. 708 at 3.  Now that fact discovery has closed, NorthShore submits that Plaintiffs should now be required to respond, and the Court can now resolve, based on undisputed facts, two fundamental questions:

*First*, when did the class's Clayton Act Section 7 and Sherman Act Section 2 claims accrue in light of *Berkey*, the discovery rule, and all fact discovery obtained by the parties?  The answer is straightforward: Plaintiffs' claims accrued when Evanston Northwestern Healthcare ("ENH" now known as NorthShore University HealthSystem or NorthShore) and Highland Park Hospital ("HPH") finalized their merger on January 1, 2000 ("the Merger") because Plaintiffs knew about the Merger as soon as it was completed and allege that NorthShore instituted price increases "immediately" thereafter.  Moreover, based on Plaintiffs' actual knowledge, the discovery rule cannot toll the accrual date.  Indeed, Plaintiffs knew all of the facts that formed the basis of their complaint on the date the Merger was finalized.

*Second*, has NorthShore committed any anticompetitive overt acts in the four years preceding the Complaint—i.e., does the continuing-violations doctrine save Plaintiffs' claims? The answer to this question is similarly straightforward: the continuing-violations doctrine does not apply to mergers as a matter of law. Even if it did, Plaintiffs have not alleged any overt anticompetitive acts that would restart the limitations period. Indeed, post-merger price increases and contract renegotiations are not overt acts; instead, they are the unabated inertial consequences of the Merger and cannot, as a matter of law, be an overt act.

Furthermore, nothing in *Berkey* changes these straightforward answers. Nor does the discovery rule, the continuing-violations doctrine, or the additional discovery requested by Plaintiffs.

*Berkey*. *Berkey* does not save Plaintiffs' Section 7 or Section 2 claims. Critically, *Berkey* is not a merger case, did not analyze a Section 7 claim, and never reached a holding related to the statute of limitations in Section 7 cases. Its holding is limited to Section 2 non-merger monopoly cases. Therefore, even if the Court applies *Berkey*, it should do so *only* to Plaintiffs' Section 2 claim and grant summary judgment on Plaintiffs' Section 7 claim.

But given its unique fact set and policy-driven reasoning, *Berkey* should not apply to *any* of Plaintiffs' claims. In *Berkey*, the plaintiff (Berkey Photo, Inc.) did not pay any overcharges until long after defendant Kodak began to engage in anticompetitive conduct related to the tying of products in the film, camera, and photo processing markets. In fact, Berkey alleged that Kodak began engaging in anticompetitive conduct *more than fifty years* before Berkey paid overcharges for products in the monopolized market. Based on the time lapse between Kodak's anticompetitive conduct and its later charging of monopoly prices, the Second Circuit held that it would be unfair to bar Berkey's suit. In other words, the Second Circuit relied on policy grounds in holding that Berkey's claims did not accrue until Berkey paid an overcharge. Any other

result, according to the Second Circuit, would lead to "untoward consequences." In complete contrast to the facts of *Berkey*, the Plaintiffs in this case allege that NorthShore instituted price increases "immediately and substantially after" the Merger. (56.1 ¶ 17) (quoting R. 224 ¶ 16, Pls.' Consol. Class Action Compl.). Here, distinct from *Berkey*, no time-lapse existed between the anticompetitive conduct and the alleged price increases. Thus, none of the policy concerns cited by the Second Circuit in *Berkey* apply in this case.

*Discovery Rule*. The discovery rule does not apply to either Plaintiffs' Section 2 or Section 7 claims because Plaintiffs were aware of their injury on the date of the Merger, or at the very least should have known that the Merger provided all of the facts necessary to form the basis of their complaint. Indeed, the discovery rule requires that a plaintiff exercise diligence, and the named Plaintiffs have each admitted that they knew about the Merger both before and when it happened. Moreover, Plaintiffs' own allegations establish their belief that NorthShore instituted price increases "immediately" after the Merger closed.

*Continuing-Violations Doctrine*. Plaintiffs cannot rely on the continuing-violations doctrine to save any of their claims. First, no court has ever applied the continuing-violations doctrine to merger-based claims, and Plaintiffs have neither alleged nor identified any reason why this Court should be the first to do so. Second, even if the continuing-violations doctrine applied to merger-based claims (which no court has ever held), discovery did not reveal and Plaintiffs do not allege any anticompetitive overt act committed in the four years preceding the filing of Plaintiffs' first complaint.

