UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **In re Evanston Northwestern Healthcare Corporation Antitrust Litigation** | Master File No. 07-CV-4446 |
| **This Document Relates To:** | **Judge Chang** |
| **All Actions** | |

### NORTHSHORE UNIVERSITY HEALTHSYSTEM'S MOTION FOR LEAVE TO SUBSTITUTE EXPERT WITNESS

Defendant NorthShore University HealthSystem ("NorthShore"), by and through its counsel, seeks leave to substitute a new expert witness for one of its expert witnesses, Dr. Robert D. Willig, who recently passed away. Further, NorthShore respectfully submits that the Court should defer setting a deadline for such substitution until the Court has ruled on the pending dispositive motions, as the Court's rulings on those motions may moot the relief sought in this motion.[1] Plaintiffs oppose this motion.[2]

### BACKGROUND

Dr. Willig was, before his passing, a nationally recognized expert on antitrust economics and its application to healthcare. NorthShore timely disclosed Dr. Willig's expert report on October 26, 2016 (*see* Dkt. 831), in which he rendered opinions on the economic impact of Evanston's January 2000 merger with Highland Park Hospital and reviewed and critiqued

---

[1] The pending motions are: NorthShore's Motion to Decertify the Class (Dkt. 896), NorthShore's Motion for Summary Judgment and Daubert Motions (Dkt. 898), and Plaintiffs' Motion for Summary Judgment and Motion to Exclude Expert Testimony (Dkt. 911).

[2] Counsel for Northshore (represented by Conor Reidy and Raiber Muhiddin) and counsel for plaintiff class (represented by Matthew Van Tine and Kate Boychuck) met and conferred via telephone on December 13, 2022. Despite good faith attempts to resolve differences, counsel were unable to reach an accord on this motion. We understand that Plaintiffs object to substitution to the extent that the substitute expert would not adopt Dr. Willig's report and testimony verbatim.

Plaintiffs' economic experts' analysis of impact and financial damages. *See* Dkt. 901 Ex. 87 (Dr. Willig Expert Report) at 2. Plaintiffs deposed Dr. Willig on January 12, 2017. On May 10, 2017, NorthShore filed motions for summary judgment, to decertify the class, and to exclude the testimony of Plaintiffs' experts, all supported in part by Dr. Willig's expert opinions. Plaintiffs opposed NorthShore's motions, cross-moved for summary judgment, and sought to exclude Dr. Willig's expert testimony. The parties completed briefing on these motions on August 1, 2017.

On March 31, 2018, the Court ruled that all of the class representatives were inadequate, but allowed Plaintiffs' counsel to move to substitute a class representative. Dkt. 989. On October 3, 2018, NorthShore renewed and supplemented its motion for summary judgment and to decertify the class, aimed solely at the new class representative. Dkt. 1021. On March 29, 2019, the Court issued a ruling that, among other things, denied NorthShore's supplemental motion and took NorthShore's original motions and Plaintiff's motions under advisement. Dkt. 1064. Those motions remain pending. Dkt. 1131.

On October 21, 2022, Dr. Willig passed away. NorthShore now moves to substitute an expert witness to testify to the same subject matter that Dr. Willig would have testified to.

## LEGAL STANDARDS

The Federal Rules of Civil Procedure do not expressly address the standard for substituting an expert after the deadline for expert disclosures. However, courts in this Circuit have analyzed such requests as "de facto attempt[s] to alter the scheduling order and enlarge the discovery period" under Rule 16. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 2016 U.S. Dist. LEXIS 59539, at *2 (N.D. Ill. May 5, 2016)[3]; *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, 2010

---

[3] Unless stated otherwise, internal citations, quotation marks, and brackets are omitted from case quotations, and any emphasis of quoted language is added.

U.S. Dist. LEXIS 103744, at *5 (N.D. Ind. Sep. 30, 2010) ("[i]n determining whether to allow a substitute expert, courts have frequently relied on Federal Rule of Civil Procedure 16(b)"). Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "When considering whether good cause exists, the primary consideration for districts courts is the diligence of the party seeking amendment." *Kaepplinger v. Michelotti*, 2021 U.S. Dist. LEXIS 118883, at *7 (N.D. Ill. June 25, 2021). Good cause includes when the moving party shows that "despite that party's diligence, the time table could not reasonably have been met." *Life Plans, Inc.*, 2016 U.S. Dist. LEXIS 59539, at *2.

