# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE NORTHSHORE UNIVERSITY HEALTHSYSTEM ANTITRUST LITIGATION | ) ) ) ) | No. 07 C 4446<br><br>Judge Edmond E. Chang |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into as of December 13, 2023, by and between NorthShore University HealthSystem ("NorthShore") and David Freedman (the "Class Representative"), individually and on behalf of a class of purchasers of hospital services from NorthShore as defined below (the "Plaintiff Class" or "Class") in *In re NorthShore University HealthSystem Antitrust Litigation*, No. 7 C 4446 (N.D. Ill) (the "Action"). This Settlement Agreement is intended to, and upon occurrence of the Effective Date (as defined in Paragraph 4 below) will fully, finally, and forever resolve, compromise, discharge, and settle all of the claims of the Class in the above-captioned litigation, subject to the terms and conditions set forth herein (the "Settlement").

WHEREAS, the extant complaint in the Action contains allegations, *inter alia*, that NorthShore violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18, by engaging in anticompetitive conduct relating to the pricing of hospital services at Evanston Hospital, Highland Park Hospital, and Glenbrook Hospital;

WHEREAS, the Court certified a Class on December 10, 2013, ECF No. 587, as subsequently modified by the Court, ECF No. 842 at 37; ECF No. 989 at 10;

WHEREAS, NorthShore denies each and every one of the allegations in this Action, has not conceded or admitted any liability, has not conceded or admitted the propriety of certification of any class in this Action for any purposes other than settlement, that any conduct challenged by

1

Plaintiff and the Class caused any damage whatsoever, and has asserted a number of defenses to the claims in this Action;

WHEREAS, the Class and NorthShore (collectively, the "Parties") have concluded, after extensive discovery and investigation of the facts and after fully preparing for trial, and after carefully considering the circumstances of the Action, including the claims asserted in said Action, and the possible and asserted legal and factual defenses thereto, that it would be in the best interests of the Parties to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, trial, and appeal, of particularly complex litigation such as this, and that the Parties consider the Settlement set forth in this Settlement Agreement to be fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23; and

WHEREAS, Lead Counsel, Marvin Miller of Miller Law LLC, on behalf of the Class, and counsel for NorthShore have engaged in arm's-length settlement negotiations, including with the assistance of a former United States District Court Judge who served as a mediator, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between the Class and NorthShore.

NOW THEREFORE, it is agreed by the undersigned, on behalf of the Class, on the one hand, and NorthShore, on the other hand, all claims of the Class be settled, compromised and dismissed with prejudice as to NorthShore (and, except as hereinafter provided, without costs as to the Class or NorthShore), subject to Court approval with respect to the following Class:

All persons or entities in the United States of America and Puerto Rico, except those who solely paid fixed amount co-pays, uninsureds who did not pay their bill, Medicaid and Traditional Medicare patients, governmental entities, defendant, other providers of healthcare services, and the present and former parents,

2

predecessors, subsidiaries and affiliates of defendant and other providers of healthcare services who purchased or paid for inpatient hospital services directly from NorthShore University HealthSystem (formerly known as Evanston Northwestern Healthcare), its wholly-owned hospitals, predecessors, subsidiaries, or affiliates other than those acquired as a result of the merger with Rush North Shore Medical Center from February 10, 2000 to December 31, 2015.

1. **Reasonable Best Efforts to Effectuate This Settlement**. Lead Counsel for the Class and NorthShore agree to recommend approval of this Settlement Agreement to the Court and to undertake their reasonable best efforts, including undertaking all actions contemplated by and steps necessary to effectuate this Settlement Agreement, to carry out the terms of this Settlement Agreement, and to secure the prompt, complete, and final dismissal with prejudice of all claims in the Action. This includes NorthShore serving notice, at its expense, on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

2. **Motion for Preliminary Approval of the Settlement**. The Class shall submit to the Court a motion (the "Motion") requesting entry of an order preliminarily approving the Settlement and authorizing dissemination of notice to the Class (the "Preliminary Approval Order") substantially in the form of Exhibit A hereto. NorthShore shall recommend preliminary approval of the Settlement. The Motion shall:

    a.    request preliminary approval of the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23, and in the best interests of the Class;

    b.    seek appointment of a notice administrator;

    c.    seek appointment of an Escrow Agent (as defined in Paragraph 5 below);

3

d.      request a stay of all proceedings against NorthShore in the Action, except those proceedings provided for or required by this Settlement Agreement;

e.      seek approval for class notice by means of notice(s) substantially in the form attached hereto as Exhibit B; and

f.      include a proposed form of order, which includes such provisions as are typical in such orders, including a finding that the proposed plan of notice complies with Rule 23 and the requirements of due process, and a provision that, if final approval of the Settlement is not obtained, the Settlement is null and void and the Parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses as of the date immediately prior to the execution of this Settlement Agreement.

3.      **Motion for Final Approval and Entry of Final Judgment**. If the Court preliminarily approves this Settlement Agreement, the Class shall submit a motion for final approval by the Court of this Settlement Agreement ("Final Approval Motion") after notice pursuant to the Preliminary Approval Order has been disseminated to the Class. NorthShore shall recommend final approval of the Settlement pursuant to (a) – (d) and (i) below, but shall not take any position regarding (e) or (f) below. The Final Approval Motion shall be submitted to the Court within twenty-one days after the Court-ordered deadline by which members of the Class may object to the Settlement, and shall seek entry of a Final Order and Judgment ("Final Approval Order") substantially in the form attached hereto as Exhibit C, including:

a.      finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Plaintiff and the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

4

b.      finding that Plaintiff and all members of the Class shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement;

c.      finding that the notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

d.      incorporating the releases set forth in Paragraph 10 of this Settlement Agreement, and forever barring the Releasors (as defined in Paragraph 10 below) from asserting any Released Claims (as defined in Paragraph 10 below) against any of the Releasees (as defined in Paragraph 10 below);

e.      providing for the payment of reasonable attorneys' fees and reimbursement of expenses, if any, solely from a settlement fund underwritten by the Settlement Amount (the "Settlement Fund");

f.      providing for payment solely from the Settlement Fund of any incentive award to the Class Representative in addition to whatever monies each will receive from the Settlement Fund pursuant to court order;

g.      directing that the Action be dismissed with prejudice as to NorthShore without costs or attorneys' fees recoverable under 15 U.S.C. § 15(a);

h.      retaining exclusive jurisdiction over the Settlement and the Settlement Agreement, including the administration and consummation of the Settlement; and

i.      directing that a Final Order and Judgment be entered which dismisses with prejudice the claims asserted in the Action.

