## UNITED STATES DISTRICT COUR
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE NORTHSHORE UNIVERSITY      )      No. 07 C 4446
HEALTHSYSTEM ANTITRUST      )
LITIGATION      )      Judge Edmond E. Chang

### FINAL ORDER AND JUDGMENT

Pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement dated as of December 13, 2023 between Plaintiff, David Freedman (the "Class Representative"), on behalf of the Class defined below (collectively, "Plaintiffs"), and Defendant NorthShore University HealthSystem ("NorthShore"), it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.      This Final Order and Judgment hereby incorporates by reference the definitions in the Settlement Agreement among Plaintiffs and NorthShore, and all capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.      The following Class has been certified under Fed. R. Civ. P. 23(b)(3): All persons or entities in the United States of America and Puerto Rico, except those who solely paid fixed amount co-pays, uninsureds who did not pay their bill, Medicaid and Traditional Medicare patients, governmental entities, defendant, other providers of healthcare services, and the present and former parents, predecessors, subsidiaries and affiliates of defendant and other providers of healthcare services who purchased or paid for inpatient hospital services directly from NorthShore University HealthSystem (formerly known as Evanston Northwestern Healthcare), its wholly-owned hospitals, predecessors, subsidiaries, or affiliates other than those acquired as a result of the merger with Rush North Shore Medical Center from February 10, 2000 to December 31, 2015.

3.      The Court previously appointed the Class Representative and appointed Marvin

A. Miller of Miller Law LLC as Lead Counsel for the Class ("Lead Counsel"). The Class Representative and Class Counsel have fairly and adequately represented the interests of the Class and satisfied the requirements of Fed. R. Civ. P. 23(g).

4.      The Court has jurisdiction over these actions, each of the parties, and all members of the Class for all manifestations of this case, including this Settlement.

5.      The notice of settlement (substantially in the form presented to this Court as Exhibit B to the Settlement Agreement) (the "Notice") directed to the members of the Class *via* email or First Class Mail, constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided for individual notice to all members of the Class who were identified through reasonable efforts. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice provided members of the Class due and adequate notice of the Settlement, the Settlement Agreement, these proceedings, and the rights of Class members to object to the Settlement.

6.      Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the May 6, 2024 fairness hearing, it is hereby determined that all members of the Class are bound by this Final Order and Judgment.

7.      The Settlement of this Action was not the product of collusion between the Class Representative and NorthShore or their respective counsel, but rather was the result of *bona fide* and extensive arm's-length negotiations conducted in good faith between Class Counsel and

counsel for NorthShore, with the assistance of a mediator, retired federal Judge Wayne Andersen, under Civil Rule 23(e)(2)(B).

8.      Pursuant to Rule 23(e)(2)(A) and (C) of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement and finds that the Settlement is, in all respects, fair, reasonable and adequate to members of the Class and in their best interests. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

9.      Under Civil Rule 23(e)(2)(D), the Court hereby approves the Plan of Allocation of the Settlement Fund as proposed by Class Counsel (the "Plan of Allocation"), which was summarized in the Notice of Proposed Settlement and filed with Plaintiff's And Class's Unopposed Motion For  Preliminary Approval Of Proposed Settlement, Approval Of The Form And Manner Of Notice To The Class, And Proposed Schedule For A Fairness Hearing  (ECF No.1237), and directs A.B. Data, Ltd. ("AB Data"), the firm retained by Lead Counsel and previously appointed by the Court as the Notice and Claims Administrator, to distribute the Net Settlement Fund as provided in the Plan of Allocation.

10.      All claims against NorthShore in *In re Northshore University Healthsystem Antitrust Litigation,* No. 07 C 4446 (the "Action") are hereby dismissed with prejudice, and without costs.

11.      Upon the Settlement Agreement becoming final in accordance with Paragraph 5 of the Settlement Agreement, Plaintiff and all members of the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, on behalf of themselves and their respective past, present, and future, direct and indirect, parents, members, subsidiaries, associates, affiliates, affiliated partnerships, joint ventures, joint venturers, officers, directors, management, supervisory boards, employees, insurers, general or limited partners, divisions, agents, independent contractors, consultants, attorneys, servants, trustees, joint