*Additional Discovery*. Finally, the additional discovery that followed the Court's May 28, 2015 Order did not change the relevant facts from when NorthShore first filed its summary judgment motion: (1) the Merger closed on January 1, 2000; (2) NorthShore informed its MCO customers that it needed to renegotiate its contracts coincident with the Merger and that it

intended to provide services under the terms and conditions of either the HPH or ENH agreement, whichever was more favorable to the hospital; (3) Plaintiffs assert that NorthShore raised its prices "immediately and substantially after" the Merger; and (4) despite knowledge of the Merger and extensive notice both before and after the Merger closed, Plaintiffs took no legal action until August 7, 2007, when they filed a class action complaint against NorthShore.[1]

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Sornberger v. City of Knoxville*, 434 F.3d 1006, 1019 (7th Cir. 2006) (holding that only "genuine issues of fact preclude summary judgment"). Summary judgment should be granted when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The defendant is not obligated to negate the plaintiff's claim, but need only point to the absence of evidence to support the plaintiff's case. *Id.* at 323, 325. The plaintiff, on the other hand, is required to go beyond the pleadings and to support his contentions with proper documentary evidence, (*id.* at 324), and the plaintiff's evidence must be sufficient such that a jury could reasonably find in the plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Speculation and conjecture do not defeat a motion for summary judgment. *See Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir. 2002).

---

[1] The facts relevant to the statute of limitations are well-known and undisputed. *See* R. 676 at 2-4 (summarizing facts as of April 10, 2015, none of which has meaningfully changed following Plaintiffs' additional discovery); *see also* 56.1 Statement of Undisputed Facts (filed concurrently with this renewed motion).

## ARGUMENT

I.     **Plaintiffs' Section 7 Claim Is Barred by the Four-Year Statute of Limitations.**

Plaintiffs' Section 7 claim is barred by the four-year statute of limitations because that claim accrued when the Merger was finalized on January 1, 2000, and therefore expired on December 31, 2003.  A private antitrust plaintiff's claims—whether brought by a purchaser or a competitor—are subject to a four-year statute of limitations.  15 U.S.C. § 15b ("Any action . . . shall be forever barred unless commenced within four years after the cause of action accrued.").  Each of the named plaintiffs was aware of the Merger on January 1, 2000, and yet none filed suit within the four-year limitations period.

### A.     **Plaintiffs' Section 7 Claim Accrued on January 1, 2000.**

The statute of limitations begins to run when a plaintiff's cause of action "accrues"—i.e., the point in time when the defendant commits an alleged anticompetitive act.  *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338 (1971) (Plaintiff's "cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business"); *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1985) ("[C]onventional form[s] of antitrust injury . . . give[] rise to a claim for damages as soon as the [alleged anticompetitive conduct] occurs.").

In its May 28 Order, this Court stated that "[t]he Class's monopolization claim under Section 2 of the Sherman Act (15 U.S.C. § 2) might well be timely under *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 294-96 (2d Cir. 1979)."  R. 708 at 5.  But because *Berkey* addressed the statute of limitations only in the context of Sections 1 and 2 of the Sherman Act— and not Section 7 of the Clayton Act—the Court cannot apply the reasoning of *Berkey* to Plaintiffs' Section 7 claim.  And while the Seventh Circuit has not specifically addressed the issue of when a Section 7 Clayton Act claim accrues, NorthShore respectfully submits that this

Court should follow the clear and uncontroverted precedent followed by other courts and authorities.

In particular, the Eight Circuit has held that an unlawful merger or acquisition is an "anticompetitive act" that triggers the statute of limitations. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000) ("Brunswick acquired Bayliner and Sea Ray in December 1986, and the cause of action [including Section 7 claims] for these widely publicized transactions accrued at that time."); *Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F. 3d 265, 269 (8th Cir. 2004) ("Generally, a Section 7 action challenging the initial acquisition of another company's stocks or assets accrues at the time of the merger or acquisition.") (internal citations and quotations omitted). Professors Areeda and Hovenkamp likewise conclude that the statute of limitations for merger claims runs "from the date that two firms come under the degree of control necessary to cause the competitive injury in question." Ex. 1 at 10, P. Areeda & H. Hovenkamp, *Antitrust Law*, ¶ 320c5 (3rd & 4th eds. 2015 Cum. Supp.) (hereinafter "*Antitrust Law*").[2]

Here, it is undisputed that ENH and HPH completed their Merger on January 1, 2000, meaning that Plaintiffs' Section 7 claim accrued at that time and expired four years later on December 31, 2003. (56.1 ¶ 7).

### B. The Discovery Rule Does Not Save Plaintiffs' Section 7 Claim.

Even if the discovery rule applies to Plaintiffs' Section 7 claim, the rule is irrelevant to determining when Plaintiffs' claim accrued because it is undisputed that each named plaintiff had actual knowledge of the Merger as of January 1, 2000. (56.1 ¶¶ 29-32). According to Seventh Circuit precedent, under the discovery rule, "[s]tatutes of limitations in federal civil cases . . . begin to run upon discovery of the injury from the alleged violation." *In re Sulfuric*

---

[2] For the Court's convenience, NorthShore has attached ¶ 320 of *Antitrust Law* as Ex. 1.