Alternatively, some courts treat motions to substitute experts as untimely requests to modify the discovery schedule under Rules 26 and 37. *See Assaf v. Cottrell, Inc.*, 2012 U.S. Dist. LEXIS 9243, at *6 (N.D. Ill. Jan. 26, 2012); *cf. Kaepplinger*, 2021 U.S. Dist. LEXIS 118883, at *6–7 (collecting cases using these two approaches). Rule 26 requires parties to "disclose witnesses according to the pretrial schedule set out by the court." *Assaf*, 2012 U.S. Dist. LEXIS 9243, at *6. And Rule 37 provides that "[i]f a party fails to disclose information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In determining whether belated disclosure of an expert witness is substantially justified or harmless, "courts look at the following four factors: (1) the prejudice or surprise to the party against whom the [witness] is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the [witness] at an earlier date." *Stringer v. Cambria Fabshop - Indianapolis, LLC*, 2015 U.S. Dist. LEXIS 199385, at *4-5 (S.D. Ind. Oct. 2, 2015) (quoting *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th

3

Cir. 2012)); *see also Assaf*, 2012 U.S. Dist. LEXIS 9243, at *7-8 (same). In addition, courts consider "the effect that denial of the motion would have on the disposition of the case." *Kaepplinger*, 2021 U.S. Dist. LEXIS 118883, at *8.

In practice, courts have found that the good cause standard (Rule 16) and the substantial justification standard (Rules 26/37) are often "coexistent." *Kaepplinger*, 2021 U.S. Dist. LEXIS 118883, at *10; *J.F. v. Abbott Labs., Inc.*, 2017 U.S. Dist. LEXIS 37197, at *8–9 (S.D. Ill. Mar. 15, 2017) ("This Court need not determine whether the distinctions between Rule 16(b)(4) and Rule 37(c)(1) are ones of semantics or substance, because both the good cause and substantial justification standards are met by the facts before the Court."). Under both standards, courts nearly uniformly find that substitution for a deceased expert witness is appropriate. *See, e.g.*, *Shipp v. Arnold*, 2019 U.S. Dist. LEXIS 144977, at *4 (W.D. Ark. Aug. 27, 2019) ("[I]t is well settled that the death of an expert witness presents good cause to designate a substitute expert witness."); *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 20 (D.P.R. 2009) ("Death of an expert witness falls squarely within the category of circumstances that require a late disclosure.") ; *In re Northrop Grumman Corp. ERISA Litig.*, 2016 U.S. Dist. LEXIS 185126, at *7 (C.D. Cal. Apr. 7, 2016) (same).

## **ARGUMENT**

**I.    The Court should grant NorthShore leave to substitute a new expert witness in place of Dr. Willig**

The Court should grant NorthShore leave to disclose a substitute expert witness for Dr. Willig. Regardless of whether the good cause or substantial justification standard applies, Dr. Willig's recent death warrants substitution.

Under Rule 16, "it is well settled that the death of an expert witness presents good cause to designate a substitute expert witness." *Shipp v. Arnold*, 2019 U.S. Dist. LEXIS 144977, at *4; *see*

4

*also Life Plans, Inc.*, 2016 U.S. Dist. LEXIS 59539 (expert's death was good cause for substitution). NorthShore timely disclosed Dr. Willig in October 2016, relied on his opinions in the summary judgment and decertification briefing, and would have relied on his opinions at any trial in this matter. NorthShore would be substantially prejudiced if it is forced to proceed without its expert witness's opinions on critical issues in this case: the economic impact of Evanston's January 2000 merger with Highland Park Hospital and Plaintiffs' economic experts' analysis of purported impact and financial damages. Dr. Willig passed away years after NorthShore's disclosure, and NorthShore has acted diligently by promptly seeking leave to disclose a substitute witness. Good cause thus exists to permit the substitution under Rule 16. This alone is sufficient to warrant substitution. *See Shipp v. Arnold*, 2019 U.S. Dist. LEXIS 144977; *Life Plans, Inc.*, 2016 U.S. Dist. LEXIS 59539; *In re Northrop Grumman Corp. ERISA Litig.*, 2016 U.S. Dist. LEXIS 185126.