**4.      Finality of Settlement**. This Settlement Agreement shall become final upon the occurrence of all of the following (the "Effective Date"):

a.     The Settlement is not terminated pursuant to Paragraph 12 below;

b.     The Settlement and this Settlement Agreement are approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

c.     The Court enters the Final Approval Order entering a Final Order and Judgment which dismisses the Action with prejudice; and

d.     The time for appeal from the Court's signing of the Final Order and Judgment has expired or, if the Final Order and Judgment is appealed, (i) it has been resolved by agreement and withdrawn by the appealing party, (ii) it has been affirmed in its entirety by the court of last resort to which an appeal of such Final Order and Judgment may be taken, (iii) the Final Order and Judgment is modified (except a modification or reversal on appeal of any amount of the attorneys' fees, reimbursement of expenses, and/or incentive award that does not have the effect of increasing NorthShore's financial obligation under this Agreement) and the Parties agree to the modifications, withdraw any pending appeals, and such document is finally entered. If there are no objections to the Settlement, then the Effective Date shall be the date of the Court's entering of the Final Order and Judgment.

5.     **Settlement Payments**. NorthShore shall pay a total settlement amount of Fifty-Five Million Dollars ($55,000,000) (the "Settlement Amount") into an escrow account (the "Escrow Account") held and administered by Valley National Bank (the "Escrow Agent"), as set forth below, as follows:

a.     By December 15, 2023, Lead Counsel will cause the Escrow Agent to furnish to NorthShore's counsel adequate payment instructions, consisting of wire transfer instructions, instructions for payment by check, and a completed IRS Form W-9, including an address and tax

6

ID number. NorthShore shall deposit into an interest-bearing escrow account ("Escrow Account"), established by Lead Counsel, the Settlement Amount not later than January 2, 2024.

b.    Once a Preliminary Approval Order is entered, subject to the terms and conditions of this Settlement Agreement and the escrow agreement executed by Lead Counsel (the "Escrow Agreement"), after receipt of wire transfer instructions and bank verification documentation necessary to make the wire transfer, whichever is later, up to One Million Dollars ($1,000,000) may be withdrawn from the Escrow Account without prior Court approval for the purpose of providing notice to the Class and for notice-related expenses incurred by the Notice and Claims Administrator. Any monies used or expenses incurred from the settlement amount for notice and administration (including contracting with outside vendors for this work) ("Notice Expenses") will not be reimbursed to NorthShore; provided, however, that if the Settlement Agreement is terminated pursuant to Paragraph 12, Lead Counsel shall reimburse NorthShore for half of the Notice Expenses. If payment is due on a Saturday, Sunday, or a federal holiday, the payment shall be due on the next business day.

c.    NorthShore shall not pay any amount in excess of the Settlement Amount at any time, whether for incentive or service awards if any, taxes, wire transfer fees or bank fees of any kind associated with the wire transfer of funds, interest, notice, administration, costs, attorneys' fees, or otherwise, into the Escrow Account. The total consideration that NorthShore will pay for this Settlement shall be the Settlement Amount only.

**6.    The Settlement Fund**.

a.    The Escrow Account is to be administered under the Court's continuing supervision and control. The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in instruments backed by the full faith and credit of the United States Government or fully

insured in writing by the United States Government or an agency thereof, or money market funds rated Aaa and AAA respectively by Moody's Investor Services and Standard and Poor's invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court. After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan or formula of allocation of the Settlement Fund (the "Plan of Allocation"). NorthShore will take no position with respect to such proposed Plan of Allocation or such plan to be proposed by the Court. NorthShore will have no involvement in the selection of the Notice and Claims Administrator and claims process. It is understood and agreed by the Parties that any Plan of Allocation is not a part of this Settlement Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Settlement Agreement, and any order or proceedings solely relating to the Plan of Allocation shall not operate to terminate or cancel this Settlement Agreement or affect the finality of the judgment, the Final Order and Judgment, or any other orders entered pursuant to this Settlement Agreement.

b.      After making the payments described in Paragraph 5 above, NorthShore shall have no responsibility whatsoever for the allocation or distribution of the Settlement Fund and shall not be responsible for any disputes relating to the amount, allocation, or distribution of any fees, costs, or awards. Further, after making the payments described in Paragraph 5 above, NorthShore shall not be liable for any additional payments to the Settlement Fund, the Escrow Account, or to

Plaintiff, the Class, or Lead Counsel, his partners, associates, and staff at Miller Law LLC, and any co-counsel, vendor, contractor, or other third party working on behalf of the legal team for the Class ("Plaintiffs' Counsel") or any other former counsel for the Class for any reason. Liability for additional payments, if any, to Plaintiff, the Class, or Plaintiffs' Counsel pursuant to this Settlement Agreement shall be the sole responsibility of Lead Counsel.

     c.    Plaintiff and Lead Counsel shall be reimbursed and indemnified for all expenses solely out of the Settlement Fund. After payment of the Settlement Amount, NorthShore shall not be liable for any costs, attorneys' fees, other fees, or expenses of any of the Class's respective current or former attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses approved by the Court shall be paid out of the Settlement Fund.

     d.    The "Net Settlement Fund" shall be the Settlement Fund, reduced by the sum of the following amounts: (1) the costs of notice and the costs of administering the Settlement; (2) any costs, attorneys' fees, other fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives; and (3) any incentive award approved by the Court. After the payments set forth above, the Net Settlement Fund will be distributed to eligible members of the Class pursuant to a Court-approved Plan of Allocation and no residual or undistributed amounts will be returned to NorthShore or any related affiliate or foundation but will be paid to a *cy pres* beneficiary approved by the Court.

     e.    To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

7.    **No Injunctive Relief**. This Settlement Agreement does not include any provisions for injunctive relief, and Plaintiff and the Class are not seeking any injunctive relief against NorthShore.

8.    **Full Satisfaction; Limitation of Interest and Liability**. Plaintiff and members of the Class, shall look solely to the Settlement Fund for settlement and satisfaction of all claims that are released hereunder, including any costs, fees, or expenses of any member of the Class or their attorneys, experts, advisors, agents, and representatives, including with respect to the negotiation, execution, and performance of their obligations under this Settlement Agreement. In the event that the Settlement becomes final pursuant to Paragraph 4 above, the Settlement Fund will satisfy any and all Released Claims. Except as provided by order of the Court, no member of the Class shall have any interest in the Settlement Fund or any portion thereof. NorthShore shall have no liability with respect to disbursements from the Settlement Fund pursuant to any Court-approved Plan of Allocation.