3

ventures, heirs, executors, administrators, representatives, fiduciaries (and their past and present

officers, directors, employees, agents, independent contractors, consultants, attorneys, servants,

representatives, and fiduciaries), and their trustees, predecessors, successors, heirs, executors, ad-

ministrators, representatives, and assigns (collectively, the "Releasors"), hereby release and for-

ever discharge NorthShore (including any and all of its past, present, and future, direct and indirect,

parents, subsidiaries, affiliates, affiliated partnerships, joint ventures, and joint venturers) and its

officers, directors, management, supervisory boards, insurers, general or limited partners, employ-

ees, agents, independent contractors, consultants, attorneys, servants, trustees, heirs, executors,

administrators, representatives, fiduciaries (and its, direct and indirect, parents', subsidiaries', af-

filiates', affiliated partnerships', and joint ventures' past, present, and future officers, directors,

employees, agents, independent contractors, consultants, attorneys, servants, representatives, and

fiduciaries), and the predecessors, successors, heirs, executors, administrators and representatives

and assigns of each of the foregoing (collectively, the "Releasees") from all manner (including

past, present, and future) of claims, debts, obligations, demands, actions, suits, causes of action,

damages whenever incurred, rights, setoffs, liabilities of any nature whatsoever, including costs,

expenses, penalties and attorneys' fees, whether known or unknown, foreseen or unforeseen, sus-

pected or unsuspected, recognized now or hereafter, existing or preexisting, pursuant to any theory

of recovery recognized or available now or hereafter (including, but not limited to, those based in

contract or tort, common law or equity, federal, state, territorial, or local law, statute, ordinance, or

regulation), contingent or non-contingent, in law or equity, that arise out of or relate, in whole or

in part, to: (a) the acts or omissions alleged in the Action and/or (b) any acts or omissions that

could give rise to claims under federal or state antitrust law; and/or (c) were or could have been

asserted in the Action (collectively, the "Released Claims"). For the avoidance of doubt, "Released

Claims" includes all claims that have been asserted, or could have been asserted, in the Action,

4

including all claims in any way arising out of or relating to the merger of Evanston Northwestern Healthcare Corporation and Highland Park Hospital and Lakeland Health Services, Inc., and the purchase of hospital services from NorthShore. "Released Claims" does not include individual claims unrelated to the merger or antitrust Action such as individual personal injury, medical malpractice, or contract claims, and does not include any claims accruing after December 31, 2015. All Released Claims are released and discharged to the fullest extent permitted by law, including for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

12.     Lead Counsel has moved for an award of attorneys' fees, reimbursement of expenses and an incentive award for the Class Representative. Lead Counsel requests an award of attorneys' fees of One Third (1/3) of the Settlement Fund (plus interest accrued thereon), reimbursement of the reasonable costs and expenses incurred in the prosecution of this action in the amount of $5,210,722.11 (to be adjusted for final class-administration costs), and incentive award of $50,000 for the Class Representative.

13.     Upon consideration of Lead Counsel's petition for fees, costs and expenses, Lead Counsel is hereby awarded attorneys' fees totaling $18,333,333.33 (representing 1/3 of the Settlement Fund) and costs and expenses totaling $5,210,722.11 (to be adjusted for final class-administration costs), together with a proportionate share of the interest thereon from the date the funds are deposited in the Settlement Escrow Account until payment of such attorneys' fees, costs and expenses, at the rate earned by the Settlement Fund, to be paid solely from the Settlement Fund. As explained during the hearing, the Court is *not* holding that proposed fees in all antitrust cases should be measured against the gross settlement amount rather than the net-of-costs amount.

Indeed, the general standard in the Seventh Circuit is that the costs must be netted from the de-nominator when considering what percentage the fees is consuming from the settlement fund. *E.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014); *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014). Nor is there any reason to apply an across-the-board assumption that the risk to the class in antitrust cases justifies a larger fee award; again, the general rule is that risk is not to be generally shifted to the class. *Redman*, 768 F.3d at 635. Plenty of non-antitrust class actions are complex and difficult. In this particular case, however, both the risks and the litigation efforts were extreme, as explained during the fairness hearing. The wide scope of the potential claims was dictated by the wide scope of the merger, which included an array of types of medical *care*, types of *recipients* of medical care, and types of *payors* of medical care. The breadth of the potential claims presented exceptionally complex class certification questions under Civil Rule 23, and ne-cessitated an interlocutory appeal and later refinements. That was just on certification; both on liability and damages, the scope of the claims again dictated that the litigation would be extraordi-narily labor intensive and complex, as well as pose an extreme risk of zero recovery. For example, even as the case headed to trial, NorthShore still presented triable issues on whether there were any damages at all, including on the alleged increased quality of care as the reason for the increase in prices. So extracting a settlement amount that is around 24% of the Plaintiff's expert's maximum damages calculation is a significant result. When taking into account the "central consideration," that is, "what class counsel achieved for the members of the class," the fees and expenses are justified.

14. The attorneys' fees, costs, and expenses authorized and approved by this Final Or-der and Judgment shall be paid to Miller Law LLC as follows: Lead counsel shall be entitled to reimbursement of expenses within five (5) business days after this Settlement becomes final pur-suant to Paragraph 5 of the Settlement Agreement or as soon thereafter as is practical and in

accordance with the terms of the Settlement Agreement. Lead Counsel shall, in his sole discretion, allocate and distribute such attorneys' fees, costs, and expenses among the various counsel which have participated in this litigation.