*Acid Antitrust Litig.*, 703 F.3d 1004, 1014 (7th Cir. 2012). Similarly, the Supreme Court has held that under the discovery rule, a claim "accrue[s] when the litigant first knows or with due diligence should know facts that will form the basis for an action." *Merck & Co. v. Reynolds*, 559 U.S. 633, 646 (2010).

While courts in the Seventh Circuit have applied the discovery rule to antitrust cases, the discovery rule

> does not provide that a cause of action accrues anytime a prospective plaintiff suffers an injury in the future, even if that party did not exist or suffered no injury at the time of the alleged violation. If this were how the discovery rule worked, plaintiffs entering concentrated markets could bring Section 7 suits based on the decades- or centuries-old mergers that initially concentrated them, so long as those plaintiffs sued within four years of entering the market. The statute of limitations would be meaningless.

*Shuffle Tech Int'l, LLC v. Scientific Games Corp.*, 2015 WL 5934834, *14 (N.D. Ill. October 12, 2015) (J. Kennelly) (refusing to apply the discovery rule to plaintiff's Section 7 claims where plaintiffs were not "participants in the . . . market" at the time of the merger). "The discovery rule does not exist to toll the statute of limitations where antitrust violations are so camouflaged or discreet that injured parties might fail to perceive that a violation has occurred." *Id.* at *15.

In its Order denying NorthShore's original motion for summary judgment, this Court stated that "NorthShore . . . does not cite anything in support [of its argument] that the discovery rule does not apply to merger-based antitrust claims." R. 708 at 9. To clarify, NorthShore meant that the discovery rule—regardless of whether the Court determines that it does or does not apply to merger claims generally—does not apply to ***Plaintiffs'*** merger-based claims because Plaintiffs had actual knowledge of the Merger. In other words, Plaintiffs knew the "facts that . . . form[ed] the basis for [their] action" on January 1, 2000. *Merck & Co.*, 559 U.S. at 646. Indeed, this

Court recognized that "NorthShore's recitation of the evidence that the class representatives were aware of the merger is compelling." R. 708 at 11.

For example, each of the three named plaintiffs admitted to knowing about the Merger before it occurred. (56.1 ¶¶ 30-32). Mr. Messner knew about the Merger in 1999 and had "heard about what was going on with the discounts and with the pricing" but did not file suit sooner because he "just didn't – [] didn't bother." (*Id.* ¶ 30). Likewise, Dr. Lahmeyer admitted to knowing about the Merger in 1999 and to discussing its "pros and cons" before it was completed. (*Id.* ¶ 32). So, too, did the Painters Fund, as its corporate representative Wanda Ehrhardt testified the she learned of the Merger when it was going on and had general knowledge of the situation. (*Id.* ¶ 31). Moreover, ENH and HPH sent letters to each of its MCO customers announcing the Merger six months before it was finalized. (*Id.* ¶ 21). ENH and HPH then sent a follow-up letter and consent-to-assignment form to its MCO customers in December 1999 stating, among other things, that ENH was either terminating HPH's current contracts or terminating ENH's contracts and assigning HPH's agreements to ENH, effective at midnight on December 31, 1999. (*Id.* ¶¶ 22-23). In other words, NorthShore informed the MCOs that it needed to renegotiate its contracts coincident with the Merger and that it intended to provide services under the terms and conditions of either the ENH or HPH contract, whichever was more favorable to ENH. *See e.g.*, Ex. AA to 56.1 Statement. Finally, the Merger received extensive press coverage before it was finalized, which was sufficient to put all of NorthShore's customers and patients on inquiry notice. (56.1 ¶ 28).

These facts are undisputed, and discovery has failed to reveal any additional facts, either before or after the Court's May 28 Order, that the class can rely upon to "prove that it could not have discovered its injuries until after the merger; specifically, until long enough after the merger to make its claims timely." R. 708 at 9.

## II. Plaintiffs' Section 2 Claims Are Barred By the Four-Year Statute of Limitations.

Plaintiffs' Section 2 claims are also time-barred because they accrued when the Merger was finalized on January 1, 2000. "The courts consistently hold that if the monopoly is created by a single identifiable act and is not perpetuated by an ongoing policy, the statute of limitations runs from the time of commission of that act, notwithstanding that high prices may last indefinitely into the future." Ex. 1 at 8, *Antitrust Law*, ¶ 320c4.