Substitution is also warranted under the substantial justification standard derived from Rules 26 and 37. *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 20 (D.P.R. 2009) ("Defendant's motion is supported by substantial justification. Death of an expert witness falls squarely within the category of circumstances that require a late disclosure; the only question regarding justification is whether the party waited too long to notify the Court of the need for a new expert."); *Baumann v. Am. Family Mut. Ins. Co.*, 278 F.R.D. 614, 615 (D. Colo. 2012) (same). The circumstances of Dr. Willig's passing satisfy all four factors weighed by courts to evaluate expert substitution under Rules 26 and Rule 37.

Under the first, second, and third factors, any prejudice to Plaintiffs resulting from substitution would be minimal and easily cured, and substitution would not disrupt trial. Indeed, no trial date or pre-trial schedule has been set. *See* Dkt. 1130 (denying plaintiff's motion to set

5

trial date without prejudice because "it is not all but certain that the case will go to trial (including getting past summary judgment motions and reasonably exhausting all settlement efforts)"). Thus, Plaintiffs would have time before trial to review the substitute expert's report and, if needed, conduct a deposition, thus curing any prejudice.[4] *See Morel*, 259 F.R.D. at 22. Further, "[t]o minimize prejudice to the opposing party, courts generally limit the scope of the testimony that may be given by the substitute expert." *Kaepplinger*, 2021 U.S. Dist. LEXIS 118883, at *18–19. Specifically, "a substitute expert's testimony and report are often restricted to the same subject matter as the prior expert." *Assaf*, 2012 U.S. Dist. LEXIS 9243, at *18. This being said, this Court has repeatedly stated that substitute experts are not required to adopt the words of the previous expert verbatim. *See Kaepplinger*, 2021 U.S. Dist. LEXIS 118883, at *20–21 ("Although courts generally restrict the substitute expert's testimony to the same subject matter as the original expert, the substitute is not normally required to simply adopt the prior expert's conclusions verbatim . . . ."); *Assaf*, 2012 U.S. Dist. LEXIS 9243, at *18 ("[T]he substituting expert may express his opinions in his own language rather than being limited to merely authenticating and confirming the prior expert's conclusions verbatim."). Further, delaying substitution of the expert witness until the Court decides the pending motions—as requested below—will further reduce any potential prejudice to Plaintiffs by avoiding any additional costs to depose a substitute witness until it is determined whether substitution is even required.

As to the fourth factor, there is no bad faith or willfulness in NorthShore's disclosure of a substitute expert. Dr. Willig recently passed away—nearly six years after the expert disclosure deadline—due to circumstances well beyond NorthShore's control.

---

[4] NorthShore would not object to making a substitute witness available for deposition, subject to the typical limits under the Federal Rules of Civil Procedure and other applicable rules.

Finally, denying NorthShore leave to substitute its expert would leave NorthShore unable to present key evidence showing that Plaintiffs cannot prove that Evanston acquired monopoly power via its merger with Highland Park Hospital. *See Kaepplinger*, 2021 U.S. Dist. LEXIS 118883, at *8 (considering "the effect that denial of the motion would have on the disposition of the case"). Dr. Willig was expected to testify at trial that the merger of Evanston and Highland Park Hospital was not anticompetitive and that post-merger market outcomes were consistent with the normal workings of a competitive market. *See* Dkt. 901 Ex. 87 (Dr. Willig Expert Report) at 3-4. He further was expected to rebut Plaintiffs' proffered experts (to the extent their testimony is not excluded) by testifying that Plaintiffs' experts' analyses of alleged anticompetitive harm and damages are flawed. *Id.* at 5-8. This factor strongly weighs in favor of substitution, as well.[5]

## II. The Court should defer setting a deadline to disclose a substitute expert until the pending dispositive motions are decided

The Court should defer setting a deadline to disclose a substitute expert until after it has ruled on the pending dispositive motions. NorthShore is currently looking for an appropriate substitute expert, but it filed this motion promptly to avoid any unreasonable delay in informing the Court of this development in the case. However, the Court can—and should—decide the pending motions based on Dr. Willig's report and deposition testimony.