9.    **Attorneys' Fees, Expenses and Costs**.

a.    Lead Counsel intends to seek, solely from the Settlement Fund, attorneys' fees (including any interest accrued thereon), up to one third (1/3) of the Settlement Fund plus reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, and incentive award to the Class Representative. Lead Counsel may file a motion for approval of the attorneys' fees, reimbursement of expenses, and incentive award after the Court has granted preliminary approval to the Settlement but sufficiently before the Court's final fairness hearing on the Settlement. NorthShore agrees not to take any position with respect to such motion. NorthShore also agrees not to take any position with respect to the allocation among the various counsel for the Class that have participated in this litigation. In no event shall any attorneys' fees,

10

reimbursement of expenses, or incentive award be paid before the Effective Date. Plaintiff, the members of the Class, and counsel shall not seek payment of any attorneys' fees, expenses, costs, or service awards from NorthShore in this Action, or in any other action related to the Released Claims, from any source other than the Settlement Fund.

b.      The procedures for and the allowance or disallowance by the Court of the application by Lead Counsel for attorneys' fees, reimbursement of expenses, and/or incentive award to be paid out of the Settlement Fund are not part of this Settlement Agreement. Notwithstanding any right of termination in Paragraph 12, any order or proceeding relating solely to the application by Lead Counsel for any award of attorneys' fees, reimbursement of expenses, and incentive award, or any appeal from any such order, shall not operate or provide a basis to terminate or cancel this Settlement Agreement.

c.      If the Court's award of such fees and expenses is reduced subsequent to the disbursement of any attorneys' fees, reimbursement of expenses, and/or incentive award, Lead Counsel shall, within ten (10) business days after receiving written notice from the Court, refund to the Escrow Account the amount of any such reduction in attorneys' fees, reimbursement of expenses, and/or incentive award with interest. The interest rate applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be the same interest rate earned by the Settlement Fund during the period between the disbursement of any attorneys' fees, reimbursement of expenses, and/or incentive award and any refund required by this Paragraph. The amount deposited into the Escrow Account shall be solely for the benefit of the Class and shall be included in the Settlement Fund and be distributed according to the Plan of Allocation.

d.      If the Court's award of such fees, expenses, and/or incentive is vacated or reversed, subsequent to the disbursement of any attorneys' fees, reimbursement of expenses, and/or incentive

11

award, Lead Counsel shall within ten (10) business days after receiving written notice from the Court or from NorthShore of such vacatur or reversal refund to the Escrow Account the amounts of any such attorneys' fees, reimbursement of expenses, and/or incentive award with earned and paid interest, and further provided that if the Settlement Agreement is terminated pursuant to Paragraph 12 below, Lead Counsel shall within ten (10) business days after giving notice to or receiving notice from NorthShore of such termination, refund to the Escrow Account the amounts of any such attorneys' fees, reimbursement of expenses, and/or incentive award with earned and paid interest. The interest rate applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be the same interest rate earned by the Settlement Fund during the period between the disbursement of any attorneys' fees, reimbursement of expenses, and/or incentive award and any refund required by this Paragraph.

10. **Releases and Covenants**.

a. Upon the Effective Date and in consideration of payment of the Settlement Amount specified in Paragraph 5 above, Plaintiff and all members of the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, on behalf of themselves and their respective past, present, and future, direct and indirect, parents, members, subsidiaries, associates, affiliates, affiliated partnerships, joint ventures, joint venturers, officers, directors, management, supervisory boards, employees, insurers, general or limited partners, divisions, agents, independent contractors, consultants, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives, fiduciaries (and their past and present officers, directors, employees, agents, independent contractors, consultants, attorneys, servants, representatives, and fiduciaries), and their trustees, predecessors, successors, heirs, executors, administrators, representatives, and assigns (collectively, the "Releasors"), hereby release and

12

forever discharge NorthShore (including any and all of its past, present, and future, direct and indirect, parents, subsidiaries, affiliates, affiliated partnerships, joint ventures, and joint venturers) and its officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, independent contractors, consultants, attorneys, servants, trustees, heirs, executors, administrators, representatives, fiduciaries (and its, direct and indirect, parents', subsidiaries', affiliates', affiliated partnerships', and joint ventures' past, present, and future officers, directors, employees, agents, independent contractors, consultants, attorneys, servants, representatives, and fiduciaries), and the predecessors, successors, heirs, executors, administrators and representatives and assigns of each of the foregoing (collectively, the "Releasees") from all manner (including past, present, and future) of claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, rights, setoffs, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, recognized now or hereafter, existing or preexisting, pursuant to any theory of recovery recognized or available now or hereafter (including, but not limited to, those based in contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or regulation), contingent or non-contingent, in law or equity, that arise out of or relate, in whole or in part, to: (a) the acts or omissions alleged in the Action and/or (b) any acts or omissions that could give rise to claims under federal or state antitrust law; and/or (c) were or could have been asserted in the Action (collectively, the "Released Claims"). For the avoidance of doubt, "Released Claims" includes all claims that have been asserted, or could have been asserted, in the Action, including all claims in any way arising out of or relating to the merger of Evanston Northwestern Healthcare Corporation and Highland Park Hospital and Lakeland Health Services, Inc., and the purchase of hospital services from NorthShore. "Released Claims" does not

13

include individual claims unrelated to the merger or antitrust Action such as individual personal injury, medical malpractice, contract claims, or any claim not related to the Class.claims. All Released Claims are released and discharged to the fullest extent permitted by law, including for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

b.     After entering into this Settlement, Plaintiff and members of the Class may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the claims released by this Settlement, but they intend to release fully, finally, and forever any and all such claims. Plaintiff and members of the Class expressly agree that, upon the Effective Date, they waive and forever release any and all provisions, rights, and benefits conferred by (1) Section 1542 of the California Civil Code, which reads:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party,

or (2) any similar, comparable, or equivalent provision of the law of any other state or territory of the United States or other jurisdiction or principle of common law, which claims are hereby expressly incorporated into the definition of Released Claims.

c.     Releasors hereby covenant and agree, to the fullest extent permitted by law, not to sue or otherwise seek to establish liability against the Releasees on behalf of themselves or any other person, entity, or class thereof, with respect to any such Released Claims. Releasors shall be

permanently barred and enjoined from instituting, commencing, or prosecuting against the Releasees any Released Claims or claims related to the Released Claims. The Parties contemplate and agree that this Settlement Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of any Releasors with respect to the Released Claims.

11. **Prohibition of Sanctions Motions**. The Parties and their counsel shall not make any applications for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure or other court rule or statute, with respect to any claims or defenses in this Action. While retaining their right to deny liability, NorthShore will agree that this Action was filed and prosecuted in good faith and with an adequate basis in fact, was not frivolous, and is being settled voluntarily by NorthShore after consultation with competent legal counsel.