15.     Upon consideration of Lead Counsel's petition for an incentive award for the Class Representative, Class Representative is awarded $50,000, to be paid solely from the Settlement Fund immediately after the Settlement becomes final in accordance with Paragraph 5 of the Settlement Agreement.

16.     The Releasees shall have no responsibility for, and no liability whatsoever with respect to any payment or disbursement of attorneys' fees, expenses, costs or incentive awards, nor with respect to any allocation of attorneys' fees, expenses, costs, or incentive awards to any other person or entity who may assert any claim thereto. The attorneys' fees, costs and expenses, and incentive award authorized and approved by this Final Order and Judgment shall constitute full and final satisfaction of any and all claims that Plaintiffs and any member of the Class, and their respective counsel, may have or assert for reimbursement of fees, costs, and expenses, and service awards, and Plaintiff and members of the Class, and their respective counsel, shall not seek or demand payment of any fees and/or costs and/or expenses and/or service awards from NorthShore or Releasees other than from the Settlement Fund.

17.     This Final Order and Judgment is being entered to preclude further litigation of the claims asserted and settlement by the terms of the Settlement Agreement. The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration, consummation, and enforcement of the Settlement Agreement of the Settlement, and over this Final Order and Judgment.

18.     The Court finds that this Final Order and Judgment adjudicates all of the claims, rights and liabilities of the parties to the Settlement Agreement (including the members of the Class)

and is final and shall be immediately appealable. The claims of those Plaintiffs who were not determined to be members of the class are dismissed. Neither this Final Order and Judgment nor the Settlement Agreement nor any other Settlement-related document shall constitute any evidence, admission, or concession by NorthShore or any other Releasee, in this or any other matter or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, nor shall either the Settlement Agreement, this Final Order and Judgment, or any other Settlement-related document be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement, the terms of this Final Order and Judgment, or if offered by any Releasee in responding to any action purporting to assert Released Claims, or if offered by any Releasor in asserting that a claim is not a Released Claim.

19.     This Court previously directed that Notice be disseminated to members of the Class. By his Declaration, Eric J. Miller of A.B. Data, Ltd., noted that the Notice Plan was implemented and that those members of the Class have been informed of their rights in connection with the final approval proceedings. The parties have exchanged the list of those who have requested exclusion and agree that those whose request was untimely shall be treated as timely submitted and the Court approves and adopts the parties' agreement. Due to the information being deemed Highly Confidential pursuant to the Protective Order entered in this case, a report listing the requests to opt out received to date is available for *in camera* review by the Court. Those excluded individuals and entities shall not be bound by the Orders of this Court and shall not participate in the Settlement, Settlement Fund, or benefits of the Settlement Agreement.

20.     On the objection filed by United HealthCare Services, Inc., R. 1244, 1253, it is true, as the Plaintiff argues, that only class members may formally file objections to proposed settlements. Civil Rule 23(e)(5)(A) begins, "Any class member may object to the propos[ed]"

settlement. In *Douglas v. The Western Union Co.*, 955 F.3d 662, 665 (7th Cir. 2020), the Seventh Circuit interpreted the rule's text as a limit on who has standing to object (and not just as a directive to permit class members to object). But nothing in the rule bars an entity (or a person) from seeking clarification on whether the entity *is* a class member or not. So United may be heard on that issue.

21.      Having said that, United is most certainly *not* a member of the class. In the face of a motion by NorthShore to compel certain entities—including United—to arbitrate rather than participate in the class action, R. 646, United filed a joint stipulation stating that United did not oppose the arbitration motion, R. 683. The Court then (not surprisingly) granted the motion to compel, thus removing United from this litigation. R. 742. At that point, the Plaintiff (and class counsel) had no authority to litigate or to negotiate on behalf of the various entities, including United, that had removed themselves from the litigation. So, United is not a member of the class, and there is no reasonable basis for confusion on that point. The same goes for the self-insured entities that negotiated and paid through third-party administrators (like United). On those entities, it was the Court that defined the certified class, R. 989 (03/31/2018), to exclude self-insured entities that used third-party administrators to negotiate rates and to pay NorthShore. The Court denied a motion to reconsider on that very point. R. 1064. It would be a surprise indeed if those entities made a re-appearance in the case via the settlement. Nor is there a reasonable basis for those entities to be confused: when the Court granted preliminary approval, the approval included the proposed notices to potential claimants. The proposed long-form notice was attached to the preliminary-approval motion, R. 1237-3, and that notice explicitly stated that the class does not include "[s]self-insured entities and businesses which paid NorthShore through third-party claims administrators acting on their behalf." R. 1237-3 at 52. And potential claimants were directed to the class-

action website where the long-form notice was published. R. 1237-3 at 61. In sum, these particular

self-insured entities were not part of the Class and were not part of the Class settlement.

**IT IS SO ORDERED:**

DATED: May 6, 2024

Honorable Edmond E. Chang
United States District Judge