Although Plaintiffs have pled claims under both Sections 7 and 2, they allege no anticompetitive act other than the Merger. (56.1 ¶18) (quoting R. 224 ¶ 43, Pls.' Consolidated Class Action Complaint) ("By virtue of its acquisition of Highland Park Hospital on or about January 1, 2000, ENH acquired monopoly power in the marketing of Healthcare Services . . . ."). All acts subsequent to the Merger about which Plaintiffs complain were simply the "'ripples' caused by the initial injury" of the Merger. *Z Technologies Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014). NorthShore respectfully submits that *Berkey* does not change this conclusion. Indeed, as *Berkey* recognized, the charging of higher prices is not an anticompetitive act. *Berkey*, 603 F.2d at 294 ("Setting a high price may be a use of monopoly power, but it is not in itself anticompetitive.").

### A. *Berkey*'s Holding Is Limited To Situations in Which a Defendant Does Not Charge Higher Prices Until *After* it Commits a Non-Merger-Related Anticompetitive Act.

The Second Circuit's holding in *Berkey* is inapplicable to this case because there, unlike the facts alleged here, the defendant's initial acquisition of monopoly power was separate and distinct from its later exercise of monopoly power through excessive prices. *Id*. at 293.

For example, Berkey alleged that Kodak's anticompetitive acts related to the tying of products in the film, camera, and photo processing markets dating back to 1915 contributed to Kodak's unlawful acquisition of monopoly power. *Id.* at 263. These anticompetitive acts, along

with "other improper conduct" outside of the limitations period, bolstered Kodak's monopoly and allowed it to later charge an "excessive price" for film and color paper. *Id.* As Professors Areeda and Hovenkamp correctly recognized in their discussion of *Berkey*, "[t]he conduct that had allegedly created the monopolies in the products had occurred more than four years prior to the lawsuit, but high prices did not result until ***long thereafter***." Ex. 1 at 9, *Antitrust Law*, ¶ 320c4 (emphasis added). As a result of the time lapse between Kodak's anticompetitive conduct and the "excessive price" it charged Berkey for film and color paper, the Second Circuit held that Berkey's claims did not accrue until Berkey actually paid the inflated price. *Berkey*, 603 F.2d at 295. This time lapse convinced the Second Circuit that a "purchaser's [Section 2] claim" should not "accrue until it actually pays the overcharge"—i.e., until the monopolist exercises the monopoly power gained through anticompetitive acts. *Id.*

To determine when the statute of limitations begins to run on a purchaser-plaintiff's Section 2 claim, therefore, the Second Circuit drew a distinction between a monopolist's acquisition of monopoly power, which does not necessarily harm a purchaser-plaintiff, and the monopolist's subsequent charging of higher prices, which does:

> Although the business of a monopolist's rival may be injured at the time the anticompetitive conduct occurs, a purchaser, by contrast is not harmed until the monopolist actually ***exercises*** its illicit power to extract an excessive price. The case of predatory pricing illustrates the point clearly. As soon as the dominant firm commences such a policy, other producers, who may be driven out of the market, are injured. But, clearly, purchasers are not, for they receive the temporary boon of artificially low prices. It is only when the monopolist, having devoured its smaller rivals, enjoys the spoils of its conquest by boosting its price to excessive levels that a purchaser 'feels the adverse impact' of the violation.

*Id.* at 295 (emphasis added). When a monopolist acquires monopoly power through anticompetitive conduct and only later exercises monopoly power by charging higher prices, "[u]ntoward consequences would follow were we to hold that the anticompetitive conduct itself

triggered the running of the limitations period." *Id.* So it is the exercise of monopoly power that triggers the statute.

*Berkey*'s holding was grounded in policy concerns and premised on the fairness of allowing a purchaser-plaintiff to bring a claim when a plaintiff is not injured until a monopolist later exercises monopoly power. *Id.* at 296 ("But there can be no unfairness in preventing a monopolist that has established its dominant position by unlawful conduct from exercising that power *in later years* to extract an excessive price.") (emphasis added). This policy makes sense when a monopolist waits until sometime after it acquires a monopoly to charge an unlawful price. Otherwise a monopolist could acquire monopoly power, wait out the statute of limitations, and then charge higher prices once the statute had lapsed. But when two firms merge and allegedly increase their prices "immediately" and "coincident" with the merger, as Plaintiffs allege against NorthShore, no policy justification exists for extending the statute of limitations to allow future purchaser-plaintiffs to sue. As Professors Areeda and Hovenkamp correctly recognized:

> A policy of restarting the limitation period each time the post-merger firm makes a sale would expose merged firms to an unlimited period of vulnerability to litigation. For example, one might challenge a 20-year old merger on the theory that it continued to produce higher prices. The court would then have to consider not merely the merger's legality, but also the unmanageable question of whether any price above the competitive level 20 years later was caused by the merger or resulted from other factors. These difficulties are precisely the reason that the statute of limitation exists.

Ex. 1 at 11, *Antitrust Law*, ¶ 320c.