---

[5] Nor would introducing excerpts from Dr. Willig's report and deposition testimony into evidence at trial be an adequate alternative to a substitute expert. Reading flat expert testimony into evidence at trial is an inadequate substitute for live expert testimony. *See, e.g.*, *Shipp v. Arnold*, 2019 U.S. Dist. LEXIS 144977, at *11 (rejecting the defendant's request to order the plaintiff to read deposition testimony rather than use a substitute witness because "the Court is mindful that oral testimony is preferred over the reading of a deposition transcript"). Moreover, reading Dr. Willig's report into the record would not allow NorthShore to present key rebuttal evidence given that Dr. Willig was not given the opportunity to respond to Plaintiffs' experts' reply reports, let alone any additional testimony Plaintiffs' experts may offer on the stand.

At summary judgment, courts generally may consider any evidence that would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2); *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017). Testimonial evidence may be presented and considered at summary judgment in the form of a declaration or deposition testimony. *See* Fed. R. Civ. P. 56(c)(4); *Baines*, 863 F.3d at 662; *Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 640 (N.D. Ill. 2012) ("In ruling on a motion for summary judgment, the Court only considers evidence that would be admissible at trial, except that depositions and affidavits are admissible on summary judgment."). For that reason, courts may consider expert reports at summary judgment "as evidence of what an expert's testimony would be at trial." *Ogborn v. United Food & Commer. Workers, Local No. 881*, 2000 U.S. Dist. LEXIS 14092, at *22 (N.D. Ill. Sep. 21, 2000).

Dr. Willig's death does not preclude the Court from considering his expert report at summary judgment. *See Hahn v. Walsh*, 915 F. Supp. 2d 925 (C.D. Ill. 2013); *cf. Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 604–05 (7th Cir. 2000). In *Hahn*, the defendant's expert died while defendant's summary judgment motion was pending. The court rejected the plaintiff's argument that the expert report "cannot be considered in ruling on the Motions for Summary Judgment," ruling that "the Seventh Circuit decided the precise issue raised by Plaintiffs." *Hahn*, 915 F. Supp. 2d at 945. The court explained that, in *Oto*, the Seventh Circuit "concluded that the district court could properly consider an affidavit submitted in support of a motion for summary judgment even though the affiant had died and was not available to testify at trial." *Id.* (citing *Oto*, 224 F.3d at 604–05). The court in *Hahn* considered the report of the deceased expert and granted the defendant's motion for summary judgement. *Id.* at 945, 958.

Because the Court can decide the pending dispositive motions based on Dr. Willig's report and deposition testimony, the Court should defer setting a deadline to substitute an expert for Dr.

8

Willig until after it has decided the pending motions. If the Court grants NorthShore's motion for summary judgement, this motion will be moot, and the parties would be spared the significant time and expense that accompanies the disclosure of a substitute expert, the preparation of an expert report, and, if needed, the deposition of the substitute expert. If the case proceeds to trial, the Court can issue a pre-trial schedule accounting for the time necessary to disclose the substitute expert's report and, if needed, conduct a deposition. On the other hand, if a substitute expert is chosen before pending dispositive motions are resolved, Northshore would likely need to amend its Motion for Summary Judgement, its Motion to Decertify the Class, and its Daubert Motion to account for the new report and likely deposition testimony.[6]

## CONCLUSION

For the foregoing reasons, NorthShore respectfully requests that the Court: (1) grant it leave to disclose a substitute expert in place of Dr. Willig, and (2) defer setting any deadline to substitute a substitute expert witness until after the pending dispositive motions are ruled on.

Dated: December 15, 2022
                                                                                        Respectfully submitted,

                                                                                       **WINSTON & STRAWN LLP**

                                                                                       By: /s/ Conor A. Reidy
Conor A. Reidy
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
creidy@winston.com

*Counsel for Defendant NorthShore University HealthSystem*

---

[6] If the Court rules on pending dispositive motions before NorthShore selects a substitute expert, NorthShore does not anticipate that the substitution would require any further summary judgment or class decertification motions or briefing.

## CERTIFICATE OF SERVICE

I, Conor A. Reidy, an attorney, certify that I caused a copy of the foregoing document to be served by electronic means on all Electronic Filing Users of record, this 15th day of December, 2022, and that all parties required to be served have been served.

/s/ Conor A. Reidy