12. **Termination**.

a. NorthShore shall have the option to terminate the Settlement and NorthShore have the right to have the Settlement Amount refunded, if (i) the Court declines to grant final approval of the Settlement; or (ii) the Court enters the Final Approval Order and appellate review is sought, and on such review, the Final Approval Order and corresponding judgment are set aside or affirmed with material modification.

b. For the avoidance of doubt, any order of the Court that: (i) materially narrows or does not approve the scope of the release and covenant not to sue set forth in Paragraph 10; (ii) purports to impose additional material obligations on NorthShore; or (iii) declines to enter a Final Approval Order that materially meets the requirements set forth in Paragraph 4 of this Settlement Agreement, or any order on review or appeal that would have the foregoing effects, constitutes a

failure to grant final approval of this Settlement Agreement and confers on NorthShore the right to terminate provided by this Paragraph.

c.     If for any reason the Settlement does not become final in accordance with the terms of Paragraph 4 of this Settlement Agreement, then: (i) this Settlement Agreement shall be of no force or effect; (ii) all funds paid by NorthShore into the Settlement Fund, plus interest (net of any taxes paid on such interest) shall be returned to NorthShore as set forth in Paragraph 14; (iii) any release pursuant to Paragraph 10 above shall be of no force or effect; and (iv) the Parties agree, subject to the Court's approval, that litigation of the Action by Plaintiff and the Class will resume, in a reasonable manner and on a reasonable timetable to be approved by the Court. In addition, Plaintiff and the Class shall indemnify NorthShore and hold NorthShore whole if the Escrow Agent does not return all funds paid by NorthShore into the Settlement Fund, plus interest (net of any taxes paid on such interest) pursuant to this Paragraph and Paragraph 14.

d.     A modification or reversal on appeal of any amount of the attorneys' fees, reimbursement of expenses, and/or incentive award shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such Final Approval Order and shall not give rise to any right of termination.

**13.     Post-Termination Litigation**. In the event of termination of the settlement as provided for in the Settlement Agreement, the Parties shall revert to their respective statuses as of the date and time immediately prior to execution of the Settlement Agreement.

**14.     Reimbursement of the Settlement Fund Upon Termination**. If this Settlement Agreement is terminated pursuant to the provisions of Paragraph 12 above, the Escrow Agent shall return any amounts paid by NorthShore into the Settlement Fund—including any attorneys' fees, reimbursement of expenses, or incentive award and any interest earned, but excluding half of the

Notice Expenses as provided in Paragraph 5(b)—to NorthShore. Subject only to expiration of any time deposit investment(s) not to exceed ninety (90) days, the Escrow Agent shall disburse the Net Settlement Fund to NorthShore in accordance with this Paragraph within fifteen (15) business days after receipt of either: (i) written notice signed by NorthShore's counsel stating that this Settlement Agreement has been terminated; or (ii) any order of the Court so directing. Any remaining portion of the Net Settlement Fund invested in time deposits not to exceed ninety (90) days shall be disbursed within ten (10) days after the expiration of such investments. If the Settlement Agreement is terminated pursuant to Paragraph 12 above, any obligations pursuant to this Settlement Agreement (other than disbursement of the Net Settlement Fund to NorthShore as set forth above) shall cease immediately and the releases set forth in Paragraph 10 shall be null and void.

15. **Preservation of Rights**. The Parties hereto agree that this Settlement Agreement, whether it becomes final or not, and any and all negotiations, documents, and discussions associated with it shall be without prejudice to the rights of any party (except to the extent provided herein), shall not be deemed or construed to be an admission or evidence of any violation of any statute or law (or lack thereof), of any liability or wrongdoing by NorthShore (or lack thereof), or of the truth (or lack thereof) of any of the claims or allegations contained in the Consolidated Class Action Complaint and Demand for Jury Trial Complaint or any other pleading or document, and evidence thereof shall not be discoverable or used directly or indirectly, in any way (other than to effectuate or enforce the terms of this Settlement Agreement), whether in the Action or in any other action of proceeding. Neither this Settlement Agreement, nor any terms and provisions, nor any of the negotiations or proceedings connected with it, nor any action taken to carry out this Settlement Agreement shall be referred to, offered into evidence or received in evidence in any pending or

future civil, criminal, or administrative action or proceeding, except in a proceeding to enforce this Settlement Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law. The Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement. Upon the Settlement becoming final, nothing in this Paragraph shall prevent NorthShore from asserting any release or using this Settlement Agreement to offset any liability to any other parties.

16. **Taxes**. The Parties intend that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund. Lead Counsel shall be solely responsible for directing the Escrow Agent to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Lead Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund. Lead Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow Account customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this Paragraph. NorthShore shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund, and shall have no responsibility to pay taxes on any income earned by the Settlement Fund, or to pay taxes with respect thereto unless the Settlement is not consummated and the Settlement Fund or the Net Settlement Fund is returned to NorthShore. Other than as specifically set forth herein, NorthShore shall have no responsibility for the payment of taxes or tax-related expenses. If, for any reason, NorthShore is required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from NorthShore with

notice to Lead Counsel, timely pay to NorthShore sufficient monies from the Settlement Fund to enable it to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

  a.  For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Notice and Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B- 2(1)).

  b.  The Parties and their counsel shall treat, and shall at all times cause the Escrow Agent to treat, the Settlement Fund as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the Parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1G) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

  No portion of the settlement payment shall constitute, or shall be construed as constituting, a payment in lieu of treble damages, fines, penalties, punitive damages, or forfeitures.

17.    **Cooperation**. In order to provide notice to the Class and to achieve preliminary and final approval of the Settlement and to facilitate claims procedures, subject to Court approval and order, NorthShore shall use reasonable efforts within seven (7) days after such Court order, supply Lead Counsel at NorthShore's expense the following information for purchasers of inpatient hospital services during the Class Period from February 10, 2000 through December 31, 2015, to the extent such information is known to NorthShore:

Date of service, Patient Name, Patient ID number, Patient Address, Patient Social Security Number, Patient email address, Insurer name, Insurer address, Total claim amount, Patient Claim amount, Insurer claim amount

The data should be provided in Microsoft Excel, ASCII flat file pipe "|", tab-delimited, or fixed-width format.

For the avoidance of doubt, nothing in this agreement shall require NorthShore to obtain such information from any third party, nor to produce information in violation of any law, including the Health Insurance Portability and Accountability Act. Plaintiffs and the Notice and Claims Administrator will protect the data in accordance with the protective orders entered in this case, except to the extent modified by the Court's preliminary approval order's notice requirements.

18.    **Binding Effect**.

a.    This Settlement Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and to the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiff and Lead Counsel shall, upon occurrence of the Effective Date, be binding upon all members of the Class, Releasors, and their respective successors and assigns.

b.    With respect to any member of the Class who requested exclusion from the Class and is therefore not a member, NorthShore reserves all of its legal rights and defenses.

20

19.     **Integrated Agreement**. This Settlement Agreement, together with the schedules and exhibits hereto and the documents incorporated herein by reference, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties hereto with respect to the transactions contemplated by this Settlement Agreement, and supersedes all prior agreements or understandings, whether written or oral, between or among any of the Parties hereto with respect to the subject matter hereof. This Settlement Agreement shall not be modified in any respect except by a writing executed by all of the Parties hereto.

20.     **Headings**. The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

21.     **No Party Is the Drafter**. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

22.     **Choice of Law**. All terms of this Settlement Agreement shall be governed by Illinois law.