Thus, *Berkey* does not apply to Plaintiffs' claims. Unlike the defendant in *Berkey*, who did not exercise its monopoly power until "long []after" it established a monopoly (Ex. 1 at 8, *Antitrust Law*, § 320c4), Plaintiffs allege that NorthShore acquired monopoly power through its

Merger and exercised that power ***"immediately"*** after and ***"coincident"*** with the Merger by increasing prices. (56.1 ¶ 18). In other words, no time lapse existed between the anticompetitive conduct (the Merger) and the alleged exercise of monopoly power (the alleged overcharges). Further, Plaintiffs' class definition suggests that the class began paying overcharges immediately after the Merger closed, further demonstrating that no time passed between the Merger and the alleged harm to the class. The facts in *Berkey* were very different, which led the Second Circuit to assume that, "at the time a monopolist commits anticompetitive conduct it is entirely speculative how much damage that action will cause its purchasers ***in the future***." *Berkey*, 603 F.2d at 295 (emphasis added). But that is not the case here, as Plaintiffs allege that NorthShore raised prices "immediately" after and "coincident" with the Merger.[3]

### B. The Court Should Follow the Sixth Circuit's More Recent and Directly Applicable Holding in *Z Technologies*.

Because *Berkey*'s holding does not fit the facts of this case, in the absence of any direct Seventh Circuit authority, the Court should follow the more recent and directly applicable reasoning of the Sixth Circuit in *Z Technologies*.

The critical distinction between monopolization cases like *Berkey*, where the defendant acquires monopoly power but does not exercise its monopoly power until a later date, and merger-based monopolization cases, where the defendant acquires monopoly power and immediately raises its prices, explains the Sixth Circuit's holding in *Z Technologies*. As this

---

[3] As this Court recognized in its May 28 Order, "courts have become increasingly cautious about how affirmative defenses might interfere with certification." R. 708 at 12. So if Plaintiffs were to argue, or if this Court were to find, that the alleged price increases were imposed upon or realized by certain class members at different times, then such a finding would destroy predominance among the class and require decertification. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) ("[W]hen the defendant's affirmative defenses (such as . . . the statute of limitations) may depend on facts peculiar to each plaintiff's case, class certification is erroneous.") (internal citations and quotations omitted).

-12-

Court recognized, the *Z Technologies* court "took accrual-on-merger as a given and then considered tolling." R. 708 at 8. The Sixth Circuit was correct to find that the plaintiff's claims accrued on the date of the merger because its claims were based solely on the merger and concurrent price increases. *Z Technologies*, 753 F.3d at 601 ("[H]ere the only conduct complained of were the price increases."). Indeed, in *Z Technologies*, the defendant increased its prices the very month after it completed its merger. *Id.* at 596 (stating that the merger closed in February 2007 and Lubrizol increased its prices in March 2007). The facts of *Z Technologies* are therefore similar to the facts of this case and distinct from the facts of *Berkey*.[4]

Similarly, none of the unfairness presaged in *Berkey* would result if this Court holds that Plaintiffs' claims accrued on the date of the Merger because Plaintiffs not only knew about the Merger beforehand but also alleged that NorthShore increased its prices "immediately" after and "coincident" with the Merger. (56.1 ¶18). The undisputed facts further show that NorthShore informed the MCOs about the Merger months before its completion and likewise informed the

---

[4] Nor are the facts of this case similar to the facts of *In re Aggrenox Antitrust Litigation* or the "four other district-court cases" cited in *Aggrenox*. R. 708 at 7. *Aggrenox* is not a merger case and did not involve Section 7; rather, it is a pay-for-delay pharmaceutical case that involved a reverse settlement agreement. 2015 WL 1311352, at *8 (D. Conn. Mar. 23, 2015). Likewise, none of four cases cited in *Aggrenox* involve Section 7 of the Clayton Act. But even if they did, these four cases support NorthShore's argument that the continuing-violations doctrine applies only in the conspiracy context. *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 747 (E.D. Pa. 2014) (noting that it was addressing the continuing-violations doctrine "in the pay-for-delay context" where plaintiff alleged an unlawful conspiracy); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004) (noting that the continuing-violations doctrine applies "in the context *of a conspiracy* to violate the antitrust laws") (emphasis added); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 379 (S.D.N.Y. 2002) (holding that, even in a conspiracy case, the continuing-violations doctrine *did not apply* because "payments are mere consequences of the original Agreement and do not restart the statute of limitations"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL 2181185, at *29 (E.D. Tenn. May 20, 2013) (noting that "the overt acts" alleged by plaintiff were "part of the *continuing conspiracy*" that occurred outside the limitations period) (emphasis added).

MCOs that it planned to renegotiate its contracts and apply the more favorable rates of either the ENH or HPH contracts upon completion of the Merger. (56.1 ¶¶21-27).