23.     **Consent to Jurisdiction**. NorthShore, Plaintiff, and each member of the Class hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division, for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. Nothing in this paragraph shall prohibit: (a) the assertion in any forum in which

a claim is brought that any release herein is a defense, in whole or in part, to such claim; or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

24. **Representations and Warranties**. Each Party hereto represents and warrants to each other Party hereto that it has the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

25. **No Admission**. Nothing in this Settlement Agreement, nor in any document related to this Settlement Agreement, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement, shall be construed as an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal, or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by NorthShore, including, without limitation, that NorthShore have engaged in any conduct or practices that violate any statute or other law.

26. **Notice**. Notice to the Parties pursuant to this Settlement Agreement shall be sent by United States mail or overnight courier, and electronic mail.

If directed to Plaintiff, the Class, or Lead Counsel for the Plaintiff and the Class, address notice to:

Marvin A. Miller
Miller Law LLC
65 W. Jackson Blvd.
Box 225
Chicago, IL 60604

If directed to NorthShore, address notice to:

Dan K. Webb
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

Any of the Parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner hereinabove provided, ten (10) calendar days before the change is effective.

27. **Execution in Counterparts**. This Settlement Agreement may be executed in counterparts, and a facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

28. **Confidentiality and No Press Release**. The Parties and their respective counsel shall not disparage any of the other Parties and shall not issue at any time any press release regarding this Settlement unless and only to the extent agreed to by all Parties. This Settlement Agreement and its terms shall remain confidential until the Motion is filed with the Court. Before the filing of that Motion, Lead Counsel and Northshore's counsel may disclose this Settlement Agreement and its terms only to their respective clients and their respective experts, accountants, auditors, and banks who will also maintain the confidentiality of this Settlement Agreement and its terms. Nothing in this Settlement Agreement shall be construed to limit NorthShore's ability to make such disclosures regarding the Settlement as it believes are required or advisable under the laws and disclosure requirements applicable to it.

IN WITNESS WHEREOF, the Parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of December 13 , 2023.

Marvin A. Miller
Miller Law LLC
65 W. Jackson Blvd.
Box 225
Chicago, IL 60604

Dan K. Webb
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

***Lead Class Counsel***

***Counsel for Defendant NorthShore
HealthSystem***

24

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE NORTHSHORE UNIVERSITY | ) | No. 07 C 4446 |
| HEALTHSYSTEM ANTITRUST | ) | |
| LITIGATION | ) | Judge Edmond E. Chang |

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT
AND PROVIDING FOR NOTICE OF SETTLEMENT**

This Court, having reviewed and considered the executed Settlement Agreement between David Freedman and the Class (collectively, "Plaintiffs") and NorthShore University HealthSystem ("NorthShore") dated December __, 2023, and Plaintiff's Motion for Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class, and Proposed Schedule for a Fairness Hearing, ORDERS:

1.      The Settlement is preliminarily approved, subject to further consideration at the Fairness Hearing described below.

2.      Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, the Court certifies the following Plaintiff Class:

All persons or entities in the United States of America and Puerto Rico, except those who solely paid fixed amount co-pays, uninsureds who did not pay their bill, Medicaid and Traditional Medicare patients, governmental entities, defendant, other providers of healthcare services, and the present and former parents, predecessors, subsidiaries and affiliates of defendant and other providers of healthcare services who purchased or paid for inpatient hospital services directly from NorthShore University HealthSystem (formerly known as Evanston Northwestern Healthcare), its wholly-owned hospitals, predecessors, subsidiaries,

or affiliates other than those acquired as a result of the merger with Rush North Shore Medical Center from February 10, 2000 to December 31, 2015.

3. Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to those terms in the Settlement Agreement.

4. The Court previously appointed Marvin Miller of Miller Law LLC and Mary Jane Fait as co-lead counsel. Ms. Fait withdrew her appearance and Marvin Miller is the sole Lead Counsel for the Class.

5. The Fairness Hearing shall be held before this Court on _____, 2024, at _____, before the Honorable Edmond E. Chang, in Courtroom _____ of the United States District Court for the Northern District of Illinois, Eastern Division, to determine: ( i ) whether the terms and conditions provided for in the proposed Settlement Agreement and are fair, reasonable, and adequate to the Class and should be finally approved by the Court; (ii) whether a Final Order and Judgment, Exhibit C to the Settlement Agreement, which, *inter alia*, dismisses the Action in its entirety with prejudice and contains releases, should be entered; (iii) whether the proposed Plan of Allocation should be approved; (iv) the amount of reasonable attorneys' fees, costs, and expenses, if any, that should be awarded to Plaintiffs' Counsel; and (v) the amount of a reasonable incentive award, if any, that should be awarded to the Class Representative.

**Preliminary Approval of the Settlement Agreement**

6. The Court finds that the proposed Settlement, which includes a cash payment from NorthShore that totals Fifty-Five Million Dollars ($55,000,000) (the "Settlement Fund"), to be deposited into an escrow account for the benefit of the Class, in

exchange for, *inter alia*, dismissal of the litigation between the Class and NorthShore with prejudice and release and discharge of the Released Claims, as set forth in the Settlement Agreement, and which was arrived at by arm's-length negotiations by highly experienced counsel after formal and informal mediations and years of litigation, falls within the range of possibly approvable settlements. The proposed Settlement is, therefore, hereby preliminarily approved, subject to further consideration at the Fairness Hearing.

**Approval of the Notice Plan**

7.      Members of the Class have previously been given notice of the pendency of the litigation and the opportunity to exclude themselves from the Class. Six Hundred Fifty-Eight (658) members of the Class ultimately requested exclusion. The Court finds that the prior notice of class certification to the Class satisfied the requirements of Rule 23 and due process, and because the prior notice to the Class provided an opt-out period that closed on February 3, 2015, there is no need for an additional opt-out period for those who previously opted out of the Class pursuant to Fed. R. Civ. P. 23(e)(4). The Court approves, as to form and content, the notice plan ("Notice Plan") and exhibits attached to the Declaration of Elaine Pang, and finds that the direct mailing and email distribution of the Postcard Notice and publishing of the Summary Notice substantially in the manner and form set forth therein meet the requirements of Federal Rule of Civil Procedure 23 and due process, and constitute the best notice practicable under the circumstances and shall constitute due and sufficient notice to all entitled to be noticed.

8.      The Court further reserves the right to enter a Final Order and Judgment that approves the Settlement and dismisses the Action (as defined in the Settlement

Agreements) on the merits and with prejudice regardless of whether the Court has approved the Plan of Allocation or awarded attorneys' fees and expenses or awarded the Class Representative an incentive award.

9.      The Court appoints A.B. Data, Ltd. as Notice and Claims Administrator ("Notice and Claims Administrator") to supervise and administer the notice procedure as well as the processing of claims as more fully set forth below:

(a)      Not later than 7 days after entry of this Order, NorthShore shall produce to Lead Counsel the following information for purchasers of inpatient hospital services from February 10, 2000 through December 31, 2015, to the extent such information is known to NorthShore and available using reasonable efforts:  Date of service, Patient Name, Patient ID number, Patient Address, Patient Social Security Number, Patient email address, Insurer name, Insurer address, Total claim amount, Patient Claim amount, Insurer claim amount. For the avoidance of doubt, nothing in this agreement shall require NorthShore to obtain such information from any third party.