### C. The Discovery Rule Does Not Save Plaintiffs' Section 2 Claims.

In its Order denying NorthShore's original motion, this Court cited a passage from Professors Areeda and Hovenkamp's treatise that summarized the holding from *Berkey*— namely, that "[c]ustomers of the monopolist are not injured until after the monopolist causes them injury through higher prices." R. 708 at 6 n.3 (quoting *Antitrust Law* ¶ 320c4, Ex. 1 at 10). But in that same passage, Professors Areeda and Hovenkamp go on to state that "higher prices"

> may occur *later than the exclusionary practices creating the monopoly*. For example, competitors are injured immediately by predatory pricing, but customers would not be injured until much later, when the predation has done its work and the monopolist raises its price. *Once customers have reason to know of the violation and their damages are sufficiently ascertainable to justify an antitrust action, the statute begins to run against them*.

Ex. 1 at 10, *Antitrust Law* ¶ 320c4 (emphases added).

Here, Plaintiffs admitted to knowing about the Merger before it occurred and alleged that NorthShore "immediately" increased its prices after the Merger. Thus, for the same reasons as noted above with respect to Plaintiffs' Section 7 claim, the discovery rule does not save Plaintiffs' Section 2 claims even if *Berkey* were to apply.

## III. The "Continuing Violations" Doctrine is Inapplicable to Any of Plaintiffs' Claims.

In a futile attempt to avoid the statute of limitations, Plaintiffs have suggested that price changes and managed-care contract renegotiations that occurred after the Merger are "continuing violations." Plaintiffs are wrong. Courts have repeatedly rejected the use of this doctrine in merger cases like this one, and have applied it only in conspiracy and price-fixing cases. NorthShore is not aware of any Seventh Circuit authority reaching a different conclusion on the doctrine. Thus, it does not apply to either of Plaintiffs' Section 7 or Section 2 claims.

A "continuing violation" is one in which a plaintiff's interests are repeatedly invaded by a sequence of anticompetitive overt acts such that a separate cause of action arises each time. *See Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237-38 (9th Cir. 1987); *Varner v. Peterson Farms*, 371 F. 3d 1011, 1019 (8th Cir. 2004). "[T]he typical antitrust continuing violation occurs in a price-fixing conspiracy . . . when conspirators continue to meet to fine-tune their cartel agreement," *Midwestern Machinery*, 392 F.3d at 269, or "where multiple defendants are alleged to be part of an ongoing conspiracy." *Concord Boat*, 207 F.3d at 1052.

The continuing violations doctrine does not apply to merger-based claims. For example, in *Midwestern Machinery*, the Eight Circuit held that "there is no continuing violation under §7 [of the Clayton Act] that would justify extending the statute of limitations beyond four years." 392 F.3d at 271. If it did apply, "every [post-merger] business decision could qualify as a continuing violation to restart the statute of limitations as long as the firm continued . . . to be merged" and "would expose merged firms to potential liability in private suits as long as the firm remained merged." *Id*. Thus, the continuing-violations doctrine would "make[] no sense" in a merger case. *Id*.[5]

Similarly, in *Concord Boat*, the plaintiff challenged the nine-year-old acquisition of Bayliner and Sea Ray by Brunswick under Section 7 of the Clayton Act. 207 F.3d at 1045. Plaintiff also alleged under Sections 1 and 2 of the Sherman Act that Brunswick abused its newly acquired monopoly power by instituting volume and market-share discounts. *Id.* at 1045-46. To

---

[5] The Eighth Circuit's reasoning is supported by venerable antitrust scholarship. *See* Ex. 1 at 10 *Antitrust Law* ¶ 320c5 ("Clearly, Congress did not intend to exempt mergers from the antitrust statute of limitation…Making post-merger purchases or sales the basis for a 'continuing violation' would effectively abolish the statute of limitation for mergers."). By referring to "purchases or sales," Professors Areeda and Hovenkamp are implicitly referring to purchaser-plaintiffs. Thus, when determining whether the continuing violations doctrine applies to a Section 7 merger claim, the distinction between a purchaser-plaintiff and a competitor-plaintiff should not matter.

account for its delay in bringing suit nine years after the acquisition, the plaintiff relied on the continuing-violations doctrine but "cite[d] no appellate decision applying that concept" to a merger. *Id.* at 1052. The Eight Circuit held that the doctrine has "not been found outside the RICO or Sherman Act conspiracy context . . . because acts that simply reflect or implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations." *Id.* (internal citation and quotation marks omitted).