(b)      Not later than 21 days after entry of this Order (the "Notice Date"), Lead Counsel shall cause a link to the Notice and the Claim Forms, substantially in the forms annexed as Exhibits attached to the Declaration of Elaine Pang and hosted on a website maintained by the Notice and Claims Administrator, to be emailed to all members of the Class whose last-known email addresses can be identified with reasonable effort. Where a last-known email address is not reasonably available or where an email is returned as being undeliverable, Lead Counsel shall cause a copy of the Postcard Notice providing an address, phone number and website address where members of the Class can obtain the

Notice and Claim Form, advising them of their right to object to the Settlement, and of the date and time for the Fairness Hearing to be mailed by first-class mail to all members of the Class who can be identified with reasonable effort. Since members of the Class have, by earlier notice been afforded the opportunity to opt out of the Class and the deadline to do so expired February 3, 2015, no further opt out period shall be provided to those members of the Class who opted out.

(c)     Not later than the Notice Date, Lead Counsel shall cause the Summary Notice to be published once in a nationally distributed newswire, and not later than 21 days after the issuance of this Order, Lead Counsel shall place a copy of the Class Action Complaint And Demand For Jury Trial and the Settlement Agreement (including Exhibits) on the website, http://www.NorthShoreAntitrustLitigation.com maintained by the Notice and Claims Administrator.

(d)     Not later than 30 days after the entry of this Order, Lead Counsel shall cause to be served on NorthShore's counsel and filed with the Court proof, by affidavit or declaration, of compliance with the notice requirements of this Order.

(e)     Not later than 7 days prior to the Fairness Hearing, the Notice and Claims Administrator shall submit a report outlining the implementation of the Notice Plan, including how many Notices were sent, and how many Claim Forms were submitted.

10.     All members of the Class shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Class.  For the reasons provided in ECF No. 989, NorthShore's motion for summary judgment, ECF No. 898, is granted in part against former class representatives Amit

Berkowitz, Steven Messner, Henry Lahmeyer, and Painters District Council No. 30 Health & Welfare Fund, who are hereby dismissed. Because there is no just reason for delay, the Court will enter final judgment under Federal Rule of Civil Procedure 54(b) against former class representatives Steven Messner, Amit Berkowitz, Henry Lahmeyer, and Painters District Council No. 30 Health & Welfare Fund.

11.    Members of the Class who wish to participate in the Settlement shall complete and submit a Claim Form in accordance with the instructions contained therein. Unless the Court orders otherwise, all Claim Forms must be submitted electronically by, or if mailed, postmarked no later than _____, 2024. Any member of the Class that does not submit a timely Claim Form within the time provided shall be barred from sharing in the distribution of the proceeds of the Net Settlement Amount unless otherwise ordered by the Court.

12.    Any member of the Class who or which requested exclusion from the Class set forth in the earlier Notice shall have no rights under the Settlement Agreement, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Settlement Agreement or the Final Order and Judgment.

13.    Members of the Class may enter an appearance in the Action, at their own expense, individually or through counsel of their choice. Members of the Class who do not enter an appearance will be represented by Lead Counsel.

14.    Members of the Class may appear and show cause if they have any reason why the proposed Settlement should or should not be approved as fair, reasonable, and adequate, why a judgment should or should not be entered thereon, why the Plan of

Allocation should or should not be approved, why attorneys' fees and expenses should or should not be awarded, or why an incentive award should or should not be provided to the Class Representative.

15.     Any member of the Class who does not make a written objection in the manner provided in the Notices or appear in person or through a representative at the Fairness Hearing shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the Settlement, to the Plan of Allocation, or to any award of attorneys' fees, reimbursement of expenses, and incentive awards.

16.     The Court appoints Valley National Bank to be the Escrow Agent pursuant to the terms of the Escrow Agreement entered into between Valley National Bank and Lead Counsel. All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and Plan of Allocation.

17.     No Releasees or Released Parties shall have any responsibility for or liability with respect to the Plan of Allocation or any application for attorneys' fees, reimbursement of expenses, or incentive awards and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.

18.     At or after the Fairness Hearing, the Court will determine whether the Plan of Allocation and the application for attorneys' fees, reimbursement of expenses, and incentive awards shall be approved.

19.     All reasonable expenses incurred in identifying and notifying members of the Class, as well as administering the Settlement Fund, including any taxes, shall be paid as set forth in the Settlement Agreement. In the event the Settlement is not approved by the Court, or the Settlement Agreement is otherwise terminated, (1) the Parties shall be responsible for Notice Expenses as provided in the Settlement Agreement and (2) the Settlement Fund shall be returned to NorthShore as provided in the Settlement Agreement. All reasonable expenses incurred in identifying and notifying members of the       Class, as well as administering the Settlement Fund, including any taxes, shall be paid as set forth in the Settlement Agreement. In the event the Settlement is not approved by the Court, or the Settlement Agreement is otherwise terminated, (1) the Parties shall be responsible for Notice Expenses as provided in the Settlement Agreement and (2) the Settlement Fund shall be returned to NorthShore as provided in the Settlement Agreement.

20.     Neither this Order, the Settlement, nor any of their terms or provisions, nor any act performed or document executed pursuant to or in furtherance of them, nor any of the negotiations or proceedings connected with them, shall be construed as an admission or concession by any party of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind and shall not be construed as, or deemed to be evidence of, or an admission or concession that, Plaintiffs or any members of the Class have suffered any damages, harm, or loss.

21.     In the event that the Settlement does not become final in accordance with its terms, this Order shall be vacated and rendered null and void to the extent provided by and in accordance with the terms of the Settlement Agreement. In such event, all orders

entered, and releases delivered in connection herewith shall also be null and void to the extent provided by and in accordance with the Settlement Agreement.

### Schedule

22.    The Court reserves the right to continue the Fairness Hearing without further notice to the Class other than by ECF and posting on the website, http://www.NorthShoreAntitrustLitigation.com, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlements. The Court may approve the Settlement, with such modifications as may be agreed to by the parties, if appropriate, without further notice to the Class other than by ECF.

23.    Pending the Fairness Hearing, all members of the Class are enjoined from initiating or prosecuting any actions or claims against any Releasees or Released Parties that are within the scope of the releases provided for by the Settlement Agreement.