Most recently, the Sixth Circuit in *Z Technologies v. Lubrizol*—a merger case between manufacturers of anti-corrosion products that created an undisputed monopoly—carefully reviewed Circuit and Supreme Court case law and concluded that, "it is clear from the complete absence of supporting case law that the continuing violations doctrine does not apply to such claims." *Z Technologies*, 753 F.3d at 599. The *Z Technologies* court explained why the continuing-violations doctrine applies only to conspiracy-type cases:

> The focus on conspiracy cases for a continuing violations offense makes intuitive sense. In a conspiracy, each price increase requires further collusion between multiple parties to maintain the monopoly; in a merger-acquisition case, however, the cause of harm is the merger itself. The subsequent price increases do not further the company's monopoly because the company has already obtained the monopoly.

*Id.*

This Court should adopt the consensus reasoning of the Sixth and Eighth Circuits—the only appellate precedent directly on point—and hold that the continuing violations doctrine does not apply to merger claims and cannot be used by Plaintiffs to extend the statute of limitations on their merger-based claims. There is simply no basis, rationale, or Seventh Circuit authority that should cause the Court to depart from this clear precedent.

**A. Plaintiffs Have Identified No Anticompetitive Overt Acts Subsequent to the Merger That Would Extend the Statutory Period Beyond December 31, 2003.**

Even if the continuing violations doctrine applied to merger-based claims, Plaintiffs would still need to identify an anticompetitive overt act taken by NorthShore after the Merger for the doctrine to restart the limitations period and thus save their claims. *Pace Indus., Inc.*, 813 F.2d at 237-38 (holding that a continuing violation requires an anticompetitive overt act such that a new cause of action arises each time).

An anticompetitive act is an act that creates an injury to competition. *Electroglas, Inc. v. Dynatex Corp.*, 497 F. Supp. 97, 105 (N.D. Cal. 1980) (an anticompetitive act is one that "creates injury *to competition*, not merely a continuing pecuniary injury to a plaintiff") (emphasis added). Plaintiffs must also prove that the alleged anticompetitive act is "overt." An overt act "(1)…must be a new and independent act that is not merely a reaffirmation of a previous act; and (2)…must inflict a new and accumulating injury." *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996) (internal citation and quotation marks omitted).

Plaintiffs' allegations of higher prices and contract renegotiations following the Merger are not anticompetitive overt acts for the purpose of restarting the statute of limitations; they are merely the alleged *effects* of the Merger—that is, "the unabated inertial consequences" thereof. *Varner*, 371 F.3d at 1019. They are, simply put, irrelevant for statute-of-limitations purposes.

**B. Neither Post-Merger Price Changes Nor Contract Renegotiations Are Overt Anticompetitive Acts.**

As clearly stated by the *Z Technologies* court, "Sixth circuit precedent, leading antitrust commentators, and the case law from our sister circuits all indicate that price increases in the merger-monopolization context are not 'overt acts' extending the statute of limitations." 753 F.3d at 600. Indeed, "profits, sales, and other benefits accrued as the result of an initial wrongful act are not treated as 'independent acts.' Rather, they are uniformly viewed as 'ripples' caused

-17-

by the initial injury, not as distinct injuries themselves." *Id.* at 600 (rejecting claims that raising prices and enforcing a non-compete clause after a merger could extend the statute of limitations); *see also Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2010 WL 3521979, *16 (E.D. Cal. Sept. 3, 2010) ("The acts of purchasing the defendants' products . . . is not a 'continuing act' for purposes of restarting the statute of limitations."); *Kaiser Found. v. Abbott Labs.*, 2009 WL 3877513, at *7 (C.D. Cal. Oct. 8, 2009) ("[T]he statute of limitations is not extended by continued sales at an allegedly monopolistic price . . . and can hardly be said to be [an] independent [act].") (citation omitted). As the Second Circuit held in *Berkey*, "[s]etting a high price may be a use of monopoly power, but it is not in itself anticompetitive." 603 F. 2d at 294. And as Professors Areeda and Hovenkamp correctly stated

> [I]f there is one clear case where a subsequent act is a mere 'reaffirmation' rather than an 'independent' predicate act, it is the ongoing sales of the post-merger firm. Every merger contemplates that the post-merger firm will continue to sell the product. To regard each sale as an independent predicate act thus deprives the notion of 'independence' of all meaning.

Ex. 1 at 10, *Antitrust Law* § 320c5.[6]

Moreover, allowing the Plaintiffs to perpetually challenge a sixteen-year-old-Merger based on post-Merger price changes would be incompatible with the purpose of the statute of limitations, as it "would expose merged firms to potential liability in private suits as long as the firm remained merged." *Midwestern Mach. Co.*, 392 F.3d at 271; *see also Electroglas*, 497 F.

---

[6] Courts addressing factual situations similar to a merger—e.g., defendant allegedly enters illegal agreement and later institutes price increases—have held that the statute runs from the date of the agreement and is not restarted when the plaintiff pays an overcharge. *See, e.g.*, *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1052-53 (5th Cir. 1982) (statute of limitations ran from date contract was executed, and defendant's receipt of benefits under contract was not sufficient to restart the statute); *Varner*, 371 F.3d at 1020 ("[A]n injury occurs only when the agreement is initially imposed."); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 328 F. App'x 695, 698-99 (2d Cir. 2009) (holding that the statute of limitations ran from execution of license agreement).