24.    The following schedule of dates shall govern the resolution of the Settlements:

| EVENT: | DEADLINE: |
|---|---|
| Deadline for Lead Counsel to provide notice to Class Members by effectuating the Summary Notice and Postcard Notice as specified in the Notice Plan | _____, 2024<br><br>[or **30 days** after entry of Preliminary Approval Order] |
| Deadline for Lead Counsel to cause the Summary Notice to be published twice in nationally distributed, business-focused newswires | _____, 2024<br><br>[or **30 days** after entry of Preliminary Approval Order] |
| Deadline for Lead Counsel to file affidavit of notice of emailing, mailing, and publication | _____, 2024 |

| EVENT: | DEADLINE: |
|---|---|
| | [or **45 days** after entry of Notice disseminated] |
| Deadline for members of the Class to file objections to the (i) the Settlement, (ii) the Plan of Allocation, (iii) the application by Class Counsel for attorneys' fees and/or reimbursement of expenses (collectively, the "Applications") | _____, 2024<br><br>[or **60 days** after entry of Preliminary Approval Order] |
| Deadline for filing of Final Approval papers in support of (i) the Settlement, (ii) the Plan of Allocation, (iii) the application by Class Counsel for attorneys' fees and/or reimbursement of expenses, and incentive award (collectively, the "Applications") | _____, 2024<br>[or **7 days** before the Fairness Hearing] |
| Deadline for Class Members in the Class to submit:<br>• Proof of Claim and Release Forms | _____, 2024<br><br>[**30 days** before Fairness Hearing] |
| Deadline for Lead Counsel to file reply to any opposition to the Applications for award of Attorneys' fees, reimbursement of expenses, and incentive awards or any response to any objection(s) filed | _____, 2024 |
| Deadline for Notice and Claims Administrator to submit report outlining implementation of the Notice Plan | _____, 2024<br><br><br>[or **7 days** before the Fairness Hearing] |
| Date of Fairness Hearing | _____, 2024<br><br>[or 90 days after CAFA Notice Served][e.g., May 1, 2024] |

**IT IS SO ORDERED:**

DATED:_____, 2024

_____
Edmond E. Chang
United States District Judge

# EXHIBIT B
## (The Long-Form Notice is still in process)

# LEGAL NOTICE

## If you paid for Inpatient Hospital Services at NorthShore University HealthSystem (or Evanston Northwestern Healthcare),

## You Could Get Money from a Settlement.

Your rights may be affected by proposed Settlement in a class action lawsuit with NorthShore University HealthSystem ("NorthShore"), formerly, Evanston Northwestern Healthcare Corporation ("ENH"). The lawsuit claims that NorthShore overcharged purchasers for inpatient healthcare services after it merged with Highland Park Hospital. NorthShore denies that it did anything wrong.

XXXXX Settlement
c/o A.B. Data, Ltd.
P.O. Box 000000
Milwaukee, WI 53217

**Postmaster: Please DO NOT Cover Up Barcode**

<<Barcode>>
<<Claim ID>>

<<Mailing Address>>

**Am I included?** Generally, you are included in the Settlement if you are in the United States or Puerto Rico and paid for inpatient hospital services directly from NorthShore (formerly called ENH), from February 10, 2000, to December 31, 2015. You may have seen a previous notice that stated purchasers of outpatient hospital services were included in the Class. The Class has changed to include only those who purchased inpatient hospital services. Some members of the original class are not members of the current Class. A more detailed notice, including the full class definition and who is not included, is available at www.NorthShoreAntitrustLitigation.com.

**What does the Settlement provide?** A $55 million Settlement Fund will pay money to eligible members of the Class; notice and administration costs; incentive awards to the class representative and others; and attorneys' fees, costs, and expenses.

**How can I get a payment?** Submit a claim form online or by mail postmarked by [**Month 00, 202X**]. If your claim is valid, you will get money from the Settlement. The amount of your payment will depend on the amount you paid for inpatient hospital services and the number of claims that are filed. Detailed instructions about how to act on these rights are available at www.NorthShoreAntitrustLitigation.com.

**What are my rights?** Even if you do nothing, you will be bound by the Court's decisions. If you did not previously exclude yourself, you may object to the Settlement by [**Month 00, 2024**]. The Court will hold a hearing on [**Month 00, 2024**] to consider whether to approve the Settlement, a request for attorneys' fees of up to 1/3 of the Settlement Fund plus costs and expenses, and incentive awards to the class representative and others. You or your own lawyer may appear and speak at the hearing at your own expense. The Court may change these deadlines or the hearing date (and time). Check the website below for updates.

For more information: **1-800-952-3716 or visit www.NorthShoreAntitrustLitigation.com**

# EXHIBIT C

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE NORTHSHORE UNIVERSITY | ) | No. 07 C 4446 |
| HEALTHSYSTEM ANTITRUST | ) | |
| LITIGATION | ) | Judge Edmond E. Chang |

**FINAL ORDER AND JUDGMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement dated as of December ___, 2023 between Plaintiff, David Freedman (the "Class Representative"), on behalf of the Class defined below (collectively, "Plaintiffs"), and Defendant NorthShore University HealthSystem ("NorthShore"), it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.      This Final Order and Judgment hereby incorporates by reference the definitions in the Settlement Agreement among Plaintiffs and NorthShore, and all capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.      The following Class has been certified under Fed. R. Civ. P. 23(b)(3):

All persons or entities in the United States of America and Puerto Rico, except those who solely paid fixed amount co-pays, uninsureds who did not pay their bill, self-insured entities, Medicaid and Traditional Medicare patients, governmental entities, defendant, other providers of healthcare services, and the present and former parents, predecessors, subsidiaries and affiliates of defendant and other providers of healthcare services who purchased or paid for inpatient hospital services directly from NorthShore University HealthSystem (formerly known as Evanston Northwestern Healthcare), its wholly-owned hospitals, predecessors, subsidiaries, or affiliates other than those acquired as a result of the

1

merger with Rush North Shore Medical Center from February 10, 2000 through December 31, 2015.

3.    The Court previously appointed the Class Representative and appointed Marvin A. Miller of Miller Law LLC as Lead Counsel for the Class ("Lead Counsel"). The Class Representative and Class Counsel have fairly and adequately represented the interests of the Class and satisfied the requirements of Fed. R. Civ. P. 23(g).

4.    The Court has jurisdiction over these actions, each of the parties, and all members of the Class for all manifestations of this case, including this Settlement.

5.    The notice of settlement (substantially in the form presented to this Court as Exhibit B to the Settlement Agreement) (the "Notice") directed to the members of the Class *via* email or First Class Mail, constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided for individual notice to all members of the Class who were identified through reasonable efforts. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice provided members of the Class due and adequate notice of the Settlement, the Settlement Agreement, these proceedings, and the rights of Class members to object to the Settlement.

6.    Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the _____, 2024 fairness hearing, it is hereby determined that all members of the Class are bound by this Final Order and Judgment.

7.    The Settlement of this Action was not the product of collusion between the Class Representative and NorthShore or their respective counsel, but rather was the result of *bona fide* and extensive arm's-length negotiations conducted in good faith between Class Counsel and

counsel for NorthShore, with the assistance of a mediator, retired federal Judge Wayne Andersen.

8. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement and finds that the Settlement is, in all respects, fair, reasonable and adequate to members of the Class and in their best interests. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

9. The Court hereby approves the Plan of Allocation of the Settlement Fund as proposed by Class Counsel (the "Plan of Allocation"), which was summarized in the Notice of Proposed Settlement and filed with Plaintiffs' Motion for Preliminary Approval of Settlement (ECF No. ___), and directs A.B. Data, Ltd. ("AB Data"), the firm retained by Lead Counsel and previously appointed by the Court as the Notice and Claims Administrator, to distribute the Net Settlement Fund as provided in the Plan of Allocation.

10. All claims against NorthShore in *In re Northshore University Healthsystem Antitrust Litigation,* No. 07 C 4446 (the "Action") are hereby dismissed with prejudice, and without costs.

11. Upon the Settlement Agreement becoming final in accordance with Paragraph 5 of the Settlement Agreement, Plaintiff and all members of the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, on behalf of themselves and their respective past, present, and future, direct and indirect, parents, members, subsidiaries, associates, affiliates, affiliated partnerships, joint ventures, joint venturers, officers, directors, management, supervisory boards, employees, insurers, general or limited partners, divisions, agents, independent contractors, consultants, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives, fiduciaries (and their past and present officers, directors, employees, agents, independent contractors, consultants, attorneys, servants,

representatives, and fiduciaries), and their trustees, predecessors, successors, heirs, executors, administrators, representatives, and assigns (collectively, the "Releasors"), hereby release and forever discharge NorthShore (including any and all of its past, present, and future, direct and indirect, parents, subsidiaries, affiliates, affiliated partnerships, joint ventures, and joint venturers) and its officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, independent contractors, consultants, attorneys, servants, trustees, heirs, executors, administrators, representatives, fiduciaries (and its, direct and indirect, parents', subsidiaries', affiliates', affiliated partnerships', and joint ventures' past, present, and future officers, directors, employees, agents, independent contractors, consultants, attorneys, servants, representatives, and fiduciaries), and the predecessors, successors, heirs, executors, administrators and representatives and assigns of each of the foregoing (collectively, the "Releasees") from all manner (including past, present, and future) of claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, rights, setoffs, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, recognized now or hereafter, existing or preexisting, pursuant to any theory of recovery recognized or available now or hereafter (including, but not limited to, those based in contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or regulation), contingent or non-contingent, in law or equity, that arise out of or relate, in whole or in part, to: (a) the acts or omissions alleged in the Action and/or (b) any acts or omissions that could give rise to claims under federal or state antitrust law; and/or (c) were or could have been asserted in the Action (collectively, the "Released Claims"). For the avoidance of doubt, "Released Claims" includes all claims that have been asserted, or could have been asserted, in the Action, including all claims in any way arising out of or relating to the merger

of Evanston Northwestern Healthcare Corporation and Highland Park Hospital and Lakeland Health Services, Inc., and the purchase of hospital services from NorthShore. "Released Claims" does not include individual claims unrelated to the merger or antitrust Action such as individual personal injury, medical malpractice, or contract claims, and does not include any claims accruing after December 31, 2015. All Released Claims are released and discharged to the fullest extent permitted by law, including for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

12. Lead Counsel has moved for an award of attorneys' fees, reimbursement of expenses and an incentive award for the Class Representative. Lead Counsel requests an award of attorneys' fees of One Third (1/3) of the Settlement Fund (plus interest accrued thereon), reimbursement of the reasonable costs and expenses incurred in the prosecution of this action in the amount of $_____, and incentive award of $50,000 for the Class Representative.

13. Upon consideration of Lead Counsel's petition for fees, costs and expenses, Lead Counsel is hereby awarded attorneys' fees totaling $_____ (representing 1/3 of the Settlement Fund) and costs and expenses totaling $____, together with a proportionate share of the interest thereon from the date the funds are deposited in the Settlement Escrow Account until payment of such attorneys' fees, costs and expenses, at the rate earned by the Settlement Fund, to be paid solely from the Settlement Fund. The attorneys' fees, costs, and expenses authorized and approved by this Final Order and Judgment shall be paid to Miller Law LLC as follows: Lead counsel shall be entitled to reimbursement of expenses within five (5) business days after this Settlement becomes final pursuant to Paragraph 5 of the Settlement Agreement or as soon thereafter as is

5

practical and in accordance with the terms of the Settlement Agreement. Lead Counsel shall, in his sole discretion, allocate and distribute such attorneys' fees, costs, and expenses among the various counsel which have participated in this litigation.

14.    Upon consideration of Lead Counsel's petition for an incentive award for the Class Representative, Class Representative is awarded $50,000, to be paid solely from the Settlement Fund immediately after the Settlement becomes final in accordance with Paragraph 5 of the Settlement Agreement.

15.    The Releasees shall have no responsibility for, and no liability whatsoever with respect to any payment or disbursement of attorneys' fees, expenses, costs or incentive awards, nor with respect to any allocation of attorneys' fees, expenses, costs, or incentive awards to any other person or entity who may assert any claim thereto. The attorneys' fees, costs and expenses, and incentive award authorized and approved by this Final Order and Judgment shall constitute full and final satisfaction of any and all claims that Plaintiffs and any member of the Class, and their respective counsel, may have or assert for reimbursement of fees, costs, and expenses, and service awards, and Plaintiff and members of the Class, and their respective counsel, shall not seek or demand payment of any fees and/or costs and/or expenses and/or service awards from NorthShore or Releasees other than from the Settlement Fund.

16.    This Final Order and Judgment is being entered to preclude further litigation of the claims asserted and settlement by the terms of the Settlement Agreement. The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration, consummation, and enforcement of the Settlement Agreement of the Settlement, and over this Final Order and Judgment.

17.    The Court finds that this Final Order and Judgment adjudicates all of the claims,

6

rights and liabilities of the parties to the Settlement Agreement (including the members of the Class) and is final and shall be immediately appealable. The claims of those Plaintiffs who were not determined to be members of the class are dismissed. Neither this Final Order and Judgment nor the Settlement Agreement nor any other Settlement-related document shall constitute any evidence, admission, or concession by NorthShore or any other Releasee, in this or any other matter or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, nor shall either the Settlement Agreement, this Final Order and Judgment, or any other Settlement-related document be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement, the terms of this Final Order and Judgment, or if offered by any Releasee in responding to any action purporting to assert Released Claims, or if offered by any Releasor in asserting that a claim is not a Released Claim.

18.     This Court previously directed that Notice be disseminated to members of the Class. By his Declaration, Eric J. Miller of A.B. Data, Ltd., noted that the Notice Plan was implemented and that those members of the Class on the attached Exhibit __ requested exclusion. Those excluded individuals and entities shall not be bound by the Orders of this Court and shall not participate in the Settlement, Settlement Fund, or benefits of the Settlement Agreement.

**IT IS SO ORDERED:**

DATED: _____, 2024          _____
                                      Edmond E. Chang
                                      United States District Judge

7