Supp. 97, at 105-106 ("[Plaintiffs'] theory would render the . . . statute of limitations virtually inoperative in all cases involving relatively long-term contracts.").

For similar reasons, NorthShore's post-Merger contract renegotiations with the MCOs are not anticompetitive overt acts. The law is settled that renewals of existing contracts are "reaffirmation[s;]" they are not "new and independent act[s]." *Pace Indus.*, 813 F.2d at 238. Amending, renewing, or performing pre-statute-of-limitations contracts "falls squarely within the 'reaffirmation' exception to the continuing violation doctrine." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 350 (D. Vt. 2010) (rejecting plaintiffs' characterization that "each annual renewal of the existing agreement [w]as a new violation"); *see also Electroglas*, 497 F. Supp. at 104 (holding that the "amendment [to an agreement] thus fails to provide the continuing violation that could create or revive plaintiffs' cause of action"); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 229 (E.D.N.Y. 2003) (in a purchaser-plaintiff case, holding that "the performance of an allegedly anticompetitive, pre-existing contract is not a new predicate act.").

Since neither post-merger price changes nor contract renegotiations are anticompetitive overt acts, the statute of limitations was not restarted at any point after the January 1, 2000 Merger. Thus, all of Plaintiffs' claims expired on December 31, 2003, and have been time-barred ever since.

## IV.   Plaintiffs Cannot Rely Upon the February 10, 2004 FTC Proceeding to "Toll" or Suspend the Statute of Limitations.

Plaintiffs have also claimed that the 2004 FTC proceeding somehow suspended the statute of limitations. But the terms of the tolling statute show otherwise:

> Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws . . . the running of the statute of limitations . . . shall be suspended during the pendency thereof and for one year

> thereafter. Provided, however, [t]hat whenever the running of the statute of limitations . . . is suspended hereunder, ***any action to enforce such cause of action shall be forever barred unless commenced*** either within the period of suspension or ***within four years after the cause of action accrued***.

15 U.S.C. § 16(i) (emphasis added).[7] In other words, the tolling provision would apply in this case only if the FTC had filed its complaint during the four-year limitations period starting on January 1, 2000. But the FTC did not file its complaint until February 10, 2004, ***after*** the four-year statute had already expired on all of Plaintiffs' claims on December 31, 2003.

Nor can the FTC *investigation* of the Merger, which was opened in 2002, serve to suspend the statute of limitations. An investigation does not qualify as a "proceeding" to "prevent, restrain, or punish violations of any of the antitrust laws" as required by the statute. *See SCM Corp. v. Xerox Corp.* 463 F. Supp. 983, 987 n.7 (D. Conn 1978). A "suspension" can only occur with the filing of a complaint by the United States, which did not happen in this case until February 2004, after the limitations period had already expired.

## CONCLUSION

NorthShore respectfully submits that the Court should hold that (1) Plaintiffs' Section 7 Clayton Act claim accrued when the Merger was completed on January 1, 2000, (2) Plaintiffs' merger-based Section 2 Sherman Act claims accrued when the Merger was completed on January 1, 2000, and (3) neither the discovery rule nor the continuing-violations doctrine can save or extend Plaintiffs' claims. If this Court finds, contrary to NorthShore's arguments, that

---

[7] As a government agency with broad enforcement powers, the FTC is not bound by the four-year statute of limitations. *See* 15 U.S.C. § 15b (limiting the four-year statute of limitations to "any cause of action under section 15, 15a, or 15c of this title" where Sections 15, 15a, and 15c provide a right to recover for monetary damages and Section 15 is for private plaintiffs, 15a is for the United States, and Section 15c is for states attorneys general).

Plaintiffs' Section 2 claims are timely based on the holding in *Berkey*, NorthShore respectfully

requests that this Court enter judgment in favor of NorthShore on Plaintiffs' Section 7 claim.

Dated:  January 6, 2016                                 Respectfully submitted,

                                              **WINSTON & STRAWN LLP**

By:      /s/ David E. Dahlquist
         Duane M. Kelley
         David E. Dahlquist
         WINSTON & STRAWN LLP
         35 West Wacker Drive
         Chicago, IL  60601
         Tel: (312) 558-5600
         Fax: (312) 558-5700
         ddahlquist@winston.com

         *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I, David E. Dahlquist, an attorney, hereby certify that I caused a copy of the foregoing document to be served by electronic means on all Electronic Filing Users of record, this 6th day of January 2016, and that all parties required to be served have been served.

/s/ David E. Dahlquist   